# Exhibit 2



1(212) 318-6661
ryanmeuth@paulhastings.com

March 21, 2023

Kevin S. Prussia
WilmerHale
60 State Street
Boston, MA, 02109

*Re:* *ModernaTX, Inc. et al. v. Pfizer Inc., et al.*, C.A. No. 1:22-11378-RGS (D. Mass.)

Dear Kevin,

On behalf of Defendants BioNTech SE, BioNTech Manufacturing GmbH, and BioNTech US Inc., as well as Pfizer Inc., we write concerning Moderna's objections and responses to Defendants' First Set of Common Interrogatories (Nos. 1-11).

## I. Moderna's Improper General Objections

Although a number of Moderna's General Objections are improper, we will not dwell on our disagreement with Moderna's general objections to the extent Moderna in fact provides responses to the Interrogatories, as set forth in the remaining portions of this letter. We do point out that General Objection No. 12, refusing to provide any discovery that is not "limited to the Patents-in-Suit," is artificially narrow given that discovery may of course relate to the claims and defenses in the case even if a specific request is not directly asking about one of the patents in suit, and Moderna's complaint and response to the counterclaims has numerous allegations that are not directly referring to a patent in suit. *See, e.g.*, Complaint at ¶ 77; Answer at ¶¶ 29-31, 47-57, 43-45.

As to General Objection No. 21, Plaintiffs complain that "counting compound interrogatories, Defendants have exceeded" twenty. Plaintiffs fail to apply the joint [Proposed] Scheduling Order (D.I. 61), which makes clear that "subparts of a basic interrogatory which are logical extensions of the basic interrogatory and seek only to obtain specified additional particularized information with respect to the basic interrogatory shall not be counted separately from the basic interrogatory." We trust Plaintiffs will respond fully to the interrogatories, but please tell us expressly if Plaintiffs intend otherwise.

**II. Moderna's Specific Responses to Defendants' Interrogatories Are Non-Responsive**

**Interrogatory No. 1, Seeking, for Each Asserted Claim of the Patents-in-Suit, Identification of: (1) "the earliest patent application to which you are claiming priority under 35 U.S.C. § 120"; and (2) "the written description support within such application for the priority claim of such Asserted Claim."**

Instead of answering the question posed, Plaintiffs cite "nine provisional applications" with at least two different filing dates. Plaintiffs also fail to specifically identify, within the single earliest patent application for which priority is claimed, the alleged written description support for each Asserted Claim. Seven pages of lists purporting to cross-reference the totality or near totality of four separate patent applications, without linking to the Asserted Claim language, is not responsive. In fact, rather than responding to Defendants' interrogatory, Plaintiffs appear to have listed nearly the entire disclosure for each of the applications, without making any attempt to identify where the claimed limitations are disclosed in the application.

**Interrogatory No. 2, Requesting Identification of the Person Whom Plaintiffs Contend: (1) "first conceived of using chemical modifications to uridine in mRNA to avoid provoking an immune response, and particularly 1-methylpseudouridine modified mRNA"; and (2) "first discovered that mRNA molecules with 1-methylpseudouridine resulted in surprisingly superior protein production with a significantly reduced immune response, stating when such conceptions and discoveries occurred."**

This interrogatory is derived from Plaintiffs' own allegation in the Complaint that they "discover[ed] that mRNA molecules with a specific modification in which uridine is replaced with 1-methylpseudouridine were surprisingly superior to other chemically-modified mRNAs." Complaint at ¶ 5. Plaintiffs presumably had a factual basis to make this assertion. Plaintiffs need to respond to the interrogatory as posed, not pivot to discuss "[t]he first persons to conceive the inventions claimed in the '574 patent."

