# Exhibit 1

CONFIDENTIAL PURSUANT TO THE COURT'S DEFAULT PO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MODERNATX, INC. and MODERNA US, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PFIZER INC., BIONTECH SE, BIONTECH MANUFACTURING GMBH, and BIONTECH US INC.,<br><br>Defendants. | Case No. 1:22-cv-11378-RGS<br><br>**CONFIDENTIAL PURSUANT TO THE COURT'S DEFAULT PO** |

**MODERNA'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' FIRST SET OF COMMON INTERROGATORIES (NOS. 1-11)**

Pursuant to Fed. R. Civ. P. 26 and 33, the Local Rules, and the Court's Scheduling Order (Dkt. 62), Plaintiffs ModernaTX, Inc. and Moderna US, Inc. (collectively, "Moderna") hereby respond and object to Defendants Pfizer Inc., BioNTech SE, BioNTech Manufacturing GMBH, and BioNTech US Inc. (collectively, "Defendants") First Set of Common Interrogatories, served on February 3, 2023 (the "Interrogatories"), as follows:

**GENERAL OBJECTIONS**

Plaintiffs incorporate each of the following General Objections into their responses to each of the Interrogatories, whether or not each such General Objection is expressly referred to in Plaintiffs' response to a specific Interrogatory.

1. The General Objections set forth in Plaintiffs' Objections and Responses to Defendants' First Set of Joint Requests for Production are incorporated by reference.

2. Plaintiffs object to each Interrogatory and Definition to the extent that they attempt to impose burdens or requirements on Plaintiffs that exceed or differ from the requirements of Fed. R. Civ. P. 26 and 34; the Local Rules; the Court's Order Regarding

**CONFIDENTIAL PURSUANT TO THE COURT'S DEFAULT PO**

## SPECIFIC OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF COMMON INTERROGATORIES

**INTERROGATORY NO. 1:**

For each Asserted Claim of the Patents-in-Suit, identify the earliest patent application to which you are claiming priority under 35 U.S.C. § 120 and the written description support within such application for the priority claim of such Asserted Claim.

**RESPONSE TO INTERROGATORY NO. 1**

In addition to the General Objections set forth above and incorporated here, Plaintiffs object to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, the common-interest doctrine, the work-product doctrine, and/or any other applicable privilege or immunity.

Plaintiffs further object to this interrogatory as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information not relevant to any party's claims or defenses, at least to the extent the interrogatory seeks "written description support within such application for the priority claim of such Asserted Claim."

Plaintiffs further object to this interrogatory as vague and ambiguous with respect to the term "written description support within such application for the priority claim."

Plaintiffs further object to this interrogatory to the extent it calls for premature disclosure of expert opinion.

Plaintiffs further object to this interrogatory as seeking discovery on an issue—the alleged invalidity of the Patents-in-Suit—for which Defendants have the ultimate burden of proof. Defendants have not yet served any contentions identifying the basis for any assertion that the claims of the Patents-in-Suit are invalid. To the extent Defendants serve such contentions, Plaintiffs reserve the right to supplement this interrogatory response.

Subject to the foregoing General and Specific Objections, Plaintiffs respond as follows:

**CONFIDENTIAL PURSUANT TO THE COURT'S DEFAULT PO**

<u>The '574 Patent</u>

The asserted claims of the '574 patent claim priority to U.S. Patent Application No. 13/437,034, filed on April 2, 2012 and issued as U.S. Patent No. 8,710,200.

Written description support for the asserted claims of the '574 patent can be found in this application, including but not limited to at the following citations:

