# EXHIBIT O

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MODERNATX, INC. and MODERNA US, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PFIZER INC., BIONTECH SE, BIONTECH MANUFACTURING GMBH, and BIONTECH US INC.,<br><br>Defendants. | Case No. 1:22-cv-11378-RGS<br><br>**HIGHLY CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER** |

**MODERNA'S THIRD SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF COMMON INTERROGATORIES (NOS. 1-11)**

Pursuant to Fed. R. Civ. P. 26 and 33, the Local Rules, and the Court's Scheduling Order (Dkt. 62), Plaintiffs ModernaTX, Inc. and Moderna US, Inc. (collectively, "Moderna") hereby respond and object to Defendants Pfizer Inc., BioNTech SE, BioNTech Manufacturing GMBH, and BioNTech US Inc. (collectively, "Defendants") First Set of Common Interrogatories, served on February 3, 2023 (the "Interrogatories"), as follows:

**GENERAL OBJECTIONS**

Plaintiffs incorporate each of the following General Objections into their responses to each of the Interrogatories, whether or not each such General Objection is expressly referred to in Plaintiffs' response to a specific Interrogatory.

1.      The General Objections set forth in Plaintiffs' Objections and Responses to Defendants' First Set of Joint Requests for Production are incorporated by reference.

2.      Plaintiffs object to each Interrogatory and Definition to the extent that they attempt to impose burdens or requirements on Plaintiffs that exceed or differ from the requirements of Fed. R. Civ. P. 26 and 34; the Local Rules; the Court's Order Regarding

Plaintiffs further state that Defendants have not yet produced documents in this matter, including documents containing the full nucleotide sequence of Comirnaty®.

Plaintiffs further incorporate by reference its Infringement Contentions and supplements thereto.

Plaintiffs reserve the right to supplement their response to this interrogatory as discovery continues.

**INTERROGATORY NO. 8:**

Identify the persons involved in conceiving, creating, and issuing the Patent Pledge and each of their reasons for doing so, including benefits to Plaintiffs and reactions to such statements by competitors, shareholders, the public, and/or the United States Government.

**RESPONSE TO INTERROGATORY NO. 8 (SUPPLEMENTED ON AUGUST 29, 2023)**

In addition to the General Objections set forth above and incorporated here, Plaintiffs object to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, the common-interest doctrine, the work-product doctrine, and/or any other applicable privilege or immunity.

Plaintiffs further object to this interrogatory as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information not relevant to any party's claims or defenses, at least to the extent the interrogatory seeks the identity of "the persons involved in conceiving, creating, and issuing the Patent Pledge and each of their reasons for doing so."

Plaintiffs further object to this interrogatory to the extent it seeks to require Plaintiffs to provide information that is publicly available or otherwise equally or more available to Defendants as to Plaintiffs, particularly with regard to "reactions to such statements by competitors, shareholders, the public, and/or the United States Government."

Plaintiffs object to this interrogatory to the extent that it seeks information that is not within Plaintiffs' possession, custody, or control.

████████████████████████████████████████

Plaintiffs further object to this interrogatory to the extent it seeks information that is subject to an obligation of confidentiality to a third party.

Subject to the foregoing General and Specific Objections, Plaintiffs respond as follows:

Dr. Steven Hoge, Moderna's President, is knowledgeable regarding Moderna's Patent Pledge (as used herein, "Patent Pledge" includes Moderna's initial October 2020 statement and all subsequent updates, including the March 2022 update discussed below).

Moderna is a pioneer in the field of mRNA vaccine development and believes that intellectual property rights serve an important role in incentivizing investment in research and development in the pharmaceutical industry.  Moderna's belief that innovators should be fairly compensated for the value of their innovations is consistent with Pfizer's own patent policy, which states:

> By providing inventors with a limited period of exclusivity for each new invention, the patent system encourages inventors to persist in their research and progress the science necessary to discover the next breakthrough. The patent system also fosters competitive innovation and facilitates collaboration amongst inventors – both integral to scientific advancement – by mandating the disclosure of inventions. It is the combination of incentive and disclosure provided by a robust patent system that enables Pfizer and other life science companies to spend the time, energy and resources to discover, research and develop new life-changing medicines.

