# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MODERNATX, INC. and MODERNA US, INC., | |
| Plaintiffs, | |
| v. | C.A. No. 22-11378-RGS |
| PFIZER INC., BIONTECH SE, BIONTECH MANUFACTURING GMBH, and BIONTECH US INC., | JURY TRIAL DEMANDED |
| | **REDACTED** |
| Defendants. | |

## MODERNA'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 7 AND 8

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................... 1

II.  FACTUAL BACKGROUND................................................................................... 2

    A.  Moderna's Allegations Of Copying .............................................................. 2

    B.  Negotiations Regarding Interrogatory Nos. 7 And 8 ..................................... 4

III.  ARGUMENT............................................................................................................ 8

    A.  Defendants Should Be Compelled to Describe Their Knowledge Of Moderna's Vaccine Development (Interrogatory No. 7). ...................................................................... 9

    B.  Defendants Should Be Compelled To Describe Their Awareness Of Moderna's Patents And Patent Applications (Interrogatory No. 8)........................................................ 11

        1.  Defendants' Response Is Incomplete ...................................................... 12

        2.  The Information Sought By Interrogatory No. 8 Is Not Privileged........................... 14

IV.  CONCLUSION ...................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*American Med. Sys., Inc. v. Medical Eng'g Corp.*,
  6 F.3d 1523 (Fed. Cir. 1996) .................................................................... 9

*Baxter Int'l, Inc. v. Becton, Dickinson & Co.*,
  C.A. No. 17-7576, 2019 U.S. Dist. LEXIS 125098 (N.D. Ill. July 26, 2019) ........................ 14

*Bourne v. Arruda*,
  C.A. No. 10-393-LM, 2012 U.S. Dist. LEXIS 45938 (D.N.H. April 2, 2012) ........................ 8

*C R Bard Inc. v. Angiodynamics, Inc.*,
  979 F.3d 1372 (Fed. Cir. 2020) .................................................................... 8, 9

*Commil USA, LLC v. Cisco Sys., Inc.*,
  575 U.S. 632 (2015) .................................................................... 11

*Crane Sec. Techs., Inc. v. Rolling Optics AB*,
  337 F. Supp. 3d 48 (D. Mass. 2018) .................................................................... 13

*Garcia v. City of El Centro*,
  214 F.R.D. 587 (S.D. Cal. 2003) .................................................................... 14

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016) .................................................................... 11

*Imonex Servs. v. W.H. Munzprufer Dietmar Trenner GmbH*,
  408 F.3d 1374 (Fed. Cir. 2005) .................................................................... 11

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
  988 F.2d 1117 (Fed. Cir. 1993) .................................................................... 8

*Panasonic Corp. v. Getac Tech. Corp.*,
  C.A. No. 19-01118-DOC, 2020 U.S. Dist. LEXIS 198895 (C.D. Cal. Oct. 5,
  2020) .................................................................... 2, 13, 14

*Polara Eng'g, Inc. v. Campbell Co.*,
  894 F.3d 1339 (Fed. Cir. 2018) .................................................................... 8

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*,
  C.A. No. 18-12029-ADB, 2022 WL 4824318 (D. Mass. Oct. 3, 2022) .................................... 11

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ............................................................................................14

*Vasudevan Software, Inc. v. IBM Corp.*,
    C.A. No. 09-5897, 2011 WL 1599646 (N.D. Cal. Apr. 27, 2011) ...........................................14

*Virtek Vision Int'l Inc. v. Assembly Guidance Sys., Inc.*,
    C.A. No. 20-10857-ADB, 2023 WL 4196855 (D. Mass. May 12, 2023) ...............................8

## Other Authorities

Fed. R. Civ. P. 26 ................................................................................................................8

Fed. R. Civ. P. 37 ................................................................................................................8

Plaintiffs ModernaTX, Inc. and Moderna US, Inc. (collectively, "Moderna") file this motion to compel Defendants Pfizer Inc., BioNTech SE, BioNTech Manufacturing GmbH, and BioNTech US Inc. (collectively, "Defendants") to respond to Interrogatory Nos. 7 and 8.[1]

