# EXHIBIT 23

# EXHIBIT 20



1(202) 551-1901
karthikkasaraneni@paulhastings.com

January 17, 2024

**VIA E-MAIL**

Annaleigh E. Curtis
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109

*Re:*      *Moderna TX, Inc. et al. v. Pfizer Inc. et al., 1:22-cv-113878-RGS (D. Mass.)*

Dear Annaleigh:

We write on behalf of BioNTech in response to the remaining issues in your letters of January 8 and January 11, 2024.

**BioNTech's Proper Assertion of Privilege**

As stated in our January 9 email under separate cover, your January 8 letter still failed to address key questions about Moderna's position that we raised in our December 22 correspondence and during the parties' January 4 meet and confer with regard to Moderna's issue with BioNTech's withholding of privileged documents.   Instead, you made several new assertions for the first time regarding this issue in your January 8 letter.[1]  Accordingly, we disagree that the parties are at an impasse or that BioNTech delayed responding in any way.  We respond to the new issues raised in your January 8 letter below.

First, Moderna complains that BioNTech "affirmatively rel[ied] upon BioNTech and its employees' ████████████████████████████ during the deposition of ████████.  To be clear, the two documents were not used affirmatively but rather on redirect with ████████.  In any event, and as explained at length in our previous correspondence, these two documents are not privileged. (2023.12.22 Letter from K. Kasaraneni.)  They were not used as a "sword," as you contend.  In fact, despite being given every opportunity to do so, Moderna has still not provided an answer to the question of how Moderna is contending that BioNTech used any of these documents about non-asserted patents as "a sword" under these circumstances.

---

[1] Your January 11 letter mischaracterizes our January 9 email, which was not—as you incorrectly suggest—our "respon[se]" to this issue.  We wrote:  "We intend to respond more fulsomely to the several new assertions you made for the first time yesterday regarding this issue when we respond to the remaining issues from your January 8 letter."  This letter serves as the fulsome response we stated we would provide.  In addition, you are wrong that we said you raised new assertions on last week's January 4 meet and confer.  As quoted above, our January 9 email clearly stated that it was your January 8 letter, sent after that meet and confer, that raised new assertions.  The new assertions in your January 8 letter require today's additional response.  Your continued misrepresentation of the record hinders resolution of the parties' various discovery disputes.



Via E-Mail

Annaleigh E. Curtis
January 17, 2024
Page 2

As previously explained, Moderna introduced ███ Ex. 18 (BNT_COMIR_1379559) in order to ask ███
███ about ██ awareness in September 2018 of ████████████████████████
███. (███ Tr. 212:12-219:23.) ████ Ex. 18 is a thread initiated by non-lawyer ████████
emailing non-lawyers ████ and █████████. █████. Ex. 18 shows █████ reply. ███ Ex. 26
(BNT_COMIR_1379492) is ██████████ reply to the same thread, which also copied █████████.
Ex. 26 was introduced on redirect to complete the context of the email thread affirmatively relied upon by
Moderna during ███████ deposition. Likewise, Kuhn Ex. 27 (BNT_COMIR_1379496) was also a
thread initiated by █████ emailing █████████. It also includes ██████████ response,
which copies █████████, and included subject matter that ██████████████████████
███████████████████████████████████████████████████████████—topics that
*Moderna's* questions had put at issue in the deposition, though not relevant, in any event, to the patents in
suit. ██ Ex. 27 was dated less than a month before ████ Ex. 18, and also related to Moderna's general
questions about that exhibit. (*Id.* 254:21-260:2.) "A district court may allow testimony on redirect which
clarifies an issue which the [opposing party] opened up on cross-examination . . . . Otherwise, litigants
could exploit the rules of evidence to create misleading impressions, secure in the knowledge that the
other side was barred from disabusing the jury." *United States v. Catano*, 65 F.3d 219, 226 (1st Cir.
1995). ████ Exs. 26 and 27 are not privileged documents, a fact you have known since last October.
(2023.10.18 Email from R. Hilgar.)

Second, Moderna complains that "there is no reasonable explanation as to how a portion of [███████████
communications] could be privileged, particularly since all these documents involve communications to
or from █████████████████." It is unclear to us why Moderna continues to ignore the fact that ████
██████████████, was not an attorney, and that BioNTech is not basing any claim of privilege on the
notion that █████████ himself provided legal advice in these specific communications. As we have
repeatedly asked, please provide us with any legal support for Moderna's apparent position that the mere
production of non-privileged documents, including those containing ███████████████, can somehow
waive the attorney-client privilege that attaches to completely different, later-generated documents that
involve other people, including attorneys, and reflect legal advice. Your new quotation of mere language
like ████████████████████████████████████████████████████████████████████
███████ in communications between non-lawyers does not make those particular documents privileged.
In each case, the actual communications in question did not include legal advice from a lawyer or a
request to or from a lawyer for the same.

Third, we turn to the privileged documents BioNTech clawed back at ██████████████████ depositions.
As we have repeatedly stated, including at the depositions, in our privilege logs, in the prior
correspondence on this issue, and during the parties' meet and confer last week, in the clawed-back
emails from 2020, █████████ specifically provided privileged information communicated to him by
individually named outside counsel at the US law firm ████████████ to other BioNTech
employees and requested further privileged information from those employees on behalf of ████ to
facilitate █████████ provision of legal advice. Documents created by attorneys at █████ were themselves
included in the communication, and the involvement of outside counsel was evident on the face of those
documents, through the unambiguous labeling of the documents by ██████ as "Privileged &



Via E-Mail

Annaleigh E. Curtis
January 17, 2024
Page 3

Confidential." (2023.12.22 Letter from K. Kasaraneni.)  The attorney-client privilege that existed between BioNTech and ███████ has no relation to completely different non-privileged communications.

