# EXHIBIT 28

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MODERNATX, INC. and MODERNA US, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PFIZER INC., BIONTECH SE, BIONTECH MANUFACTURING GMBH, and BIONTECH US INC.,<br><br>Defendants. | Case No. 1:22-cv-11378-RGS<br><br>████████████ |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL MODERNA'S PRODUCTION OF DOCUMENTS AND INFORMATION ERRONEOUSLY WITHHELD AS PRIVILEGED

# TABLE OF CONTENTS

I.    Introduction ............................................................................................................... 1

II.    Background ................................................................................................................ 2

    A.    The Schrum White Paper ................................................................................. 2

    B.    The de Fougerolles White Paper ..................................................................... 6

III.    Legal Standards ......................................................................................................... 8

IV.    Argument ................................................................................................................... 9

    A.    Moderna Fails to Prove That the Schrum White Paper Reflects or Seeks Privileged Legal Advice ...................................................................................................... 9

        1.    Moderna Has Not Shown That the Alleged "Feedback" from Dr. Sieczkiewicz Reflects Privileged Legal Advice, as Opposed to Nonprivileged Scientific or Business Input 9

        2.    Moderna Fails to Prove That an Attorney-Client Relationship Existed Between Dr. Sieczkiewicz and Moderna .......................................................................................... 12

    B.    Moderna Fails to Prove That the de Fougerolles White Paper Reflects or Seeks Privileged Legal Advice .................................................................................................... 13

        1.    The de Fougerolles White Paper Is a Scientific Document That Should Not Be Withheld for Privilege, Let Alone in Full ....................................................................... 13

        2.    Moderna's Inconsistent Statements Undermine the Credibility of Its Privilege Assertion over the de Fougerolles White Paper ............................................................... 14

V.    Conclusion ............................................................................................................... 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cavallaro v. United States,*
 284 F.3d 236 (1st Cir. 2002) ........................................................................................8, 12, 13

*F.D.I.C. v. Ogden Corp.,*
 202 F.3d 454 (1st Cir. 2000) .......................................................................................................8

*In re GE ERISA Litigation,*
 No. 1:17-cv-12123-IT, 2022 WL 247719 (D. Mass. Jan. 26, 2022) ...........................8, 10, 14

*In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.),*
 348 F.3d 16 (1st Cir. 2003) .......................................................................................8, 11, 12

**Other Authorities**

Fed. R. Civ. P. 26(b)(5)(B) ....................................................................................................1, 17

## I.      **INTRODUCTION**

Defendants BioNTech SE, BioNTech Manufacturing GmbH, and BioNTech US Inc. (collectively, "BioNTech") and Pfizer Inc. ("Pfizer") (collectively, "Defendants") respectfully request that the Court compel ModernaTX, Inc. and Moderna US, Inc. (collectively, "Moderna") to produce the following two documents in unredacted form:  (1) the document bearing Bates number MOD_000282515 ("the Schrum white paper"); and (2) the document bearing Bates number MOD_000332132 ("the de Fougerolles white paper").   Moderna improperly asserts privilege in connection with these two scientists' papers, which are directly relevant to their messenger RNA ("mRNA") research—the very scientific work upon which Moderna affirmatively relies in this case.  At a minimum, Defendants respectfully request that the Court review *in camera* the redactions from the Schrum and de Fougerolles white papers pursuant to Fed. R. Civ. P. 26(b)(5)(B).

*The Schrum white paper:*  Moderna's basis for asserting privilege over the Schrum white paper is that it is allegedly a "[m]emorandum conveying or reflecting legal advice or analysis of Greg Sieczkiewicz regarding intellectual property analysis or protection."  (Ex. A at Entry No. 3215.)  As a preliminary matter, Moderna has failed to show that the Schrum white paper is a "memorandum"—let alone from or to an attorney—as it contains no "From" or "To" line at all.  It is a scientific paper that bears no privilege markings beyond the redactions Moderna added during this litigation.  Regardless, Moderna has failed to carry its burden of showing that the Schrum white paper "convey[s] or reflect[s] legal advice or analysis of Greg Sieczkiewicz."  The deposition of Dr. Schrum showed that Dr. Sieczkiewicz, in addition to being Vice President of Intellectual Property, was a partner and investor having a business role at venture capital firm Flagship Ventures (the company where the disputed information was generated).  Thus, any "feedback" he provided regarding the Schrum white paper was not legal in nature merely based

1

on his being a lawyer, and the context surrounding the redacted information at issue—including that it appears to have been previously shared with a third-party news reporter, which would waive any privilege—strongly suggests that it was not.  Moreover, even if the disputed information were privileged, Moderna has not established that it, as opposed to third-party Flagship, could assert privilege over a copy of a communication residing in one of Moderna's scientists' custodial files that was between Flagship and Dr. Sieczkiewicz.