**Interrogatory No. 3, Requesting Identification of: (1) the person whom Plaintiffs contend "first conceived of packaging chemically-modified mRNA in a lipid nanoparticle formulation [with certain specified components in the specified ranges] for delivery of the mRNA to cells"; (2) "when such conception occurred"; and (3) "the identity of any documents supporting such conceptions."**

This interrogatory is also derived from Plaintiffs' allegation in the Complaint that they "discovered that packaging that chemically-modified mRNA in a lipid nanoparticle formulation allowed for the efficient delivery of the mRNA to cells." Complaint at ¶ 57. Once again, Plaintiffs need to respond to the interrogatory as posed, not pivot to discuss



the "mRNA vaccine comprising an mRNA comprising an open reading frame encoding a BetaCoV S protein or S protein subunit formulated in a lipid nanoparticle" described in provisional patent applications 62/244,802 and 62/247,297.

**Interrogatory No. 4, Seeking Identification of the Person Whom Plaintiffs Contend: (1) "first conceived of the use of mRNA encoding for the full-length coronavirus spike protein in a SARS-COV-2 vaccine"; and (2) "discovered that mRNA encoding for a full-length coronavirus spike protein in a lipid nanoparticle formulation was highly effective at producing neutralizing antibodies to the coronavirus," along with when such conception occurred and documents supporting the same.**

Plaintiffs have again not answered the question posed. Indeed, Plaintiffs' response avoids the substance of the interrogatory entirely. Interrogatory No. 4 relates to Plaintiffs' allegation in the Complaint that Pfizer and BioNTech "chose to follow Moderna's path of using mRNA encoding for the full-length spike protein of SARS-CoV-2—the exact same design used in Moderna's Spikevax®." Complaint at ¶ 65. Plaintiffs' response is not specific to the "SARS-COV-2 vaccine" or events occurring after emergence of SARS-COV-2. Instead, Plaintiffs respond by stating that "Giuseppe Ciaramella first proposed an mRNA vaccine comprising an mRNA comprising an open reading frame encoding a BetaCoV S protein in early 2014"—nearly six years before the first emergence of SARS-COV-2.

**Interrogatory No. 5, Requesting Plaintiffs: "Identify when you first tested a 1-methylpseudouridine modified mRNA and the reasons for conducting such tests."**

This interrogatory is derived from Plaintiffs' allegation in the Complaint that "Moderna's scientists made the groundbreaking discovery that replacing uridine in the mRNA molecule with 1-methylpseudouridine resulted in surprisingly superior protein production," and that "[a]lthough Pfizer and BioNTech initially considered alternative vaccine designs without a chemical modification, they ultimately . . . chose to use the very same 1-methylpseudouridine modification first pioneered by Moderna years earlier." Complaint at ¶¶ 57-58. Plaintiffs must respond to the interrogatory as posed rather than discuss "test[ing] mRNA before the priority date of the '574 patent."

**Interrogatory No. 6, Requesting Identification of: (1) "persons involved in design of the lipid nanoparticle formulation used in Spikevax®"; and (2) "reasons for their choice of each component and amount thereof, including comparisons to other lipid nanoparticle formulations or components thereof."**

Plaintiffs' response that "[t]he choice of each component and amount thereof in Spikevax® was based on a range of factors including stability, tolerability, transfection



efficiency, scalability, among other considerations" does not provide the reasons for Moderna's choice of ***each component*** that is used in Spikevax®'s lipid nanoparticle formulation, as the interrogatory requires. Plaintiffs have also failed to identify any persons involved in those design decisions.

**Interrogatory No. 7, Requesting Plaintiffs to: (1) "List out the full mRNA sequence of Spikevax®, with citations to any publications disclosing that sequence"; and (2) "provide a side-by-side comparison showing what you believe to be any identity or differences in structure between the mRNA sequences of Spikevax® and Comirnaty®."**