<u>U.S. Patent Application No. 13/437,034 (MOD_000051477</u>) page 1, [0004] – [0008] (Background of the invention); page 1, [0009] – page 2, [0016] (Summary of the invention); page 2, [0017] – [0032] (Brief description of the figures); [0035] – [0042] (Nucleic acids and modified nucleic acids); page 3, [0043] – page 4, [0045] (Polypeptide Variants); page 4, [0046] (Targeting Moieties); page 4, [0047] – [0049] (Cell Penetrating Peptides); page 4, [0050] – [0052], Table 1 (Synthesis of Modified mRNAs); page 4, [0053] – page 6, [0071] (Modification of mRNAs); page 6, [0072] – [0076] (Linkers and Payloads); page 6, [0077] – [0078] (Detectable Agents); page 6, [0079] – page 7, [0081] (5'-Capping); page 7, [0082] – [0085] (Poly-A tails); page 7, [0087] – page 8, [0098] (Therapeutics); page 8, [0099] (Avoidance of the Innate Immune Response); page 9, [0101] – [0102] (Protein Production); page 9, [0103] – [0104] (Gene Silencing); page, 9, [0105] – [0107] (Modulation of Biological Pathways); page 10, [0108] – [0109] (Cellular Nucleic Acid Delivery); page 10, [0110] – [0113] (Expression of Ligand or Receptor on Cell Surface); page 10, [0114] – page 11, [0124]; (Mediators of Cell Death); page 11, [0125] – page 13, [0139], Figure 1 (Formulation Using Lipidoids); page 13, [0140] – page 15, [0163] (Administration); page 15, [0164] – page 18, [0193] (Pharmaceutical Compositions); page 18, [0194] – page 19, [0201] (Properties of the Pharmaceutical Compositions); page 19, [0202] – page 24, [0275] (Devices, Kits and Methods for Administration); page 30, [0353] – page 31, [0370], Figure 2, Table 2 (Example 1 Modified

**CONFIDENTIAL PURSUANT TO THE COURT'S DEFAULT PO**

mRNA Production); page 32, [0371] – [0373] (Example 2 PCR for cDNA Production); page 32, [0374] – [0375] (Example 3 In Vitro Transcription (IVT)); page 32, [0376] – [0378] (Example 4 Enzymatic Capping of mRNA); page 32, [0379] – [0380] (Example 5 Poly A Tailing Reaction); page 33, [0381] – [0382] (Example 6 Formulation of Modified mRNA Using Lipidoids); page 33, [0383] – [0390] (Example 7 Capping); page 33, [0391] (Example 8 Formulation of Modified mRNA Using Lipidoids); page 33, [0392] – page 34, [0405] (Materials and Methods for Examples 9-13); page 35, [0406], Figures 3 and 4, Table 3 (Example 9 Purification on Nanoparticle Formulations); page 35, [0407] – [0408], Figure 5, Tables 4 and 5 (Example 10 Concentration Response Curve); page 35, [0409], Table 5 (Example 11 Manual Injection and Syringe Pump Formulations); page 36, [0410], Figure 6, Table 6 (Example 12 mCherry Fluorescence of Formulations); page 36, [0411] (Example 13 In Vivo Formulation Studies); page 36, [0413] – page 37, [0424] (Example 14 In Vitro and In Vivo Expression); page 47, [0501] – [0503] (Example 35 Overexpression of Ceramide Transfer Protein to Increase Therapeutic Antibody Protein Production in Established CHO Cell Lines); page 48, [0504] – [0510] (Example 36 De Novo Generation of a Mammalian Cell Line Expressing Human Erythropoietin as a Therapeutic Agent); page 38, [0426] – [0433], Table 7 (Example 15 Split Dose Studies); page 38, [0434] – page 39, [0435] (Example 16 Dose Response and Injection Site Selection and Timing); page 39, [0436], Figure 7, Table 8 (Example 17 Routes of Administration); page 39, [0437] – page 40, [044], Figure 8 (Example 18 In Vivo Delivery of Modified mRNA); page 40, [0445] – page 41, [0457], Figures 9-11 (Example 19 In Vivo Delivery Using Lipoplexes); page 41, [0458], Figure 12 (Example 20 In Vivo Delivery Using Varying Lipid Ratios); page 41, [0459] – [0460], Table 9 and 10 (Example 21 Intramuscular and Subcutaneous In Vivo Delivery in Mammals); page 41, [0461], Table 11 (Example 22 Duration of Activity after Intramuscular In