Pfizer, Pfizer's Patent Policy & Commitment to Access to Medicines, https://cdn.pfizer.com/pfizercom/Pfizer's_Patent_Policy_Position_03132023.pdf.

The Patent Pledge was conceived, created, and issued by Moderna.  Given the exceptional situation brought on by the COVID-19 pandemic, Moderna wanted to make it clear that it had and has substantial intellectual property rights covering its own COVID-19 vaccine and other vaccines in use and development, but Moderna would not enforce its patent rights related to COVID-19 against those making vaccines intended to combat the pandemic during the period of global vaccine supply shortages to ensure that fear of patent enforcement would not

stand in the way of vaccine development or supply.  Moderna also made clear that it was not

permitting the free use of its intellectual property in perpetuity.  Moderna indicated that it would

be willing to discuss a license on commercially reasonable terms for those who wished to

continue using Modern's IP for COVID-19 vaccines for the post pandemic period.

Thus, an important reason for issuing the Patent Pledge is Moderna's belief that

intellectual property should not be a barrier to access to medicine during a pandemic.  As

Moderna wrote in its October 8, 2020 statement,

> We feel a special obligation under the current circumstances to use our resources
> to bring this pandemic to an end as quickly as possible.  Accordingly, while the
> pandemic continues, Moderna will not enforce our COVID-19 related patents
> against those making vaccines intended to combat the pandemic.  Further, to
> eliminate any perceived IP barriers to vaccine development during the pandemic
> period, upon request we are also willing to license our intellectual property for
> COVID-19 vaccines to others for the post pandemic period.

MOD_000059320-21.

Later in 2020, two COVID-19 vaccines using Moderna's patented technology—

Moderna's Spikevax® and Pfizer/BioNTech's Comirnaty®—became commercially available in

the U.S. and in other geographies around the world.  Thanks to Moderna's ground-breaking

innovations making such vaccines possible, hundreds of millions of doses incorporating

Moderna's patented technology have been administered in the U.S. since late 2020.  *See* CDC,

COVID-19 Vaccinations in the United States, https://covid.cdc.gov/covid-data-tracker.  As

Moderna wrote in October 2020, "Moderna is proud that its mRNA technology is poised to be

used to help end the current pandemic."    MOD_000059320-21.

Following the initial launches, global demand for COVID-19 vaccines outstripped

supply.  When it became clear that there would be significant demand and need for mRNA

COVID-19 vaccines early in 2021, Moderna responded swiftly, authorizing additional

investments to significantly expand manufacturing capacity, both internal and external, with a

goal of addressing the need for vaccines, particularly in low- and middle-income countries.  *See*

https://news.modernatx.com/Statements--Perspectives/Statements--Perspectives-

Details/2022/Global-Access-to-COVID-19-Vaccines/default.aspx.

Moderna's efforts to increase COVID-19 vaccine supply were effective and, by 2022, its

supply exceeded the demand for the vaccine.   As a result, in 2022, Moderna reported total write-

downs of hundreds of millions of dollars related to COVID-19 products.[1]

With vaccine supply no longer a barrier to access, Moderna issued an update to its Patent

Pledge on March 7, 2022, in which Moderna reiterated its reasons for issuing the initial pledge

and announced its intention to enforce its IP going forward.  For instance, Moderna explained the

actions it had taken to ensure access to a vaccine for COVID-19: "Since 2020, we have