## I.  INTRODUCTION

Over six months have passed since Moderna served interrogatories requesting basic information regarding Defendants' copying of Moderna's patented technology.  Despite Moderna's efforts over the course of many months to obtain this discovery, Defendants have refused to provide a complete response.  Such discovery is routinely requested and provided in patent cases like this one.  The information Moderna seeks is core to the case, and Defendants cannot offer any compelling reason why they should not provide the information.  Moderna respectfully asks the Court to compel Defendants to provide responsive answers to Interrogatory Nos. 7 and 8.

The discovery sought by Moderna's Interrogatory Nos. 7 and 8 is relevant to allegations set forth in the Complaint that Defendants copied Moderna's patented technology.  Defendants have given Moderna the run-around regarding their responses to these interrogatories.  Defendants initially refused to provide any responses whatsoever, and when pressed by Moderna to supplement, provided only cursory responses missing answers to key portions of the requests but larded with non-responsive material.  Defendants have no apparent objection to the relevance of the information sought, but they have objected on privilege grounds, particularly as to Interrogatory No. 8.  That is improper because the underlying facts about "the circumstances as to

---

[1] Defendants' responses to many other discovery requests have also been deficient.  Moderna is working in good faith to resolve disputes as to those deficient responses without intervention of the Court, but may later need to move on issues currently under discussion.

when and how [the accused infringer] first became aware of the Patents-in-Suit" and patentee's patent portfolio are not protected from discovery. *Panasonic Corp. v. Getac Tech. Corp*., 19-CV-01118-DOC, 2020 U.S. Dist. LEXIS 198895, *2 (C.D. Cal. Oct. 5, 2020). Moderna is entitled to discovery into Defendants' copying because such evidence is relevant to willful infringement, induced infringement, and contributory infringement.

## II.   FACTUAL BACKGROUND

### A.   Moderna's Allegations Of Copying

As alleged in the Complaint, since its founding in 2010, Moderna has led the field in the research and development of chemically modified mRNA for prevention and treatment of infectious diseases. *See* Complaint ("Compl."), Dkt. 1, ¶¶ 1-9. After years of research, Moderna discovered that mRNA modified with 1-methylpseudouridine was surprisingly superior to unmodified and other chemically modified mRNAs. *Id.*, ¶ 57. Moderna also discovered that when the chemically modified mRNA was encapsulated in lipid nanoparticles, the mRNA could survive in the body long enough to be effective. *Id.*, ¶¶ 6, 57.

Using that discovery, Moderna developed mRNA vaccines for a range of infectious diseases, including betacoronaviruses such as Middle East Respiratory Syndrome ("MERS"). *Id.*, ¶ 7. Moderna has also embarked on developing vaccines for influenza and respiratory syncytial virus, all utilizing the chemically modified nucleoside 1-methylpseudouridine.[2] *Id.*, ¶ 4.

---

[2] Moderna, *Research – mRNA Pipeline*, https://www.modernatx.com/research/product-pipeline.

Moderna's discoveries were disclosed to the public in patent applications published as early as 2012 and, subsequently, in scientific literature.[3]  Pfizer and BioNTech were primarily focused on a different approach—namely unmodified mRNA in areas other than infectious diseases.[4]  However, they were keeping tabs on Moderna's development.  Ex. B, Defendants' Supplemental Responses and Objections to Plaintiffs' First Set of Common Interrogatories to Defendants (Nos. 3, 7, 8, and 9), August 25, 2023 ("Defendants' August 25 Supplement"), at 12, 15-16.

When the COVID-19 pandemic struck, Moderna quickly leveraged its patented technology to develop an mRNA vaccine for COVID-19.  Compl., ¶¶ 13-14, 48.  Moderna's Spikevax®, which embodies the claimed inventions, utilizes the 1-methylpseudouridine modification, is

---

[3] Ex. A, WO 2012/045082 A2; Ex. T, WO/2012/045075, Ex. B, Pankaj K. Mandal & Derrick J. Rossi, *Reprogramming Human Fibroblasts to Pluripotency Using Modified mRNA*, 8 Nature Protocols 568 (2013); Ex. C, Lior Zangi, et al., *Modified mRNA Directs the Rate of Heart Progenitor Cells and Induces Vascular Regeneration After Myocardial Infarction*, 31 Nature Biotech. 898 (2013).