Fourth, simply put, BioNTech's determination of whether to produce, redact, withhold and log, or claw back and log, any given document was not made based on whether that document is "good" or "bad" for BioNTech's positions in this litigation.  Any suggestion to the contrary is not only baseless, but offensive.  In fact, none of the documents in question discuss the patents-in-suit.  When we asked you during last week's meet and confer to provide your basis for asserting that the non-privileged documents BioNTech has produced were "good" for BioNTech, your response was limited to the two documents used in redirect of ███████ to complete the context for a thread that you affirmatively relied upon during ███ ███ direct examination.  We have addressed this insufficient basis above.  There has been no "cherry-picking" or "picking and choosing" of only beneficial documents for production.

Your suggestion that our diligence in asserting privilege is improper is misguided.  It is a distraction from your misleading omission of material fact.  In October, you requested that BioNTech confirm that five specific non-attorney documents were not privileged.  We did.  You did not object to BioNTech's express position that this did not waive privilege over any other documents.  Indeed, it could not.  Instead, you waited two months, until December, to assert that BioNTech's confirmation that those five non-attorney documents were not privileged had somehow waived attorney-client privilege over any and all ███████, no matter how different in circumstance, by outside counsel, simply by virtue of certain names appearing on emails.  Meanwhile, you improperly used documents that stated they were "Privileged" more than once at deposition to manufacture this dispute.  To the extent this evidences a deliberate scheme by Moderna to engineer a broad and baseless waiver of BioNTech's attorney-client privilege, we reserve all rights with respect to this behavior.  (2023.12.22 Letter from K. Kasaraneni.)

Finally, we repeat our December 22 request for the certified translations of BNT_COMIR_1339967 and BNT_COMIR_1379459 on which Moderna has purportedly relied.  Please provide them or identify them in Moderna's production if they have already been produced.  (2023.12.22 Letter from K. Kasaraneni, at 3 n.2.)

**███████████   Testing on ███████████**

BioNTech disputes that it is "obligated" to produce any ███████████ testing that may not already be in its existing production, if any such documents exist.  As stated during last week's meet and confer, we have conducted the agreed-upon searches and produced what nonprivileged documents we found.  Moderna does not dispute this.  Moreover, Moderna has had, *e.g.*, BNT_COMIR_1030161, a BioNTech document discussing ███████████ since September 2023 and never sought further information about this topic.  BioNTech also disputes that any such testing would be "unquestionably relevant to infringement" of Moderna's patents-in-suit.  Beyond this conclusory statement, Moderna has provided no explanation of any alleged relevance.



Via E-Mail

Annaleigh E. Curtis
January 17, 2024
Page 4

Given that Moderna has refused to conduct new custodial searches (*see, e.g.*, 2023.10.30 Email from N. Xu.), we see no basis for Moderna's request that BioNTech ask additional individuals about additional documents.

Notwithstanding, in the interest of resolving this dispute, ███████ has informed us that he is not aware of any ███████ or other testing on ████████████ , as requested by Moderna.

**Forecasting Documents**

The parties have resolved this issue through the deposition of ███████, who was prepared and testified as to the documents marked as ██████ Exhibits 10 and 11.

**Production of ███████ Document**

As you are aware, ███████ is a third party to this action, who is also represented by Paul Hastings. This issue has been addressed under separate cover.

**Moderna's Remaining Deposition Time**

Moderna had and continues to have the chance to be timely by reducing the depositions it seeks; but Moderna chooses not to do so. The parties have discussed this at length in prior correspondence, and there is no need to rehash it here. BioNTech disagrees it has engaged in any "prejudicial conduct" in scheduling fact witness depositions, including in response to Moderna's 79 incredibly broad Rule 30(b)(6) topics, and will not be engaging in any "dilatory conduct" in forthcoming depositions as you suggest. We expect Moderna to comply with the parties' agreed-upon limits on deposition time, which were carefully negotiated by the parties long before fact discovery, and intend to hold Moderna to the same should it attempt to unilaterally exceed those limits.

**Moderna's Improper Privilege Assertions**

We have considered your new assertion that your redactions were "based on [your] consideration of other privileged information, communications with Dr. Schrum, and Dr. Schrum's testimony," and we note that you have not actually cited any related privilege log entries, communications, or additional testimony. (2024.01.11 A. Curits Letter at 2.) Nor did your letter respond to our point that the seven privilege log entries you identified with ███████ all predate Dr. de Fougerolles' white paper, and thus don't appear to communicate the white paper itself to her as a request for legal advice, as you allege. (2024.01.09 K. Kasaraneni email.) You mentioned your consideration of still "other privileged information and communications with Dr. de Fougerolles," but cited no additional privilege log entries, and you declined to expressly address our request to confirm that your position is that the paper only includes substance related to privileged intellectual property analysis or protection, and nothing else. (2024.01.11 A. Curtis Letter at 2-3; 2024.01.09 K. Kasaraneni email.) Moderna's latest correspondence has not resolved BioNTech's concern, so we understand that you agree we are now at an impasse on this issue. (2024.01.11 A. Curtis Letter at 2.)



Via E-Mail

Annaleigh E. Curtis
January 17, 2024
Page 5


Sincerely,

*/s/ Karthik R. Kasaraneni*

Karthik R. Kasaraneni
for PAUL HASTINGS LLP


KRK