   ***The de Fougerolles white paper:***  There is no dispute that the de Fougerolles white paper is a scientific paper authored by non-attorney Moderna scientist Dr. Antonin de Fougerolles. Moderna produced the complete white paper in this litigation, but then clawed the document back in its entirety three business days before Dr. de Fougerolles' deposition, refusing to provide a redacted version.  (Ex. B at 10; *id*. at 6-7.)  Moderna's contradictory and ever-changing bases for asserting privilege over the entire de Fougerolles white paper fail to satisfy its burden.  And Moderna cannot justify its overbroad privilege claim for the entire document.  Even assuming the paper includes some privileged information, Moderna has not shown why technical or business information commonly included in scientific white papers should be shielded entirely from discovery in this case.

## II. <u>BACKGROUND</u>

### A. <u>The Schrum White Paper</u>

   The Schrum white paper, titled "2010 Fellows – RNA Agonism," is a technical document written by two scientists, Drs. Jason Schrum and █████, while they were "Entrepreneurial Fellows" at Flagship (Ex. C at 74:24-75:16; *id*. at 9:22-10:20, 60:2-61:16, 263:2-5).[1]  The Schrum

---

[1] Dr. Schrum is a former employee of Moderna.  He was deposed in this case on December 19, 2023, represented by Moderna's counsel.  As discussed below, the parties met-and-conferred about the redactions and his testimony following his deposition but were unable to resolve their dispute.

white paper was in Moderna's possession, as it was produced from the employee files of another

Moderna scientist, ███████████—not from Flagship's files.  (Ex. D at Final Page (metadata

of ████████████████████); Ex. C 52:3-19.)   It summarizes various scientific

developments and business opportunities in the field of mRNA therapeutics that had been

identified by Drs. Schrum and ████, including a "survey-level" investigation "focused on RNA

agonism, [which] included mRNA as a potential therapeutic."  (Ex. C at 270:17-273:10.)  This

includes a scientific review that discusses the published work of Drs. Katalin Karikó and Drew

Weissman at the University of Pennsylvania ("UPenn"), who had already reported that modifying

mRNA with pseudouridine, 5-methyl-cytidine, and other naturally occurring nucleotides reduced

the mRNA's "innate immune response."  (Ex. D at -515-516.)  Indeed, Dr. Schrum testified at his

deposition that he spoke to Dr. Karikó about her papers as part of his research during this time.

(Ex. C at 272:16-273:11.)  The prior-art publications by Drs. Karikó and Weissman are discussed

in the Schrum white paper, and are at issue in the present litigation.  (*E.g.*, D.I. 45 at 4-6 (¶¶ 7-9),

62-65 (¶¶ 15-21), 67-68 (¶¶ 29-32), 70 (¶ 46).)

The Schrum white paper discusses the body's "potent innate immune response" to foreign

mRNA as a reason why mRNA therapeutics had "limited capacity" up to that time.  (Ex. D at -

515.)  It noted that, in 2005, Drs. Karikó and Weissman were "[t]he first group to publish data

incorporating modified nucleosides into mRNA."  (*Id*. at -515-516.)  The paper concludes that "the

use of additional modified mRNA molecules" beyond those identified by Drs. Karikó and

Weissman would be "critical in the design of synthetic mRNAs for ModeRNA."  (*Id*. at -522.)

After discussing a research plan to look for "additional modified nucleotide analogs," the Schrum

white paper goes on to say, in a sentence that was redacted in part by Moderna, "If we are not able

to identify nucleotides that will tolerate the ribosome beyond pseudouridine and 5-methyl-cytidine,

[*REDACTED*].”  (*Id*. at -524-525.)   In short, Moderna redacted a portion of a sentence in a scientific paper following a reference to two of the chemical modifications disclosed by Drs. Karikó and Weissman.[2]

Defendants first asked Moderna for its basis for redacting the Schrum white paper on October 16, 2023, based on the parties involved because the document appeared on its face to belong to Flagship (*i.e.*, not Moderna).  (Ex. E at 2, Attach. 2 (identifying MOD_00282515).)  Moderna refused.  (Ex. F at 2; Ex. G at 2-3.)  After extensive correspondence, on November 17, Moderna asserted that Dr. Schrum’s white paper was a “Memorandum conveying or reflecting legal advice or analysis of Greg Sieczkiewicz regarding intellectual property analysis or protection.”  (Ex. H at Entry No. 3215.)   With Dr. Schrum’s deposition then scheduled for December 1, Defendants asked to meet and confer regarding this purported basis, which implicated “legal advice of only a third-party’s attorney, Greg Sieczkiewicz, without showing a common legal interest.”  (Ex. I at 2.)   Through a meet and confer, Defendants sought to understand whether Moderna could show any basis for a common legal interest with Flagship.  (*Id*.)