Interrogatory No. 7 relates to Plaintiffs' allegation in the Complaint that Defendants "cop[ied] Moderna's COVID-19 vaccine design." Complaint at ¶ 77. Plaintiffs' response does not identify "any identity or differences in structure between the mRNA sequences of Spikevax® and Comirnaty®," as the interrogatory requires. Nor does Plaintiffs' response cite any public document disclosing the full mRNA sequence of Spikevax®, despite denying in their Answer to Counterclaims that Plaintiffs have "not publicly disclosed the complete mRNA sequence in Spikevax®." Answer to Counterclaims at ¶ 12. If Plaintiffs have disclosed their complete mRNA sequence, please identify the publication that discloses the sequence, as requested by the Interrogatory. Plaintiffs need to respond to the interrogatory as posed, instead of simply referencing "the full nucleotide sequence for Spikevax®" and "stat[ing] that Defendants have not yet produced documents in this matter, including documents containing the full nucleotide sequence of Comirnaty®."

**Interrogatory No. 8, Requesting: (1) "identification of the persons involved in conceiving, creating, and issuing the Patent Pledge"; and (2) "each of their reasons for doing so, including benefits to Plaintiffs and reactions to such statements by competitors, shareholders, the public, and/or the United States Government."**

Interrogatory No. 8 relates to Defendants' pleaded defenses and counterclaims that Plaintiffs are precluded from bringing the present suit and that Defendants are licensed to practice the Patents-in-Suit. Answer and Counterclaims at Affirmative Defenses ¶¶ 13-20; *id.* at Counterclaim ¶¶ 47-57, 73-80. Plaintiffs need to respond to the interrogatory as posed, instead of summarily asserting that "[t]he Patent Pledge was issued by Moderna" and refusing to identify any reasons for, and benefits from, the Patent Pledge (including from, *inter alia*, the United States Government).



**Interrogatory No. 9, Requesting Information Relating to "funding that [Plaintiffs may] have received relating to mRNA vaccines from the United States Government (including any agency thereof)."**

Plaintiffs have responded to this interrogatory pursuant to Fed. R. Civ. P. 33(d), "to the extent that such documents exist, are within Plaintiffs' possession, custody, or control, and are located after a reasonable search." We question whether production of documents will enable Defendants to understand the sum total of such funding and sources. Plaintiffs should provide an answer to this relatively straightforward question which we trust is recorded in financial records of the Plaintiffs. To the extent Plaintiffs are also relying on Rule 33(d), Plaintiffs should act in a manner consistent with their arguments elsewhere about what Rule 33(d) requires.

**Interrogatory No. 10, Requesting Plaintiffs to Describe in Detail, with Identification of Any Supporting Documents: "the measure and calculation of alleged damages" sought by plaintiffs, including "any royalty base and royalty rate used in such calculation."**

Having brought an action alleging monetary damages in the United States, Plaintiffs need to respond to the interrogatory as posed, and based on information presently available, rather than generally reference certain worldwide revenue figures associated with Pfizer and BioNTech's sales of Comirnaty®. Please provide the underlying facts, including the duration and geographic scope of Defendants' revenue, that Plaintiffs intend to rely on for any calculation of their alleged damages.

**Interrogatory No. 11, Requesting Plaintiffs, for Each of the Patents-in-Suit, to: "describe in detail the facts and circumstances concerning the first sale, first offer for sale, first description in a printed publication anywhere in the world, first disclosure to any individual or entity besides the USPTO, and first public use in the United States of the alleged invention(s) claimed in such patents."**

Plaintiffs have not argued that any patent is limited in scope to Spikevax®. *See, e.g.*, Answer to Counterclaims at ¶ 39 ("The '600 and '127 patents exemplify the claimed inventions with respect to the MERS coronavirus specifically."). Plaintiffs are required to respond to the interrogatory as posed, not pivot by limiting their response to "inventions claimed in the Asserted Patents [that] were first commercially used and sold as Spikevax®."



* * * *

Please confirm that Plaintiffs will supplement their responses to Defendants' interrogatories to comply with the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts. Defendants are willing to meet and confer regarding Plaintiffs' responses and objections to these interrogatories.

Sincerely,

Ryan Meuth