11

**CONFIDENTIAL PURSUANT TO THE COURT'S DEFAULT PO**

Vivo Delivery in Rats); page 42, [0462] – [0463], Table 12 (Example 23 In Vitro Transfection of VEGF-A); page 42, [0464] – [0465] (Example 24 In Vivo Studies of Factor IX); page 43, [0466] – [0467], Table 13 (Example 25 Multi-Site Administration: Intramuscular and Subcutaneous); page 43, [0468] – [0470], Table 14 (Example 26 Intravenous Administration); page 44, [0471] – [0472], Table 15 (Example 27 Saline Formulation: Intramuscular Administration); page 44, [0473] – [0476], Table 16 (Example 28 EPO Multi-Dose/Multi-Administration); page 44, [0477] – [0478], Table 17 (Example 29 Signal Sequence Exchange Study); page 45, [0479] – [0490], Table 18 -19 (Example 30 Cytokine Study: PBMC); page 46, [0491] – [0492] (Example 31Quantification in Exosomes); page 46, [0493] – [0494] (Example 32 Bifunctional mmRNA); page 46, [0495] – [0496] (Example 33 Synthesis of Modified mRNA); page 46, [0497] – [0500] (Example 34 Bulk Transfection of Modified mRNA into Cell Culture); page 47, [0501] – [0503] (Example 35 Overexpression of Ceramide Transfer Protein to Increase Therapeutic Antibody Protein Production in Established CHO Cell Lines); page 48, [0504] – [0510] (Example 36 De Novo Generation of a Mammalian Cell Line Expressing Human Erythropoietin as a Therapeutic Agent); pages 48 – 56 (Sequence listing); page 56 (claims 1-26).

<u>The '600 and '127 Patents</u>

The asserted claims of the '600 and '127 patents claim priority to nine provisional applications, including U.S. Provisional Patent Application Nos. 62/244,802 (filed Oct. 22, 2015) and 62/247,297 (filed Oct. 28, 2015). Additional data supporting the claims was included in PCT Application No. PCT/US2016/058327 (filed Oct. 21, 2016).

Written description support for the asserted claims of the '600 and '127 patents can be found in those applications, including but not limited to at the following citations:

**CONFIDENTIAL PURSUANT TO THE COURT'S DEFAULT PO**

<u>U.S. Provisional Patent Application No. 62/244,802 (MOD_000050948-MOD_000051080)</u> at page 1, lines 5 – 20 (Background); page 1, line 30 – page 9, line 6 (Summary); page 9, line 8 – page 10, line 3 (MERS-CoV Description); page 10, line 5 – page 12, line 22 (Nucleic acids/Polynucleotides); page 12, line 24 – page 19, line 8 (Antigens/Antigenic Polypeptides); page 19, line 10 – page 33, line 2 (Chemical Modifications); page 33, line 4 – page 34, line 4 (In vitro Transcription of RNA (e.g., mRNA)); page 34, lines 6 – 31 (Methods of Treatment); page 34, lines 16 – 31 (MERS); page 35, lines 1 – 19 (SARS); page 35, line 20 – page 36, line 4 (Pan-betacoronavirus Vaccines); page 36, line 6 – page 40, line 6 (Therapeutic and Prophylactic Compositions); page 40, line 8 – page 46, line 26 (Nanoparticle Formulations); page 46, line 28 – page 85, line 16 (Liposomes, Lipoplexes, and Lipid Nanoparticles); page 85, line 18 – page 87, line 5 (Modes of Vaccine Administration); page 87, lines 9 – 25 (Example 1: Manufacture of Polynucleotides); page 87, line 27 – page 89, line 6 (Example 2: Chimeric Polynucleotide Synthesis); page 89, lines 8 – 20 (Example 3: PCR for cDNA Production); page 89, line 22 – page 90, line 10 (Example 4: In vitro Transcription (IVT)); page 90, lines 12 – 26 (Example 5: Enzymatic Capping); page 90, line 28 – page 91, line 9 (Example 6: PolyA Tailing Reaction); page 91, lines 11 – 26 (Example 7: Natural 5' Caps and 5' Cap Analogues); page 93, lines 6 – 13 (Example 11: Formulation of Modified mRNA Using Lipidoids); page 93, lines 15 – 31 (Example 12: Immunogenicity Study); page 94, lines 1 – 17 (Example 13: Betacoronavirus Challenge); page 94, line 19 – page 95, line 9 (Example 14: Microneutralization Assay); page 95, line 10 – page 98 (Table 1. Betacoronavirus Nucleic Acid Sequences); pages 98 – 102 (Table 2. Betacoronavirus Amino Acid Sequences); pages 102 – 106 (Table 3. Full-length Spike Glycoprotein Amino Acid Sequences (Homo Sapiens Strains)); page 107, lines 1 – 7

**CONFIDENTIAL PURSUANT TO THE COURT'S DEFAULT PO**

(Equivalents); page 108, line 1 – page 115, line 7 (claims 1 – 60); page 116, lines 1 – 4 (Abstract).