---

[1] *See, e.g.*, Moderna 2022 10-K at 136.  Press Release, Moderna Reports Fourth Quarter and Fiscal Year 2022 Financial Results and Provides Business Updates, February 23, 2023 (noting write-downs "related to COVID-19 products that have exceeded or are expected to exceed their approved shelf-lives prior to being used, a loss on firm purchase commitments and related cancellation charges of $725 million, and an expense for unutilized manufacturing capacity and related contract manufacturing organization charges of $776 million"); Press Release, Moderna Reports First Quarter 2022 Financial Results and Provides Business Updates, May 4, 2022 (noting cost of sales due to inventory write-downs); Press Release, Moderna Reports Second Quarter 2022 Financial Results and Provides Business Updates, August 3, 2022 (noting costs of sales "includes a charge of $499 million for inventory write-downs related to COVID-19 products that have exceeded or are expected to exceed their approved shelf-lives prior to being used"); Press Release, Moderna Reports Third Quarter 2022 Financial Results And Provides Business Updates, November 3, 2022 ("This includes a charge of $333 million for inventory write-downs related to COVID-19 products that have exceeded or are expected to exceed their approved shelf-lives prior to being used."); Press Release, Moderna Reports Fourth Quarter and Fiscal Year 2022 Financial Results and Provides Business Updates, February 23, 2023 (noting cost of sales includes "a charge of $297 million for inventory write-downs related to COVID-19 products that have exceeded or are expected to exceed their approved shelf-lives prior to being used").  Similarly, for the first six months of 2023, Moderna recorded $612 million in inventory write-downs.  *See* Moderna 2023 Q2 10-Q at 21 (stating such write-downs were "mainly related to obsolete inventory due to shelf-life expiration and inventory in excess of expected demand").  Moderna's Chief Financial Officer explained further during Moderna's Q2 2023 earnings call that Moderna recorded "$464 million for inventory write-downs related to excess and obsolete COVID-19 product."  Transcript, Moderna Q2 2023 Earnings Call.

mobilized our existing mRNA platform to develop, test and manufacture more than 825 million doses of an authorized, safe and effective COVID-19 vaccine, approximately 25% of which have been delivered to low- and middle-income countries." MOD_000059116-17. Moderna further explained that its "[portfolio of] intellectual property and associated rights protect and enhance our ability to continue to develop innovative medicines." *Id*. Moderna "felt and continue[s] to believe that we have a special obligation to remove any perceived impediments created by our intellectual property rights so that the world could be vaccinated during the pandemic. That is why we have also licensed our patents to several manufacturing partners and raised more than $1.9 billion in private capital to scale up our manufacturing capacity so that we can now make billions of doses of our vaccine each year." *Id*.

Accordingly, in its updated Patent Pledge, Moderna promised to "never enforce our patents for COVID-19 vaccines against companies manufacturing in or for the 92 low- and middle-income countries in the Gavi COVAX Advance Market Commitment (AMC), provided that the manufactured vaccines are solely for use in the AMC 92 countries." *Id*.[2] Moderna did this in order to "ensure equitable access across the world, including through our agreement with COVAX to provide up to 650 million doses of our vaccine through 2022 to low- and middle-income countries at our lowest-tiered price, with tens of millions of additional doses committed directly to the African Union." *Id*. Moderna's commitment is underscored by its "plans to establish a state-of-the-art mRNA manufacturing facility in Kenya, investing up to $500 million to produce up to 500 million doses each year for the African continent." *Id*.

---

[2] *See, e.g.,*
https://www.gavi.org/sites/default/files/covid/pr/COVAX_CA_COIP_List_COVAX_PR_12-05-21.pdf; https://www.gavi.org/news/media-room/92-low-middle-income-economies-eligible-access-covid-19-vaccines-gavi-covax-amc

████████████████████████████████████████████

Meanwhile, outside of AMC-92 countries, Moderna stated in March 2022 that "vaccine supply is no longer a barrier to access," and Moderna "expects those using Moderna-patented technologies will respect the Company's intellectual property." MOD_000059116-17. As Moderna explained, it "remains willing to license its technology for COVID-19 vaccines to manufacturers in these countries on commercially reasonable terms." *Id*. "Doing so enables Moderna to continue to invest in research to develop new vaccines, prepare for the next pandemic, and meet other pressing areas of unmet medical need." *Id*.