[4] *See, e.g.*, Ex. D, Laura DeFrancesco, *The 'Anti-Hype' Vaccine*, 35 Nature Biotech. 193, 197 (2017) (BioNtech was "working on . . . personalized cancer vaccines"); Ex. E, Nadja Salomon, et al., *A Liposomal RNA Vaccine Inducing Neoantigen-Specific CD4+ T Cells Augments the Antitumor Activity of Local Radiotherapy in Mice*, 9 Oncoimmunology 1 (2020) (cancer vaccine); Ex. F, Alexandra G. Orlandini von Niessen, et al., *Improving mRNA-Based Therapeutic Gene Delivery by Expression-Augmenting 3' UTRs Identified by Cellular Library Screening*, 27 Molecular Therapy 824, 824 (2019) ("mRNA-based" "gene delivery" for "cancer vaccination"); Ex. G, Ugur Sahin, et al., *Personalized RNA Mutanome Vaccines Mobilize Poly-specific Therapeutic Immunity Against Cancer*, 547 Nature 222 (2017) ("the potential toxicity of these analogs and sequence alterations [through the introduction of modified nucleosides] should be carefully addressed"); BioNTech, *Press Release: BioNTech Expands Clinical Oncology Portfolio with First Patient Dosed in Phase 2 Trial of mRNA-based Individualized Immunotherapy BNT122 in Colorectal Cancer Patients*, https://investors.biontech.de/news-releases/news-release-details/biontech-expands-clinical-oncology-portfolio-first-patient-dosed ("individualized cancer therapies . . . contain[ing] unmodified, pharmacologically optimized mRNA").

formulated in lipid nanoparticles, and encodes for the full-length coronavirus spike protein. *Id.*, ¶¶ 61, 68, 71.

As alleged in the Complaint, Pfizer and BioNTech were aware of Moderna's development efforts and copied the claimed inventions to arrive at the accused products. *Id.*, ¶¶ 20, 75. Pfizer and BioNTech had many choices for how they could design their COVID-19 vaccine. Their other vaccine candidates included potentially non-infringing designs. *Id.*, ¶¶ 19, 74. But Pfizer and BioNTech discarded those other designs in favor of Moderna's patented technology. The accused products use the ***exact same*** 1-methylpseudouridine chemical modification as Moderna's COVID-19 vaccine formulated in a lipid nanoparticle formulation as claimed by Moderna's U.S. Patent No. 10,898,574 (the "'574 patent"). *Id.*, ¶¶ 75-76. Further, like Moderna's COVID-19 vaccine, the accused products contain mRNA encoding for the full-length spike protein for SARS-CoV-2 that is claimed by Moderna's U.S. Patent Nos. 10,702,600 (the "'600 patent") and 10,933,127 (the "'127 patent"). *Id.*, ¶ 76.

### B.    Negotiations Regarding Interrogatory Nos. 7 And 8

Moderna served its first set of interrogatories on January 20, 2023. *See* Ex. H, Moderna's First Set of Common Interrogs. (Nos. 1-10), Jan. 20, 2023 ("Moderna's Interrogs."). Among other things, Moderna requested basic, readily accessible information about Defendants' knowledge of Moderna's mRNA vaccine development (Interrogatory No. 7), and Defendants' awareness of Moderna's patent applications and patents (Interrogatory No. 8). *See id.* at 9.