Instead of scheduling a meet and confer, on November 26 and 27, Moderna produced a large volume of Dr. Schrum’s documents, and the deposition was moved to December 19.  Then, on December 6, Moderna responded that the white paper “reflects correspondence with Dr. Sieczkiewicz,” and that, “in the timeframe during which [the white paper was] made, Dr. Sieczkiewicz was an in-house attorney at Flagship who provided Moderna legal advice, including specialized guidance regarding intellectual property protection and analysis provided by Dr. Sieczkiewicz.”  (Ex. J at 6.)   “Accordingly,” said Moderna, “Moderna correspondence with

---

[2] Moderna has also redacted, *inter alia*, large swaths of the Schrum white paper that appear under the heading “Competition,” which seem to analyze competitors’ technology, and do not from context appear to communicate any legal analysis or requests for the same.  (Ex. D at -520-525.)

Flagship Ventures and/or Mr. Sieczkiewicz is privileged." (*Id.*)

With these representations from Moderna, on December 19, Defendants proceeded to ask Dr. Schrum about the Schrum white paper as produced. Dr. Schrum testified that, while the paper "included feedback" from others at Flagship, including Dr. Sieczkiewicz, the only authors of the document were him and fellow scientist (and non-lawyer) ███████. (Ex. C at 74:22-75:19; *id.* at 4:14-15; 353:2-16.) Dr. Schrum further testified that Dr. Sieczkiewicz, an attorney, was also a partner at Flagship who provided business and scientific feedback to Flagship. (*Id.* at 204:5-9; *id.* at 186:13-19, 356:17-357:8.) Dr. Schrum also testified that Dr. Sieczkiewicz "would review what was going on, and sometimes he would have business comments, sometimes science comments, and sometimes legal comments." (*Id.* at 204:5-9.) Even on redirect by Moderna's counsel, Dr. Schrum never testified that any legal advice of Dr. Sieczkiewicz's was "reflected" in the white paper. (*See id.* at 357:9-11.) Rather, when asked the question point-blank, Dr. Schrum testified that he did not know. (*Id.* at 354:18-355:12.) Other documents confirm that Dr. Sieczkiewicz was responsible for non-legal business tasks of Flagship at the time. (Ex. K at -0021-22; Ex. L.)

Following the Schrum deposition, Defendants asked Moderna to meet and confer on January 4. (Ex. B at 7-8.) At that meet and confer, Moderna was unable to provide any information that could justify its basis for claiming privilege over this third-party Flagship document. (*Id.* at 3.) Moderna also subsequently disclaimed any common-interest privilege between itself and Flagship that could cover the Schrum white paper. (Ex.M at 7.) Instead, Moderna represented only that it was "founded by"[3] and "operated as a part of" Flagship in 2010,

---

[3] In fact, when asked "Who founded Moderna?," Dr. Schrum testified, "The founders of Moderna were Ken Chien, Derrick Rossi, Bob Langer, and Noubar Afeyan." (Ex. C at 189:6-8.) Moderna's correspondence did not mention or identify any evidence of these individuals' role in the founding of Moderna, as compared to Flagship, suggesting Moderna's ownership and control structure may have been complex in 2010. Moderna has not shown that Flagship controlled Moderna.

that Flagship was still generally providing legal counsel to Moderna when the Schrum white paper was created, and that the white paper reflects Dr. Sieczkiewicz's legal advice to Flagship and Moderna.  (*Id.*)

### B.     The de Fougerolles White Paper

The de Fougerolles white paper is dated May 19, 2013, and identifies non-attorney scientist Dr. Antonin de Fougerolles—a former employee of Moderna and named inventor on the '574 patent-in-suit—as its author.  Once again, the document is not itself a communication, let alone from or to an attorney, and bears no privilege markings.  Moderna produced this white paper, but clawed it back on December 15, 2023, three business days before Dr. de Fougerolles' December 20 deposition.  (Ex. B at 10.)  Pursuant to the parties' agreed-to protective order procedures, BioNTech contested this claw-back on December 20 and requested that Moderna promptly produce a redacted version along with its basis for asserting privilege.  (*Id.* at 9.)