U.S. Provisional Patent Application No. 62/247,297 (MOD_000050804-MOD_000050947) at page 1, lines 5 – 20 (Background); page 1, line 30 – page 9, line 6 (Summary); page 9, line 8 – page 10, line 6 (MERS-CoV Description); page 10, line 8 – page 13, line 2 (Nucleic acids/Polynucleotides); page 13, line 3 – page 19, line 20 (Antigens/Antigenic Polypeptides); page 19, line 22 – page 36, line 3 (Chemical Modifications); page 36, line 5 – page 37, line 6 (In vitro Transcription of RNA (e.g., mRNA)); page 37, lines 6 – 16 (Methods of Treatment); page 37, lines 16 – 31 (MERS); page 38, lines 1 – 19 (SARS); page 38, line 20 – page 39, line 4 (Pan-betacoronavirus Vaccines); page 39, line 6 – page 43, line 2 (Description of Inventions); page 43, line 4 – page 47, line 4 (Therapeutic and Prophylactic Compositions); page 47, line 6 – page 48, line 29 (Stabilizing Elements); page 49, line 1 – page 55, line 18 (Nanoparticle Formulations); page 55, line 20 – page 95, line 10 (Liposomes, Lipoplexes, and Lipid Nanoparticles); page 95, line 12 – page 97, line 29 (Modes of Vaccine Administration); page 98, lines 1 – 18 (Example 1: Manufacture of Polynucleotides); page 98, line 20 – page 99, line 29 (Example 2: Chimeric Polynucleotide Synthesis); page 99, line 31 – page 100, line 12 (Example 3: PCR for cDNA Production); page 100, line 13 – page 101, line 2 (Example 4: In vitro Transcription (IVT)); page 101, lines 4 – 18 (Example 5: Enzymatic Capping); page 101, line 20 – page 102, line 2 (Example 6: PolyA Tailing Reaction); page 102, lines 4 – 19 (Example 7: Natural 5' Caps and 5' Cap Analogues); page 103, line 30 – page 104, line 7 (Example 11: Formulation of Modified mRNA Using Lipidoids); page 104, lines 9 – 25 (Example 12: Immunogenicity Study); page 104, line 27 – page 105, line 12 (Example 13: Betacoronavirus Challenge); page 105, line 15 – page 106, line 4 (Example 14: Microneutralization Assay); page

**CONFIDENTIAL PURSUANT TO THE COURT'S DEFAULT PO**

106, line 6 – page 109 (Table 1. Betacoronavirus Nucleic Acid Sequences); pages 109 – 113 (Table 2. Betacoronavirus Amino Acid Sequences); pages 113 – 117 (Table 3. Full-length Spike Glycoprotein Amino Acid Sequences (Homo Sapiens Strains)); pages 117, line 3 – page 118, line 2 (Equivalents); page 119, line 1 – page 126, line 4 (claims 1 – 60); page 127, lines 1 – 4 (Abstract).

PCT Application No. PCT/US2016/058327 (as filed on October 21, 2016) (MOD_000001618-MOD_000003893) at page 1, lines 3 – 12 (Related Applications); page 1, lines 15 – 23, page 3, lines 3 – 21 (Background); page 3, line 30 – page 6, line 13, page 8, line 27 – page 26, line 16 (Summary); page 30, line 25 – page 31, line 25 (Brief Description of Figs. 17-21); page 31, line 28 – page 32, line 16, page 42, line 32 – page 47, line 17 (Betacoronavirus (BetaCoV)); page 50, line 16 – page 52, line 3 (Superiority of mRNA Vaccines); page 52, line 5 – page 54, line 15 (Nucleic acids/Polynucleotides); page 54, line 17 – page 60, line 20 (Antigens/Antigenic Polypeptides); page 60, line 22 – page 61, line 24 (Multiprotein and Multicomponent Vaccines); page 61, line 26 – page 63, line 15 (Signal Peptides); page 63, line 17 – page 78, line 16 (Chemical Modifications); page 78, line 28 – page 79, line 22 (In vitro Transcription of RNA (e.g., mRNA)); page 81, line 21 – page 82, line 3 (Broad Spectrum RNA (e.g., mRNA) Vaccines); page 82, line 5 – page 85, line 21 (Methods of Treatment); page 85, line 23 – page 89, line 1 (Therapeutic and Prophylactic Compositions); page 89, line 4 – page 90, line 27 (Stabilizing Elements); page 90, line 29 – page 96, line 20 (Nanoparticle Formulations); page 96, line 22 – page 170, line 23 (Liposomes, Lipoplexes, and Lipid Nanoparticles); page 170, line 25 – page 173, line 4 (Modes of Vaccine Administration); page 173, line 6 – page 179, line 3 (Respiratory Virus RNA (e.g., mRNA) Vaccine Formulations and Methods of Use); page 179, lines 5 – 15, page 192, line 15 – page 197, line 14, page 197, lines 22 – 28 (Examples of