Consistent with Moderna's patent pledge, Moderna is not seeking damages for activities occurring before March 8, 2022. However, Moderna is entitled to lost profits and/or a reasonable royalty on infringing acts in the United States after that date.

Plaintiffs reserve the right to supplement their response to this interrogatory as discovery continues.

## INTERROGATORY NO. 9:

Identify each item of funding that you have received relating to mRNA vaccines from the United States Government (including any agency thereof), including the contractual terms governing any such funding, any licenses or other rights given to the United States Government or any third party in exchange for such funding, and all persons involved in the negotiation of funding agreements with the United States Government relating to mRNA vaccines.

## RESPONSE TO INTERROGATORY NO. 9

In addition to the General Objections set forth above and incorporated here, Plaintiffs object to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, the common-interest doctrine, the work-product doctrine, and/or any other applicable privilege or immunity.

Plaintiffs object to this interrogatory as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information not relevant to any party's claims or defenses, at least to the extent the interrogatory seeks information "relating to mRNA vaccines," seeks

Dated: August 29, 2023                    Respectfully submitted:


*/s/ Kevin S. Prussia*
William F. Lee (BBO# 291960)
Emily R. Whelan (BBO# 646982)
Kevin S. Prussia (BBO# 666813)
Andrew J. Danford (BBO# 672342)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
william.lee@wilmerhale.com
emily.whelan@wilmerhale.com
kevin.prussia@wilmerhale.com
andrew.danford@wilmerhale.com

Amy K. Wigmore (BBO# 629275)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
amy.wigmore@wilmerhale.com

*Counsel for Plaintiffs ModernaTX, Inc. and Moderna US, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2023, I caused true and correct copies of the foregoing Moderna's Third Supplemental Responses and Objections to Defendants' First Set of Common Interrogatories (Nos. 1-11) to be served on the following counsel by email:

Lee Carl Bromberg
Erik Paul Belt
Wyley Proctor
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA 02110
P: 617.449.6500
lbromberg@mccarter.com
ebelt@mccarter.com
wproctor@mccarter.com

Thomas H. L. Selby
Stanley E. Fisher
Kathryn S. Kayali
Michael Xun Liu
D. Shayon Ghosh
Julie Tavares
Derrick M. Anderson
Haylee Bernal Anderson
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: 202-434-5000
Facsimile: 202-434-5029
tselby@wc.com
sfisher@wc.com
kkayali@wc.com
mliu@wc.com
sghosh@wc.com
jtavares@wc.com
danderson@wc.com
handerson@wc.com

Jeffrey S. Robbins
Joseph D. Lipchitz
Gregory M. Boucher
SAUL EWING ARNSTEIN & LEHR LLP
131 Dartmouth Street, Suite 501
Boston, MA 02116
Tel: (617) 723-3300
Jeffrey.Robbins@saul.com
Joseph.Lipchitz@saul.com
Gregory.Boucher@saul.com

Bruce M. Wexler
Eric W. Dittmann
Young J. Park
Simon F. Kung
Rebecca A. Hilgar
Carl J. Minniti, III
Michael Ryan Meuth
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000
brucewexler@paulhastings.com
ericdittmann@paulhastings.com
youngpark@paulhastings.com
simonkung@paulhastings.com
rebeccahilgar@paulhastings.com
carlminniti@paulhastings.com
ryanmeuth@paulhastings.com

*/s/ Annaleigh Curtis*
Annaleigh E. Curtis
WILMER CUTLER PICKERING
   HALE & DORR LLP
60 State Street
Boston, MA 02128
526-617-6694