> **Interrogatory No. 7.** Identify and describe your knowledge of Moderna's development of mRNA vaccines, including but not limited to your knowledge of Moderna's use of 1-methylpseudouridine; your knowledge of Moderna's use of lipid nanoparticles in mRNA vaccines; your knowledge of Moderna's development of mRNA vaccines for infectious diseases; your knowledge of Moderna's development of mRNA vaccines for coronaviruses; your knowledge of Moderna's development of an mRNA vaccine for

COVID-19; and how, when (including the first awareness of such development work), and who had such knowledge of Moderna's development work.

**Interrogatory No. 8.** Identify and describe your awareness or tracking of the prosecution or issuance of the patent applications leading to the Patents-in-Suit or any other Moderna patent or patent application, including when, where, and how you first became aware of such patent or patent application, and identify all persons with knowledge of those circumstances and all documents (by Bates range) relating to those circumstances.

*See id.*

In their initial objections and responses served on March 9, 2023, Defendants refused to provide this basic information about their knowledge and awareness of Moderna's work. *See* Ex. I, Defendants' Resps. and Objs. to Moderna's First Set of Common Interrogs. (Nos. 1-10), Mar. 9, 2023 ("Defendants' Resps. to Interrogs."), at 11-12. Moderna informed Defendants that their responses to Moderna's interrogatories were insufficient and non-responsive, and the parties exchanged letters over the course of two months. *See* Ex. J, March 17, 2023 Ltr. from K. Prussia to L. Bromberg and J. Robbins ("Moderna's March 17 Letter"); Ex. K, Apr. 10, 2023 Ltr. from R. Meuth to K. Prussia ("Defendants' April 10 Letter"); Ex. L, May 10, 2023 Ltr. from M. Laupheimer to R. Meuth ("Moderna's May 10 Letter").

The parties met and conferred on April 27, 2023, during which Defendants agreed to supplement their interrogatory responses. *See* Ex. L, Moderna's May 10 Letter, at 2-3. Although Defendants served supplemental responses on May 19, 2023, they did not supplement their responses to Interrogatory 7. *See* Ex. M, Defendants' 1st Suppl. Resps. and Objs. to Moderna's First Set of Common Interrogs. (Nos. 1, 2, 4, 5, 8), May 19, 2023 ("Defendants' May 19 Supplement"). Regarding Interrogatory No. 8, BioNTech, not Pfizer, made a supplemental response, stating only that BioNTech "was not aware of the prosecution or issuance of the patent applications leading to the Patents-in-Suit." *Id.* at 18. On June 14, 2023, Moderna sent a letter to

Defendants again objecting to their refusal to answer the interrogatories and requesting a response. *See* Ex. N, June 14, 2023 Ltr. from M. Laupheimer to R. Meuth and M. Liu ("Moderna's June 14 Letter").

Defendants did not respond for two months, and on August 15, 2023, Moderna notified Defendants that it would file a motion to compel them to respond to Interrogatory Nos. 7 and 8 (among others). *See* Ex. P, Email, at 7. On August 16, 2023, Defendants served a nominal supplemental response to the interrogatories, as well as a letter asserting that they would supplement further as to Interrogatory No. 7 and that Interrogatory No. 8 called for privileged information. *See* Ex. Q, Ltr. from Jung to M. Laupheimer, August 16, 2023 ("Defendants' August 18 Letter"); Ex. R, Defendants' First and Second Supplemental Responses and Objections to Plaintiffs' First Set of Common Interrogatories to Defendants (Nos. 3, 7, and 8) ("Defendants' August 16 Supplement").

Defendants' August 16 Supplement, however, provided very little information. Moderna responded the same day identifying multiple deficiencies, including: (a) with respect to Interrogatory No. 7, that Defendants did not provide "information about what they knew about Moderna's development work and when;" and (b) with respect to Interrogatory No. 8, that Defendants did not provide the date Defendants became aware of the Patents-in-Suit, applications leading to them, or other Moderna patents or applications. Ex. P, March 9, 2023 to August 22, 2023 Email Among Counsel ("Email"), at 4-5. The parties met and conferred on August 17, 2023, during which Defendants indicated that they would supplement their responses again on August 25, 2023. However, based on the meet and confer, Moderna remained concerned that Defendants' promised supplements would not be complete.