On December 21, Moderna responded that it would not be producing a redacted copy, stating its basis (in multiple alternatives) as:  "The document is a *memorandum requesting or reflecting* legal advice or analysis regarding intellectual property analysis or protection.  The attorney whose advice was *requested* was ███████."  (*Id.* at 6-7.)  Later that same day, Moderna produced its Sixth Supplemental Privilege Log, which set forth the basis of privilege as a "*[p]resentation conveying or reflecting* legal advice or analysis regarding intellectual property analysis or protection," but without identifying any particular attorney.  (Ex. A at Entry No. 3278.)  On December 22, Defendants reminded Moderna that the "Protective Order required Moderna to 'reproduce any document or ESI that is comprised only partially of Privileged Information with the Privileged Information redacted.'"  (Ex. B at 7-8 (quoting D.I. 67, ¶ 9.3).)  One day in advance of a scheduled January 4, 2024 meet and confer (Ex. B at 4), Moderna provided a third and different privilege claim, asserting privilege over the entirety of the scientific paper:  "It is Moderna's

6

understanding that the document *reflects* legal advice from ▮▮▮▮▮ while also *seeking* *additional* legal advice from ▮▮▮▮▮. The document is thus privileged in full . . . ." (Ex. N at 2-3.)

During the meet and confer, Defendants asked Moderna to explain how the entire scientific white paper, which identified a non-attorney scientist as its author and lacked any "From:" or "To:" information, could be a "memorandum" or other communication, let alone to ▮▮▮▮▮. (Ex. B at 3.)  Defendants also asked how Moderna had determined that the document entirely and exclusively reflected ▮▮▮▮▮ legal advice regarding "intellectual property," or was requesting such advice from her. (*Id*.)  Moderna answered that, as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮, it "believed" based on (i) Dr. de Fougerolles' position at the company and (ii) the general nature of the interactions between him and ▮▮▮▮▮ that the document reflected her legal advice. (*Id*.)  Moderna was unable to point to any evidence that the white paper contained ▮▮▮▮▮ privileged legal advice or analysis, or that it was communicated to her. (*Id*.)

In a January 8 letter, Moderna identified seven emails on its privilege log and asserted they supported a claim of privilege over the de Fougerolles white paper. (Ex. M at 7.)[4]  But all of these emails were sent and received ***before*** May 19, 2013, the date of the de Fougerolles white paper, and none followed the paper.  Thus, they could not show, at a minimum, that the entirety of a ***later*** scientific white paper by Dr. de Fougerolles was "seeking additional" legal advice from ▮▮▮▮▮ ▮▮▮▮, even if it allegedly already "reflect[ed]" advice in the document. (Ex. N at 2-3.)  In other words, as these emails all pre-date the white paper, none could have been an email to ▮▮▮▮▮ attaching that paper "seeking additional" legal advice.   Moderna's letter made no further

---

[4] Moderna's privilege log vaguely described these emails as either "conveying," "reflecting," or "requesting" "legal advice or analysis regarding intellectual property analysis or protection." (Ex. A at Entries No. 51, 60, 63, 64, 66, 3276, 3277.)

representations as to the entries' connection to the separate de Fougerolles white paper.  Nor did it attempt to explain how these entries substantiate its refusal to produce the document, or even produce a redacted version of it.  (Ex. B at 1-2.)

## III.   LEGAL STANDARDS

"[T]he party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived."  *In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003); *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 460-61 (1st Cir. 2000).  The First Circuit has recognized eight "essential elements" of privilege:  "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."  *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002).

For example, "while the privilege extends to communications between corporate officers and in-house counsel, such communications are only protected if they were made to the individuals in their capacities as lawyers, not as business strategists or negotiators."  *In re GE ERISA Litig.*, No. 1:17-cv-12123-IT, 2022 WL 247719, at *2 (D. Mass. Jan. 26, 2022).  "Put simply, business advice, such as financial advice or discussions concerning business negotiations, is not privileged." *Id*.  In addition, "[t]he presence of third parties during an attorney-client communication is often sufficient to undermine the 'made in confidence' requirement . . . or to waive the privilege." *Cavallaro*, 284 F.3d at 246.  That is, "[w]hen otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised." *In re Keeper*, 348 F.3d at 22.