15

**CONFIDENTIAL PURSUANT TO THE COURT'S DEFAULT PO**

Additional Embodiments of the Disclosure); page 197, line 31 – page 198, line 14 (Example 1: Manufacture of Polynucleotides); page 198, line 16 – page 199, line 20 (Example 2: Chimeric Polynucleotide Synthesis); page 199, lines 22 – 34 (Example 3: PCR for cDNA Production); page 200, lines 1 – 25 (Example 4: In vitro Transcription (IVT)); page 200, line 27 – page 201, line 6 (Example 5: Enzymatic Capping); page 201, lines 8 – 21 (Example 6: PolyA Tailing Reaction); page 201, line 23 – page 202, line 4 (Example 7: Natural 5' Caps and 5' Cap Analogues); page 203, lines 16 – 24 (Example 11: Formulation of Modified mRNA Using Lipidoids); page 203, line 26 – page 204, line 2 (Example 12: Immunogenicity Study); page 203, lines 8 – 27 (Example 20: Betacoronavirus Immunogenicity Study); page 208, line 21 – page 209, line 13 (Example 21: Betacoronavirus Challenge); page 209, line 15 – page 210, line 1 (Example 22: Microneutralization Assay); page 210, lines 3 – 15 (Example 23: MERS CoV Vaccine Immunogenicity Study in Mice); page 210, line 17, page 211, line 9 (Example 24: MERS CoV Vaccine immunogenicity Study in New Zealand White Rabbits); page 240 (Table 8. Signal Peptides); pages 241– 253 (Table 10. Betacoronavirus Nucleic Acid Sequences); pages 253 – 258 (Table 11. Betacoronavirus Amino Acid Sequences); pages 258 – 262 (Table 12. Full-length Spike Glycoprotein Amino Acid Sequences (Homo Sapiens Strains)); page 332, lines 2 – 8 (Equivalents); page 333, lines 4 – 10, page 339, line 4 – page 340, line 17, page 342, line 16 – page 356, line 18 (claims 1, 43-52, 63-135); Abstract; Figures 17-21.

Plaintiffs reserve the right to supplement their response to this interrogatory as discovery continues.

**INTERROGATORY NO. 2:**

Identify who you contend first conceived of using chemical modifications to uridine in mRNA to avoid provoking an immune response, and particularly 1-methylpseudouridine modified mRNA, and who you contend first discovered that mRNA molecules with 1-methylpseudouridine resulted in surprisingly superior protein production with a significantly

16

reduced immune response, stating when such conceptions and discoveries occurred, and the identity of any documents supporting such conception and discovery.

**RESPONSE TO INTERROGATORY NO. 2**

In addition to the General Objections set forth above and incorporated here, Plaintiffs object to this interrogatory as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information not relevant to any party's claims or defenses, at least to the extent the interrogatory seeks information that has no relationship to the asserted claims of the Patents-in-Suit.

Plaintiffs object to this interrogatory to the extent that it seeks information that is not within Plaintiffs' possession, custody, or control.

The first persons to conceive the inventions claimed in the '574 patent, including without limitation administering to the subject a pharmaceutical composition comprising a modified messenger RNA ("mmRNA") such that the mmRNA is introduced into the cell, wherein the mmRNA comprises a translatable region encoding the polypeptide of interest and comprises the modified nucleoside 1-methylpseudouridine, and wherein the pharmaceutical composition comprises an effective amount of the mmRNA providing for increased polypeptide production and substantially reduced innate immune response in the cell, as compared to a composition comprising a corresponding unmodified mRNA, were Dr. Antonin de Fougerolles and Dr. Sayda M. Elbashir. Such invention was conceived by Drs. de Fougerolles and Elbashir at least by the priority date of the '574 patent, April 2, 2012. *See, e.g.*, MOD_000051478-565, MOD_000052059-223.