As a result, Moderna requested confirmation that Defendants would not limit their response to Interrogatory No. 7 to Moderna's development of Spikevax (as opposed to Moderna's work relevant to the Patents-in-Suit and mRNA vaccines more generally).  *See* Ex. P, Email, at 2. Moderna also requested confirmation that Defendants would not limit their response to Interrogatory No. 8 to their knowledge of the Patents-in-Suit and would provide a response identifying the factual circumstances surrounding their awareness of Moderna's patents, including the date of first awareness of Moderna's patents or applications. *See id.*  Defendants responded on August 21, 2023, but stated that they were "investigating" Defendants' awareness of Moderna's work on mRNA vaccines and stated their response on Interrogatory No. 8 would be limited to knowledge of the Patents-in-Suit and related patents or applications.  *Id.* at 1-2.  Moderna followed up on August 22, 2023, to reiterate that Defendants' apparent plan to limit their supplemental response to the Patents-in-Suit was improper because Defendants' "general tracking [of Moderna's patents and applications] is relevant generally to willfulness but also because at least some of Moderna's unasserted patents cover related subject matter." *Id.* at 1.

Defendants served their further supplemental responses late on August 25, 2023, but those responses remained deficient.  The supplemental response to Interrogatory No. 7 does not describe Defendants' knowledge of Moderna's work related to the subject matter of the Patents-in-Suit beyond boilerplate statements regarding Defendants' knowledge of Moderna generally.  *See* Ex. B, Defendants' August 25 Supplement, at 10-17.  Nor was Defendants' supplemental response to Interrogatory No. 8 adequate.  Defendants' supplemental response to that interrogatory continued to carve out Defendants' knowledge of any patents beyond the Patents-in-Suit.  It also failed to provide the actual date or circumstances of Defendants' knowledge of the Patents-in-Suit and/or related patents and applications. *See id.* at 19-22.

Moderna again identified these deficiencies via letter on August 28, 2023, and informed Defendants that given the long history of Defendants' refusal to provide a full response, Moderna intended to move the Court to compel Defendants' full responses.  *See* Ex. S, Ltr. from A. Curtis to R. Meuth and M. Liu, August 28, 2023 ("Moderna's August 28 Letter").

## III.    ARGUMENT

The discovery sought by Interrogatory Nos. 7 and 8 is relevant to Moderna's allegations that Defendants are willfully infringing the Patents-in-Suit.  Evidence that an infringer copied the patented technology supports a finding of willful infringement.  *See, e.g.*, *C R Bard Inc. v. Angiodynamics, Inc.*, 979 F.3d 1372, 1380 (Fed. Cir. 2020) (evidence that infringer copied was "sufficient evidence to support a jury verdict of willfulness"); *Polara Eng'g, Inc. v. Campbell Co.*, 894 F.3d 1339, 1353-54 (Fed. Cir. 2018) (finding evidence of copying supported the jury's finding of willful infringement); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1127 (Fed. Cir. 1993) (infringer's "deliberate copying was strong evidence of willful infringement").  Moderna is thus entitled to discovery into Defendants' copying.

Federal Rule of Civil Procedure 26 permits discovery into any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  Relevance is construed broadly during fact discovery.  *See Virtek Vision Int'l Inc. v. Assembly Guidance Sys., Inc.*, C.A. No. 20-10857-ADB, 2023 WL 4196855, at *1 (D. Mass. May 12, 2023).  Evasive and incomplete responses are treated as failures to respond.  *See* Fed. R. Civ. P. 37(a)(4); *Bourne v. Arruda*, C.A. No. 10-393-LM, 2012 U.S. Dist. LEXIS 45938, *7 (D.N.H. April 2, 2012).  As discussed below, Defendants' responses to Interrogatory Nos. 7 and 8 are evasive, nonresponsive, and incomplete.