8

IV.    **ARGUMENT**

Moderna has not satisfied its burden of showing that the Schrum or de Fougerolles white papers seek or reflect "legal advice" from "a professional legal advisor in his capacity as such," or that the white papers were created for that purpose (*Cavallaro* elements 1-3).  Nor has Moderna shown that the Schrum white paper was "made in confidence" by or to "the client" Flagship (*Cavallaro* elements 4-5), or that Flagship "permanently protected" disclosure to third parties like Moderna and a reporter "by [itself] or by the legal advisor" (*Cavallaro* elements 6-7).  In addition, Moderna's inconsistent and ever-changing bases for asserting privilege over the entire de Fougerolles white paper undermine the credibility of its privilege claim.

A.    **Moderna Fails to Prove That the Schrum White
Paper Reflects or Seeks Privileged Legal Advice**

1.    **Moderna Has Not Shown That the Alleged "Feedback"
from Dr. Sieczkiewicz Reflects Privileged Legal Advice,
as Opposed to Nonprivileged Scientific or Business Input**

Moderna has not shown that the Schrum white paper satisfies *Cavallaro* elements 1-3, *i.e.*, that it actually reflects legal advice communicated to Moderna by Dr. Sieczkiewicz in his capacity as Moderna's attorney for the purpose of providing that legal advice.

There is no dispute that the Schrum white paper was authored by two scientist non-lawyers, and has no indicia of privilege on the document itself.[5]  Dr. Schrum testified that he was not requesting legal advice in his white paper, and that he did not know whether it actually reflects legal advice, as Moderna asserts.  (Ex. C at 354:18-355:12.)  The non-redacted text immediately surrounding Moderna's redactions suggests that Moderna is redacting disclosures concerning the scientific topic of the chemical modifications to mRNA at issue in this case as those first disclosed

---

[5] The Schrum white paper is not, on its face, a "memorandum" or other communication—let alone from or to an attorney—as it contains no "From" or "To" line at all.

by Drs. Weissman and Karikó.  (*E.g.*, Ex. D at -524-525.)  Moderna cannot redact its scientists' discussion of some of the work by Drs. Karikó and Weissman, while producing the remainder.

Moderna's assertion of privilege is based on a generalized statement that Dr. Sieczkiewicz provided feedback reflected in the document.  (Ex. C at 353:2-16.)  But even if that argument were accepted, the deposition of Dr. Schrum revealed that Dr. Sieczkiewicz, as an investor and scientist, provided business and science (*i.e.*, not only legal) feedback to Flagship.  (*Id*. at 204:5-9; 212:7-10; 213:19-24; Ex. K at -021-022; Ex. L.)  Thus, the mere inclusion of Dr. Sieczkiewicz's name on the Schrum white paper as a "Project Sponsor" among others, or even testimony that the document may reflect some type of "feedback" (*e.g.*, Ex. C at 353:2-16), cannot prove that the redacted portion of the Schrum white paper contains Dr. Sieczkiewicz's legal advice, as opposed to scientific or business input.  Such information would not be privileged.  *In re GE*, 2022 WL 247719, at *2.  Even on redirect by Moderna's counsel who also was representing Dr. Schrum, Dr. Schrum never testified that any of Dr. Sieczkiewicz's legal advice was "reflected" in the white paper, as Moderna had contended.  (Ex. C at 356:17-357:11.)  Rather, when asked the question point-blank, Dr. Schrum said he did not know.  (*Id*. at 354:18-355:12.)

Dr. Schrum's general testimony that **one** of Dr. Sieczkiewicz's roles was to give legal advice to Flagship (*id*. at 204:5-9, 356:17-357:8), and his general testimony that the Schrum white paper "included" Dr. Sieczkiewicz's nonspecific "feedback," is not enough to establish privilege. For example, in *In re GE ERISA Litigation*, this Court found that mere declarations from in-house and outside counsel stating that, during the relevant time, "in-house GE counsel and external counsel provided legal advice to GE . . . on a range of topics" related to the events underlying the dispute was insufficient to find privilege.  *In re GE*, 2022 WL 247719, at *2.  In particular, "the declarations [did] not connect this work . . . to any privilege log entries," such that "a tandem

reading of the declarations and the privilege log descriptions does not remedy the [insufficient privilege log]." *Id.* at *3. "[T]he court [could not] discern the roles played by GE's in-house and outside counsel in the withheld communications," and ordered the documents produced for *in camera* review. *Id.* Here, too, there is no way to discern any specific alleged legal role for Dr. Sieczkiewicz with respect to the Schrum white paper—particularly given his additional scientific and business roles. In short, Moderna fails to carry its burden of identifying any evidence that the redacted material in the Schrum white paper reflects legal advice from Dr. Sieczkiewicz.