Plaintiffs reserve the right to supplement their response to this interrogatory as discovery continues.

17

Plaintiffs reserve the right to supplement their response to this interrogatory as discovery continues.

**INTERROGATORY NO. 4:**

Identify who you contend first conceived of the use of mRNA encoding for the full-length coronavirus spike protein in a SARS-COV-2 vaccine, and who you contend discovered that mRNA encoding for a full-length coronavirus spike protein in a lipid nanoparticle formulation was highly effective at producing neutralizing antibodies to the coronavirus, stating when such conceptions and discoveries occurred, and the identity of any documents supporting such conception and discovery.

**RESPONSE TO INTERROGATORY NO. 4**

In addition to the General Objections set forth above and incorporated here, Plaintiffs object to this interrogatory as vague and ambiguous with respect to the terms "discover" and "highly effective at producing neutralizing antibodies to the coronavirus."

Subject to the foregoing General and Specific Objections, Plaintiffs respond as follows: Giuseppe Ciaramella first proposed an mRNA vaccine comprising an mRNA comprising an open reading frame encoding a BetaCoV S protein in early 2014.  In 2015, Sunny Himansu proposed to make and test an mRNA vaccine comprising an mRNA comprising an open reading frame encoding a full-length BetaCoV S protein formulated in a lipid nanoparticle, wherein the mRNA comprised a chemical modification, hypothesizing that such a vaccine may be used to induce an immune response with neutralizing antibodies.  Provisional applications 62/244,802, filed on October 22, 2015, and 62/247,297, filed on October 28, 2015, described an mRNA vaccine comprising an mRNA comprising an open reading frame encoding a full-length BetaCoV S protein formulated in a lipid nanoparticle, wherein the mRNA comprised a chemical modification.  MOD_000050948-1080; MOD_000050804-947.  Dr. Himansu confirmed his hypothesis, observing that an mRNA vaccine comprising an mRNA comprising an open reading frame encoding a full-length BetaCoV S protein formulated in a lipid nanoparticle was highly

effective at producing neutralizing antibodies at least by January 2016, upon receiving results from experiments he directed and controlled ███████████████ showing that mRNA encoding for a full-length Middle Eastern Respiratory Syndrome (MERS) spike protein produced neutralizing antibodies in mice. *See, e.g.*, MOD_000055510; MOD_000055511. Dr. Himansu obtained further information supporting the invention in June 2016 upon receiving results from experiments he directed and controlled that were performed at Viroclinics in the Netherlands showing that mRNA encoding for a full-length MERS spike protein provided strong protection against MERS in a challenge study in rabbits. MOD_000055513; MOD_000056086; MOD_000056089; MOD_000055595-MOD_630. Those results were described in PCT Application No. PCT/US2016/058327, filed on October 21, 2016. MOD_000001618-MOD_000003893. Therefore, the first people to conceive of an mRNA vaccine comprising an mRNA comprising an open reading frame encoding a full-length BetaCoV S protein formulated in a lipid nanoparticle, wherein the mRNA comprises a chemical modification, were Drs. Ciaramella and Himansu.

Drs. Ciaramella and Himansu appreciated that their highly successful work with MERS would translate to other betacoronaviruses. They understood that betacoronaviruses were a pandemic risk, and that their work on MERS spike protein mRNA vaccine provided foundational proof of concept that would allow a rapid response to emerging betacoronavirus pandemics. Their work included study and comparison of many betacoronavirus strains. *See, e.g.*, MOD_000056069-070; MOD_000055486-487; MOD_000055489-490; MOD_000055488; MOD_000055491-493; MOD_000056030-068; MOD_000055505-509; MOD_000055494; MOD_000055537-574; MOD_000055519-520; MOD_000055495-496; MOD_000055497-499. Their conception of the use of mRNA encoding for a full-length betacoronavirus spike protein in

a lipid nanoparticle vaccine composition encompassed conception of the use of mRNA encoding for full-length spike proteins of betacoronaviruses that had not yet evolved, including SARS-CoV-2.

Plaintiffs reserve the right to supplement their response to this interrogatory as discovery continues.

**INTERROGATORY NO. 5:**

Identify when you first tested a 1-methylpseudouridine modified mRNA and the reasons for conducting such tests.