A.      **Defendants Should Be Compelled to Describe Their Knowledge Of Moderna's Vaccine Development (Interrogatory No. 7).**

Moderna's Interrogatory No. 7 seeks information pertaining to Defendants' knowledge of Moderna's mRNA vaccine development.  Defendants' August 25 Supplement includes a large amount of non-responsive information, but does not describe Defendants' knowledge of Moderna's use of 1-methylpseudouridine, LNPs in mRNA vaccines, or development of mRNA vaccines for infectious diseases.  *See* Ex. B at 10-17, Defendants' August 25 Supplement.  The information sought by Interrogatory No. 7, which Defendants have not provided many months into fact discovery, is highly relevant to Moderna's allegations of copying and willful infringement.

*First*, it is beyond question that Defendants were aware of Moderna's vaccine design as they were testing their vaccine candidates and abandoned their potentially non-infringing vaccine designs in favor of Moderna's patented vaccine design.  *See supra* p. 4.  The details of Defendants' knowledge matter.  **What Defendants knew** about Moderna's work on mRNA vaccines (work that stretches back years before the COVID-19 pandemic), **when they knew it**, **what they were saying about it** internally and to each other, and **how they were using that knowledge** in their own development efforts are highly relevant to Defendants' copying of Moderna's design.  The copying of a patentee's product supports a finding of willful infringement.  *See C R Bard*, 979 F.3d at 1380 ("evidence that [infringer] intentionally copied [plaintiff's patented design]" was "sufficient evidence to support a jury verdict of willfulness"); *American Med. Sys., Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1531-32 (Fed. Cir. 1996) (finding that infringement was willful because infringer copied patentee's product "design in developing its infringing . . . product").

*Second*, Defendants state incorrectly in their August 25 Supplement that there is no allegation of copying in the case simply because Moderna does not allege that Defendants copied

-9-

the ***exact sequence*** of Spikevax and because the Patents-in-Suit issued after Defendants had designed their COVID-19 vaccine.  *See* Ex. B, Defendants' August 25 Supplement, at 11.  But the Patents-in-Suit are not limited to particular sequences; they claim certain key design elements of Defendants' vaccine, and the applications that led to those patents were pending well before Defendants designed their vaccine.  Defendants' refusal to respond to the interrogatory completely is thus improper.

***Third***, Defendants' response clearly does not offer the full story of their knowledge of Moderna's work prior to COVID-19.  The claims of the Patents-in-Suit are not limited to a vaccine for COVID-19, but include pharmaceutical compositions with mRNA modified with 1-methylpseudouridine more generally.  *See, e.g.*, Dkt. 1-1, '574 patent, claim 1.  Moderna's work on mRNA vaccines using 1-methylpseudouridine goes back many years, yet Defendants have provided only high level or cherry-picked information about their knowledge of Moderna's work.  For example, BioNTech states that it was aware of certain general presentations by Moderna, and Pfizer responds that it was aware of Moderna's work, but felt Moderna "[had] a lot of work to do" on its mRNA flu vaccine in 2018.  Ex. B, Defendants' August 25 Supplement, at 12-13, 16.  Defendants' selective responses are improper.  Specific information regarding Defendants' knowledge and awareness of Moderna's work with 1-methylpseudouridine more generally and Moderna's work in mRNA vaccines are relevant and probative of Defendants' copying, including their intent in forgoing potentially non-infringing designs when it came time to developing a vaccine for COVID-19.

Defendants should be compelled to provide a substantive response to the full scope of Interrogatory No. 7 that describes with specificity their knowledge of Moderna's mRNA

technology, particularly Moderna's work with 1-methylpseudouridine, mRNA vaccines in LNPs, and mRNA vaccines for infectious diseases.

### B.   Defendants Should Be Compelled To Describe Their Awareness Of Moderna's Patents And Patent Applications (Interrogatory No. 8).