In fact, the evidence of record suggests precisely the opposite. A news story published in the scientific journal *Nature* in 2015 mentions that Moderna had disclosed to the reporter "a 2010 internal report from Flagship Ventures." (Ex. O at 27.) The reporter directly quoted portions of this document as stating "that if scientists could not identify alternatives to pseudouridine and 5-methylcytidine, 'our company technology may be limited to licensing IP from UPenn.'" (*Id.*)[6] Given the context—which includes language matching disputed portions of the 2010 document at issue (Ex. D at -524-525)—the article appears to be referring to having received the Schrum white paper. At a minimum, this further supports *in camera* review by this Court, including to determine whether any alleged privileged information was waived through disclosure to a third party. *See, e.g.*, *In re Keeper*, 348 F.3d at 22.

In addition, Dr. Schrum also testified that, even in the context of his legal function, Dr. Sieczkiewicz served as "Vice President of Intellectual Property at Flagship Ventures." (Ex. C at 356:20-357:11 (emphasis added).) Dr. Schrum did not testify that Dr. Sieczkiewicz was actually Moderna's attorney, nor has Moderna provided any evidence of the same despite repeated requests.

---

[6] Indeed, in 2017, Moderna, like BioNTech, took a license to UPenn's modified nucleoside patents, including 1-methylpseudouridine, for which UPenn collects royalties on Moderna's COVID-19 vaccine sales. (D.I. 45 at 68 (¶ 31).)

As such, Moderna has also failed to show that, even if it were Dr. Sieczkiewicz's legal advice in the Schrum white paper, that this advice was provided "in his capacity" as Moderna's attorney (*i.e.*, *Cavallaro* element 2).

### 2. Moderna Fails to Prove That an Attorney-Client Relationship Existed Between Dr. Sieczkiewicz and Moderna

Moderna has also failed to show that the Schrum white paper satisfies elements 4-7 of privilege, *i.e.*, that it was "made in confidence" by or to "the client" Flagship (elements 4-5) or that Flagship "permanently protected" disclosure to third parties, such as Moderna, "by [itself] or by the legal advisor" (elements 6-7). *Cavallaro*, 284 F.3d at 245. The white paper is a Flagship document, set on Flagship letterhead, but was produced from *Moderna's* files.

Even assuming, *arguendo*, that Dr. Sieczkiewicz did provide specific legal advice to Flagship that is reflected in the Schrum white paper (which Moderna has not shown), any privilege that may have attached was vitiated by either the simultaneous presence of third party Moderna when the advice was rendered, or when Flagship later disclosed its non-redacted Schrum white paper to Moderna. *Id*. at 246 ("The presence of third parties during an attorney-client communication is often sufficient to undermine the 'made in confidence' requirement . . . or to waive the privilege."); *In re Keeper*, 348 F.3d at 22 ("When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised."). Moderna does not dispute that it and Flagship are separate entities, and that this was the case in 2010. (*See, e.g.*, Ex. C at 60:2-61:16 (testifying that Flagship and Moderna were separate employers in 2010).) Indeed, it was necessary for Defendants to serve a third-party document subpoena on Flagship in this case. Nor does any common-interest privilege apply, as Moderna has represented. (Ex. M at 7.)

Moderna makes a number of unsupported and irrelevant representations in response that cannot restore the claimed privilege. Without citing any evidence, Moderna asserts that it operated as a separate entity that was "part of" Flagship in 2010, such that Flagship provided legal counsel to Moderna. (*Id.*) Moderna further states that, "at the time of the creation" of the Schrum white paper (*i.e.*, possibly over a year later on July 24, 2011, according to Moderna's own privilege log), Flagship was still providing Moderna with legal services. (*Id.*; Ex. A at Entry No. 3215.) But as noted above, despite Defendants' repeated requests, Moderna has identified no formal commemoration or contemporaneous documentation that, as of the date of the Schrum white paper, Moderna and Dr. Sieczkiewicz had an attorney-client relationship, such as an engagement letter or other legal services contract. (*See, e.g.*, Ex. M at 7.) Such evidence is required here. *See Cavallaro*, 248 F.3d at 248 (affirming that, absent "formal[] commemorat[ion]" with "contemporaneous documentation" of an alleged "professional relationship" with a third party "that would trigger a privilege," there was no privilege); *id.* (finding that a "statement [that] was made after the fact, in the midst of litigation, with little support in the contemporaneous record" that a privileged professional relationship existed was insufficient). Thus, any legal "feedback" that Dr. Sieczkiwicz provided to Flagship, which Drs. Schrum and ███ then purportedly "included" in the redacted portions of the white paper (Ex. C 353:2-16), would not have remained privileged in the presence of third party Moderna, or upon the provision of that white paper into Moderna's hands, or those of the media.