**RESPONSE TO INTERROGATORY NO. 5**

In addition to the General Objections set forth above and incorporated here, Plaintiffs object to this interrogatory as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information not relevant to any party's claims or defenses, at least to the extent the interrogatory seeks information that has no relationship to the asserted claims of the Patents-in-Suit.

Plaintiffs object to this interrogatory as vague and ambiguous with respect to the terms "tested" and "reasons for conducting such tests."

Plaintiffs further object to this interrogatory as cumulative and duplicative of other interrogatories contained herein, including at least Interrogatory No. 2.

Moderna tested mRNA modified with a N1-methylpseudouridine before the priority date of the '574 patent, April 2, 2012. Moderna experimented with a broad array of modified nucleobases and nucleotides in order to determine which had the potential to reduce the innate immune response, increase the half-life of the mRNA, and increase the amount of protein produced by the mRNA, among other characteristics. *See, e.g.*, MOD_000051478-565, MOD_000052059-223, MOD_000052584-758, MOD_000056281-315.

believe to be any identity or differences in structure between the mRNA sequences of Spikevax® and Comirnaty®.

**RESPONSE TO INTERROGATORY NO. 7**

In addition to the General Objections set forth above and incorporated here, Plaintiffs object to this interrogatory as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information not relevant to any party's claims or defenses, at least to the extent the interrogatory seeks information that has no relationship to the asserted claims of the Patents-in-Suit or the issues in this litigation.

Plaintiffs further object to this interrogatory to the extent it seeks to require Plaintiffs to provide information that is publicly available or otherwise equally or more available to Defendants as to Plaintiffs.

Plaintiffs object to this interrogatory as vague and ambiguous with respect to the term "identity or differences in structure," and "side-by-side comparison."

Plaintiffs object to this interrogatory to the extent that it seeks information that is not within Plaintiffs' possession, custody, or control.

Plaintiffs object to this interrogatory as cumulative and duplicative of other disclosures, including Plaintiffs' Infringement Contentions.

Plaintiffs object to the extent this interrogatory calls for premature disclosure of expert opinion.

Subject to the foregoing General and Specific Objections, Plaintiffs identify the following non-privileged documents containing the full nucleotide sequence for Spikevax® pursuant to Fed. R. Civ. P. 33(d):

MOD_000112823-871

**CONFIDENTIAL PURSUANT TO THE COURT'S DEFAULT PO**

Plaintiffs further state that Defendants have not yet produced documents in this matter, including documents containing the full nucleotide sequence of Comirnaty®.

Plaintiffs further incorporate by reference its Infringement Contentions and supplements thereto.

Plaintiffs reserve the right to supplement their response to this interrogatory as discovery continues.

**INTERROGATORY NO. 8:**

Identify the persons involved in conceiving, creating, and issuing the Patent Pledge and each of their reasons for doing so, including benefits to Plaintiffs and reactions to such statements by competitors, shareholders, the public, and/or the United States Government.

**RESPONSE TO INTERROGATORY NO. 8**

In addition to the General Objections set forth above and incorporated here, Plaintiffs object to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, the common-interest doctrine, the work-product doctrine, and/or any other applicable privilege or immunity.

Plaintiffs further object to this interrogatory as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information not relevant to any party's claims or defenses, at least to the extent the interrogatory seeks the identity of "the persons involved in conceiving, creating, and issuing the Patent Pledge and each of their reasons for doing so."

Plaintiffs further object to this interrogatory to the extent it seeks to require Plaintiffs to provide information that is publicly available or otherwise equally or more available to Defendants as to Plaintiffs, particularly with regard to "reactions to such statements by competitors, shareholders, the public, and/or the United States Government."

Plaintiffs object to this interrogatory to the extent that it seeks information that is not within Plaintiffs' possession, custody, or control.

Dated: March 9, 2023                                    Respectfully submitted:

*/s/ Kevin S. Prussia*
William F. Lee (BBO# 291960)
Emily R. Whelan (BBO# 646982)
Kevin S. Prussia (BBO# 666813)
Andrew J. Danford (BBO# 672342)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
william.lee@wilmerhale.com
emily.whelan@wilmerhale.com
kevin.prussia@wilmerhale.com
andrew.danford@wilmerhale.com

Amy K. Wigmore (BBO# 629275)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
amy.wigmore@wilmerhale.com

*Counsel for Plaintiffs ModernaTX, Inc. and Moderna US, Inc.*