Moderna's Interrogatory No. 8 seeks information regarding Defendants' awareness of both the Patents-in-Suit and Moderna's other patent applications and patents discussing 1-methylpseudouridine, including the date Defendants "first became aware of such patent[s] or patent application[s]." Ex. H, Moderna's Interrogs., at 9. The circumstances under which Defendants learned about Moderna's patents and patent applications that cover or discuss material related to the Patents-in-Suit are relevant to willful infringement. *See, e.g.*, *Teva Pharms. Int'l GmbH v. Eli Lilly & Co*., C.A. No. 18-12029-ADB, 2022 WL 4824318, at *15 (D. Mass. Oct. 3, 2022) (noting that willfulness turns on evidence of the accused infringer's intent at the time of the challenged actions based on the totality of the circumstances); *Imonex Servs. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005) ("Willful infringement in this case hinges on when the defendants had actual knowledge of Imonex's patent rights, and their actions after that time."). The date that Defendants became aware of Moderna's patent applications and patents is also relevant to willful infringement. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016) ("culpability is generally measured against the knowledge of the actor at the time of the challenged conduct"). Defendants' "knowledge of the patents in suit" is also relevant to induced infringement and contributory infringement, *see Commil USA, LLC v. Cisco Sys., Inc*., 575 U.S. 632, 639 (2015), which are alleged in Moderna's complaint, *see, e.g.*, Compl. ¶¶ 85-85, 88, 106-107, 109, 124-125, 127.

-11-

### 1.    Defendants' Response Is Incomplete

Instead of providing a complete response to Interrogatory No. 8, Defendants provided mostly non-responsive material focused on the issue date of the issued Patents-in-Suit and Moderna's statements regarding its intellectual property.  *See* Ex. B, Defendants' August 25 Supplement, at 20-21.[5]  Beyond that non-responsive information, each Defendant has responded separately to Interrogatory No. 8, but both Defendants' approaches are improper.

***First***, neither Pfizer nor BioNTech provides the date of its first knowledge of any of the Patents-in-Suit or applications that led to them.  Instead, BioNTech states it was aware generally of "certain Moderna patent applications" "at least as early as October 2020."  *Id.* at 21.  Pfizer responds similarly, *id.* at 22, but adds that ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████    These "at least as early as" responses are insufficient. As explained above, the actual date of Defendants' first knowledge of any of the Patents-in-Suit or Moderna's other patents and applications is relevant to willfulness and the calculation of enhanced damages.

***Second***, both Defendants have improperly refused to respond to the full scope of the Interrogatory by limiting their supplemental responses to the issued Patents-in-Suit—but the Interrogatory seeks information regarding Defendants' knowledge of the applications that led to those patents as well as other Moderna patents or patent applications.  *See* Ex. B, Defendants' August 25 Supplement, at 20-23.  With respect to the latter category, Moderna does not seek

---

[5] Moderna's statements regarding intellectual property are detailed in Moderna's response to Defendants' Interrogatory No. 8.  *See* Ex. O, Moderna's Third Supplemental Responses and Objections to Defendants' First Set of Common Interrogatories (Nos. 1-11), August 29, 2023.

Defendants' knowledge of all Moderna patents or applications, but just patents or applications that cover or discuss material related to the Patents-in-Suit.  For example, Moderna has several other patents and patent applications that relate to 1-methylpseudouridine or to Spikevax®.[6]  As a specific example, Moderna's application WO/2012/045075, published on April 5, 2012, and relates to modified mRNA, including the 1-methylpseudouridine modification.  *See* Ex. T, WO/2012/045075 (the "WO '075"), at 15 ("In some embodiments, modified nucleosides include … 1-methyl-pseudouridine[.]").  WO '075 is not in the same family as the asserted '574 patent. Further, Defendants have taken the position in this litigation that Moderna's application US 2013/0266640 (the "'640 application") discloses 1-methylpseduouridine.  Ex. U, Defendants' Preliminary Patent-Related Disclosures (Exhibit C:  Invalidity of U.S. Patent No. 10,72,600), at 38.  The '640 application is not in the same family as the Patents-in-Suit.