### B. Moderna Fails to Prove That the de Fougerolles White Paper Reflects or Seeks Privileged Legal Advice

#### 1. The de Fougerolles White Paper Is a Scientific Document That Should Not Be Withheld for Privilege, Let Alone in Full

As with the Schrum white paper, Moderna has failed to show that the de Fougerolles white paper satisfies *Cavallaro* elements 1-3, *i.e.*, that it entirely either reflects legal advice

13

communicated to Moderna by outside counsel, ▌▌▌, for the purpose of providing that legal advice, or was itself a request for the same.

There is no dispute that the de Fougerolles white paper indicates on its face that it was authored by non-lawyer scientist Dr. de Fougerolles.  Any technical or business insights he may have included in his own scientific white paper, separate from any alleged legal advice or requests for legal advice from ▌▌▌, would of course not be privileged.  *In re GE*, 2022 WL 247719, at *2.  Indeed, Moderna's ever-changing, contradictory bases for asserting privilege over the de Fougerolles white paper refer only to legal advice or analysis regarding "intellectual property," not the type of technical- or business-related information commonly found in scientific white papers.  As reflected in the parties' agreement in the Protective Order, Moderna is required "to produce any documents or ESI that is comprised only partially of Privileged Information, with the Privileged Information redacted." (D.I. 67, ¶ 9.3.)  The nonprivileged nature of Dr. de Fougerolles' scientific white paper would be readily apparent upon *in camera* review (to the extent the Court deemed this would be necessary before ordering the requested discovery).

### 2.    Moderna's Inconsistent Statements Undermine the Credibility of Its Privilege Assertion over the de Fougerolles White Paper

Moderna's basis for asserting privilege over the de Fougerolles white paper is rife with contradictions and entirely unclear.  It has put forth three separate and inconsistent bases for privilege, and no evidence to support any of them.

Moderna's first basis was that the de Fougerolles white paper was a "*memorandum requesting or reflecting* legal advice or analysis regarding intellectual property analysis or protection.  The attorney whose advice was requested was ▌▌▌." (Ex. B at 8-9).  This makes little sense.  As noted above, the white paper is not a "memorandum" or other

communication "From" or "To" an attorney, and bears no privilege markings.  Nor was it clear whether Moderna had been "requesting *or* reflecting" legal advice.  Which was it?

Moderna provided a second, contradictory basis the very same day, describing the de Fougerolles white paper as a "*[p]resentation conveying or reflecting* legal advice or analysis regarding intellectual property analysis or protection."  (Ex. A at Entry No. 3278.)  Not only is a "presentation" not a "memorandum" (or, for that matter, a white paper), but Moderna no longer appeared to assert that the white paper was itself a "request[]" to ███████ at all.  The privilege log also identified the author as ███████████ and its date as June 14, 2013, contradicting the nonprivileged information readily apparent on the face of the document (*i.e.*, that Dr. de Fougerolles was the author, and the May 19, 2013 date).  (*Id.*)

But then Moderna provided its "understanding that *the document reflects* legal advice from ███████████ while also *seeking additional* legal advice from ███████████," where the legal advice "regard[s] intellectual property analysis or protection."  (Ex. N at 2-3.)  Moderna's third alleged basis for claiming privilege cites nothing to (i) substantiate this "understanding," (ii) justify withholding scientific and business subject matter unrelated to legal advice on "intellectual property," or (iii) explain how Dr. de Fougerolles' scientific white paper could entirely and exclusively reflect or request ███████ legal advice on "intellectual property."  Instead, during a meet and confer, Moderna stated only its "belief" that this is the case, and declined to verify whether it had actually confirmed this belief with ███████ or anyone else.  (Ex. B at 3.)[7]

Moderna identified seven privilege log entries as purported support for its privilege assertion, but they were not accompanied by any evidence or explanation connecting them to the

---

[7] Confusingly, Moderna implied that it had not done so because ███████████████████ ████████████████████████████████████████████████ ████████████ (Ex. B at 3; Ex. M at 7.)