Defendants' response does not explain whether either Defendant was aware of (1) any applications discussing 1-methylpseudouridine, like WO '075 or the '640 application, or (2) applications in the same family as the Patents-in-Suit.  *See* Ex. B, Defendants' August 25 Supplement, at 20-23.  That is improper because a defendant's "extensive knowledge of [the plaintiff's] intellectual property rights and products, support[s] the inference of copying that favors enhancement."  *Crane Sec. Techs., Inc. v. Rolling Optics AB*, 337 F. Supp. 3d 48, 57 (D. Mass. 2018), aff'd, 784 F. App'x 782 (Fed. Cir. 2019).

---

[6] *See, e.g.*, Moderna, *Patents*, https://www.modernatx.com/patents (Moderna marks Spikevax® with a reference to its patent marking website which lists patents beyond the Patents-in-Suit).

### 2.    The Information Sought By Interrogatory No. 8 Is Not Privileged

Defendants' assertions that Interrogatory No. 8 seeks information protected by the attorney-client privilege or work product are incorrect.

*First*, the underlying facts about "the circumstances as to when and how [the accused infringer] first became aware of the Patents-in-Suit" and patentee's patent portfolio are not protected from discovery. *Panasonic*, 2020 U.S. Dist. LEXIS 198895, *2. It is well settled that attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *see Vasudevan Software, Inc. v. IBM Corp.*, C.A. No. 09-5897, 2011 WL 1599646, at *2 (N.D. Cal. Apr. 27, 2011) ("[W]hen willfulness has been alleged in a patent infringement case, plaintiffs routinely seek information about the date and circumstances by which a defendant learned about a patent. In such circumstances, the facts about the discovery of the patent are not in themselves protected by the attorney-client privilege and a defendant is obligated to provide the dates of the discovery and the circumstances under which the discovery was made." (internal quotations omitted)). "This is true even if an accused infringer first becomes aware of a patent through its attorney; the mere existence of a patent is a fact, and facts do 'not become privileged just because they are communicated to or by a lawyer.'" *Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, C.A. No. 17-7576, 2019 U.S. Dist. LEXIS 125098, *9-10 (N.D. Ill. July 26, 2019).

*Second*, as for work product protection, "[t]he identities of the individual(s) and the date(s) do[] not reveal the thoughts and opinions of counsel developed in anticipation of litigation and therefore, do[] not constitute attorney work product." *Panasonic*, 2020 U.S. Dist. LEXIS 198895, *2-3; *see also Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003) ("Only when a

-14-

party seeking discovery attempts to ascertain facts, which inherently reveal the attorney's mental impression, does the work-product protection extend to the underlying facts.").[7]

*     *     *

Defendants should be compelled to supplement their response to Interrogatory No. 8 to provide a narrative response to the full scope of the Interrogatory, including specific information, on a patent-by-patent or application-by-application basis, about when and how Defendants became aware of each Patent-in-Suit, each application leading to the Patents-in-Suit, and patents or patent applications discussing 1-methylpseudouridine, such as WO '075 or the '640 application.

## IV.   CONCLUSION

For the foregoing reasons, Moderna respectfully requests an order compelling Defendants to supplement their responses to Moderna's Interrogatory Nos. 7 and 8 to provide the information set forth above.

---

[7] To the extent there are privileged communications relating to this topic, Defendants must identify them and include them on a privilege log. *See Panasonic*, 2020 U.S. Dist. LEXIS 198895, at *2.

Date:  September 1, 2023

Respectfully submitted,

*/s/ Kevin S. Prussia*
William F. Lee (BBO# 291960)
Emily R. Whelan (BBO# 646982)
Kevin S. Prussia (BBO# 666813)
Andrew J. Danford (BBO# 672342)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
william.lee@wilmerhale.com
emily.whelan@wilmerhale.com
kevin.prussia@wilmerhale.com
andrew.danford@wilmerhale.com

Amy K. Wigmore (BBO# 629275)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
amy.wigmore@wilmerhale.com

*Counsel for Plaintiffs ModernaTX, Inc. and Moderna US, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on September 1, 2023, I filed the foregoing document with the United States District Court for the District of Massachusetts and caused it to be served on all registered participants via email.

/s/ *Kevin S. Prussia*

Kevin S. Prussia (BBO# 666813)