15

separate de Fougerolles white paper.  (Ex. M at 7.)  While each entry was a communication between ███████, Dr. de Fougerolles, and others, the emails were all sent between March 8 and April 30, 2013.  None could have attached Dr. de Fougerolles' later-in-time, May 19, 2013 white paper—which was not itself correspondence—for the purposes of providing it to ███████ as a means of "seeking additional legal advice" from her, as Moderna contends.  (Ex. N at 2-3.)  Moreover, to the extent Moderna asserts that any non-"intellectual property" substance of the de Fougerolles white paper is also privileged, Moderna did not describe any of the seven emails as communicating legal advice regarding anything other than "intellectual property."  (Ex. B at 1-2; Ex. P.)  Finally, and perhaps most importantly, it is not credible to suggest that the entirety of this scientist's paper was merely acting as ███████ secretary, transcribing her legal advice to no recipient.  Even if Dr. de Fougerolles had previously received privileged legal advice from ███████ that would not render *all* of his own scientific- and business-related work thereafter privileged.

At best, Moderna's confusing and inconsistent bases for asserting privilege over the de Fougerolles white paper reflect only that there is, in fact, no proper basis for doing so.  At worst, Moderna's incomplete and ever-changing explanations indicate an improper attempt to shield its nonprivileged review of the type of technical and business strategy matters typically found in scientific white papers because it considers the de Fougerolles white paper harmful to its case.

## V.    **CONCLUSION**

Moderna improperly redacted portions of the Schrum white paper and improperly clawed back the de Fougerolles white paper.  For the reasons set forth above, Defendants respectfully request that the Court compel Moderna to produce both documents in full.  To the extent the Court declines to order production of the de Fougerolles white paper in full, Defendants request that Moderna be ordered to produce a redacted version, consistent with the Protective Order.  (D.I. 67,

16

¶ 9.3.)  In the alternative, to the extent the Court deems it necessary to resolve the parties' dispute, Defendants respectfully request that the Court order an *in camera* review pursuant to Fed. R. Civ. P. 26(b)(5)(B).

Respectfully submitted,

DEFENDANT AND COUNTERCLAIM-
PLAINTIFF PFIZER INC.


By their Counsel,

/s/ Michael Xun Liu
_____
Chaloea M. Williams, BBO # 691154
cwilliams@wc.com
**WILLIAMS & CONNOLLY LLP**
680 Main Avenue SW
Washington, DC 20024
Tel: (202) 434-5623
Fax: (202) 434-5029



OF COUNSEL:

Thomas H. L. Selby*
Stanley E. Fisher*
Kathryn S. Kayali*
Michael Xun Liu*
D. Shayon Ghosh*
Julie Tavares*
Derrick M. Anderson*
Haylee Bernal Anderson*
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029


* Admitted pro hac vice

Attorneys for Defendant and
Counter-Claim Plaintiff Pfizer Inc.

DEFENDANTS AND COUNTERCLAIM-
PLAINTIFFS BIONTECH SE,
BIONTECH MANUFACTURING GMBH,
AND BIONTECH US INC.


By their Counsel,

/s/ Gregory M. Boucher
_____
Jeffrey S. Robbins, BBO #421910
Jeffrey.Robbins@saul.com
Joseph D. Lipchitz, BBO #632637
Joseph.Lipchitz@saul.com
Gregory M. Boucher, BBO #665212
Gregory.Boucher@saul.com
**SAUL EWING LLP**
131 Dartmouth Street, Suite 501
Boston, MA 02116
Tel: (617) 723-3300



OF COUNSEL:

Bruce M. Wexler*
Eric W. Dittmann*
Young J. Park*
Ashley N. Mays-Williams*
Scott F. Peachman
Karthik R. Kasaraneni*
Ryan Meuth*
**PAUL HASTINGS LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 318-6000



Attorneys for Defendants and Counter-
Claim Plaintiffs BioNTech SE, BioNTech
Manufacturing GmbH, and BioNTech US,
Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Gregory M. Boucher, hereby certify that on January 19, 2024, I caused the foregoing motion to be electronically filed with the Clerk of the Court via email pursuant to the Court's January 19, 2024 Order (Dkt. 204) granting in part Defendants' Motion to Seal (Dkt. 203), and I simultaneously served notice of such filing to all counsel of record to their registered electronic mail addresses.

*/s/ Gregory M. Boucher*
Gregory M. Boucher (BBO# 665212)
