# EXHIBIT 42

# EXHIBIT "M"

WILMERHALE

January 8, 2024

**Annaleigh E. Curtis**

+1 617 526 6694 (t)
+1 617 526 5000 (f)
annaleigh.curtis@wilmerhale.com

**Via E-Mail**

Young Park
Ryan Meuth
Paul Hastings
200 Park Avenue
New York, NY 10166

Michael Liu
Michael Mestitz
Williams & Connolly
680 Maine Avenue SW
Washington, DC 20024

Re:  *ModernaTX, Inc. and Moderna US, Inc., v. Pfizer Inc., BioNTech SE, BioNTech
      Manufacturing GmbH, and BioNTech US Inc.*, Case No. 1:22-cv-11378-RGS

Counsel:

      I write in response to your January 4, 2024 letter, the parties' January 4, 2024 meet and confer, and your following email correspondence on January 4, 2024 and January 5, 2024 regarding (1) BioNTech's improper use of privilege as a sword and shield; (2) BioNTech and Pfizer's failure to adequately prepare ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓, ▓▓▓▓▓▓, and ▓▓▓ for their depositions and failure to produce related documents; (3) BioNTech's production of documents on behalf of ▓▓▓▓▓▓; (4) Moderna's production and preparation of witnesses and (5) Moderna's privilege claims over MOD_000332132 and MOD_000282515.  We also discussed Moderna's request for production of samples, which we will address under separate cover.  Moderna reserves the right to raise additional issues regarding any deficiencies in the preparation of Defendants' other Rule 30(b)(6) designees and/or production of documents in connection with other depositions.

**BioNTech's Use of Privilege as a Sword and a Shield**

      Based on our meet and confer, we understand that BioNTech does not intend to produce documents it has clawed back or withheld on the same subject matter, *i.e.*, ▓▓▓▓▓▓, as those documents it has affirmatively relied on, for example during redirect of ▓▓▓▓ and that we are at an impasse on this issue.  To restate our concerns, BioNTech cannot affirmatively rely upon BioNTech and its employees' ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ yet shield from discovery documents on the same subject matter.  As we have explained in our previous correspondence and on the meet and confer, BioNTech's conduct is a classic case of unfair reliance

WILMERHALE

January 8, 2024
Page 2

on privilege as a sword and a shield.  BioNTech has asserted that the documents it has relied on or not withheld/clawed back are not privileged.  However, there is no reasonable explanation as to how a portion of these documents could be privileged, particularly since all of these documents involve communications to or from ███████████ on the same subject matter.



The subject matter of these emails—████████████████████████████—is the same as the subject matter of emails clawed back and withheld by BioNTech.  BioNTech is not free to pick and choose which communications involving ███████████ ███████████████████████████████████ are in the case and which are not.  We intend to move to compel production of these documents by BioNTech.

WILMERHALE

January 8, 2024
Page 3


**Testing on** █████████████████████████████████████

      We understand from our meet and confer and your letter that BioNTech has ***not*** produced (or is at least unaware whether it has produced) ████████████████████████████████████████ ████████████████████████████████████████████. As we have explained, we have not located any such testing in BioNTech's production. Please confirm by **January 10, 2024** that you will conduct a search for documents sufficient to show the results of that testing. In particular, please confirm that you will ask ████████████ whether he performed such testing and, if so, where the results of such testing would be located. To the extent there are lab notebooks from ████████████ reflecting that testing, we ask that you search for and produce them (or that you at least produce documents sufficient to show the results). If BioNTech conducted this ████████████████ ██████████████████ BioNTech is obligated to produce the data, which is unquestionably relevant to infringement. If BioNTech is not willing to conduct this targeted search or produce documents, we will move to compel it to do so.


**Supply Chain Information**

      Mr. Liu confirmed following our meet and confer that Pfizer will investigate whether there is a ████████████████████████████████████████████████████████████.[1] In addition, we ask that you provide a document or documents sufficient to show the specific revenues for Comirnaty generated by Defendants' US activities. █████████████████████████████████ ████████████████████████████████████████████████████████████████████

Defendants have also failed to provide any information regarding the flow of the ███████████████

---

[1] Your letter implies that ████████████ deposition testimony regarding lost sales outside the United States somehow prevents Moderna from seeking lost profits from such sales. Not so. Counsel asked ████████████ whether "Moderna [is] contending that it lost any sales to Pfizer in any markets outside the United States" and he responded that he was "not aware of that." ████████████████ Moderna's contentions are a legal question addressed in damages contention responses. Defendants were free to ask ████████████ about the factual bases for such contentions, but he was under no obligation to testify to what Moderna's contentions in the litigation are. *See, e.g.*, Moderna's 12/13/23 Response to Interrogatory No. 10 (the damages base "includes all Comirnaty® or components thereof supplied in the United States and combined outside the United States. 35 U.S.C. § 271(f)"); Moderna's 12/13/23 Initial Disclosures (incorporating by reference Moderna's response to Interrogatory No. 10); Moderna's Infringement Contentions ("Defendants also infringe under 35 U.S.C. § 271(f) based on, inter alia, Defendants' exportation of all or a substantial portion of the uncombined components of Pfizer/BioNTech's COVID-19 vaccine out of the United States to be combined in an infringing manner.").

WILMERHALE

January 8, 2024
Page 4

████████████████████████████████████.  Please provide information concerning
the drug substance batch number for each batch of mRNA manufactured in the US, the drug
product batch number that incorporates any such drug substance manufactured in the US, and the
revenues associated with any such batch numbers.

**Forecasting Documents**

While we maintain that BioNTech should provide a wholesale redesignation of ████
on Topic 39, we are willing to consider our issue resolved if BioNTech will designate ████
████ on the documents identified in our prior correspondence on which ████████ was
unable to testify.  It is clear from the record that ████████ team creates forecasts for BioNTech
and is knowledgeable about these documents.

**Pfizer's Tracking of Moderna's Patents**

As made clear in our prior correspondence, we disagree that ████████ was adequately
prepared on Topic Nos. 64-65.  Further, Defendants' contention that Moderna has purposefully
"avoided producing discovery about [patents that are not the patents-in-suit]," including by
purportedly inadequately preparing ████████ for his deposition, is incorrect.  Defendants
have yet to demonstrate the relevance of any such information as it relates to ████████
testimony and Defendants' claims.  By contrast, Moderna has clearly demonstrated the relevance
of Defendants' knowledge of Moderna's patents-in-suit, any patent or application in the same
family, and any of Moderna's 1-methyl-pseudouridine Patents and Publications, to Moderna's
willfulness allegations.  In any event, Mr. Liu confirmed via email following our meet and confer
that Pfizer is considering whether it will designate a corporate witness to provide testimony (1)
████████████████████████████████████████████████████████ (2)
████████████████████████████████ and (3)
████████████████████████████.  1/4/23 Email from Liu.  Please provide your final
answer on this by January 9, 2024 so that we can resolve this issue.

**Production of ████████ Documents**

We understand from prior correspondence, and you confirmed on our meet and confer, that
BioNTech's production of custodial documents from ████████ is now complete.

**Production of ████████ Documents**

You represented that your production of documents from ████████ will be made soon
and that you currently expect the production to be approximately less than 500 documents.  We
note that ████████ deposition is set for January 23, 2024, and we expect—as we requested

**WILMERHALE**

January 8, 2024
Page 5

previously—that your production of documents will be complete at least by Tuesday, January 9, in time for us to review in advance of that deposition.

## BioNTech's Prejudicial Conduct

We have explained via email that BioNTech's conduct during the fact deposition period has been prejudicial and exceptional. *See* 12/22/23 Email from Curtis; 1/3/24 Email from Curtis. As we explained, BioNTech responded to Moderna's Rule 30(b)(6) notice by unreasonably refusing to provide a witness without meeting and conferring on more than 50 topics, required hours of meeting and conferring and several rounds of correspondence, inadequately prepared its witnesses on a number of topics, delayed designating witnesses for weeks until after the close of fact discovery only to add a new witness and designate a large number of topics on several remaining witnesses. As we reiterated during today's meet and confer, we expect to complete all remaining depositions in the time we have remaining, but we continue to reserve the right to seek additional time based on BioNTech's conduct to date and in view of any dilatory conduct during the remaining depositions.

## Moderna's Production and Preparation of Witnesses

Although we did not discuss the issue of Moderna's document production and preparation of its witnesses, we respond here to the issues raised in your January 4, 2024 letter. In Defendants' letter, Defendants raised baseless claims that Drs. Hoge ▮▮▮▮▮▮▮▮ were not prepared to testify on certain topics and that Moderna did not produce documents it had agreed to produce. As we have explained, Moderna never agreed to produce contracts with contract manufacturing organizations ("CMOs") or customers. Your citation to certain RFP responses demonstrates this. Moderna agreed to produce in response to RFP Nos. 111, 118, 119, and 125,[2] respectively, documents showing Moderna's profit margin for Spikevax® from March 1, 2022, documents showing the total quantity of Spikevax® manufactured or sold, or forecasted to be manufactured or sold, documents showing the supply chain involved in the manufacture and production of Spikevax®, and documents showing Moderna's forecasts of future sales of Spikevax®. Moderna did produce such documents, but it was not required to produce CMO contracts as documents showing those facts. Defendants have had Moderna's responses since March 2023 and a substantially complete document production since before depositions took place, yet never raised a complaint. In any event, with respect to manufacturing capacity, ▮▮▮▮▮▮▮ provided ample testimony on Moderna's ability to meet demand.

---

[2] Your letter also refers to RFP No. 126, but Moderna did not agree to produce documents in response to that RFP in view of its overbreadth, irrelevance, and vagueness, among other objections. Defendants did not raise any complaints about this response.

WilmerHale

January 8, 2024
Page 6

With respect to communications on Moderna's patent pledge, as explained in my December 29, 2023 letter, Dr. Hoge did in fact testify about Moderna's communications to investors, *see* Hoge Tr. at 171-172, and his testimony is consistent with the timely-produced communications and interrogatory response served on Defendants. The portions of Dr. Hoge's deposition transcript cited by Defendants are not to the contrary. Indeed, Dr. Hoge explained during his deposition (Hoge Tr. at 176-177) that the pledge was sometimes a topic of conversations—not written correspondence—with governments, and Dr. Hoge described those conversions. And Dr. Hoge subsequently confirmed that he did not instruct anyone to search for emails on the pledge with Ray Jordan, an individual who was not identified as an ESI custodian in this matter. *See* Hoge Tr. at 180. Further, between the pages Defendants cite, Dr. Hoge offered additional testimony on his own conversations with third parties about the patent pledge, explaining for example that he spoke to reporters about it when asked about public health and other topics. *See* Hoge Tr. at 178. The record is clear that Defendants had opportunity to ask Dr. Hoge about Moderna's patent pledge and Dr. Hoge gave ample testimony on that topic.

Finally, your suggestion that Dr. Hoge was required to review communications between Moderna and Cellscript again relies on a number of unsupported assumptions. Your letter assumes that such communications exist or that they were within the ambit of what the parties agreed to search for and produce. However, such communications may not be subject to any production requirement because they do not exist, do not fall within the scope of the agreed-to ESI limitations, or were not subject to production pursuant to the parties' agreement to not produce negotiation documents. Even if any such documents did exist, Dr. Hoge was not required to review them in advance of his deposition in order to provide testimony on the topics on which he was designated. Further, Dr. Hoge testified that he did in fact review communications with Cellscript during his preparation. *See* Hoge Tr. at 72-73. Defendants chose not to ask any follow-up questions about that communication, and in any event, did not ask questions about any other interactions between Moderna and Cellscript. Indeed, Dr. Hoge began at one point to describe a communication with ████████████████████████████████████████████████████████████████████, and counsel for BioNTech cut Dr. Hoge off and did not allow him to finish his answer. *See* Hoge Tr. at 332.

### Moderna's Privilege Claims for MOD_000332132 and MOD_000282515

During the meet and confer, Defendants requested additional information regarding Moderna's bases for its privilege claims concerning two documents in Moderna's production: MOD_000332132 and MOD_000282515. Although Moderna has already provided a description of the bases for which these documents have been designated privileged in prior correspondence (*see, e.g.*, 2024.01.03 Letter from A. Curtis; 2023.12.21 Email from J. Salvatore), Moderna provides the following additional information.

**WILMERHALE**

January 8, 2024
Page 7

With respect to MOD_000332132, Defendants asked Moderna to identify contemporaneous instances in which Dr. de Fougerolles communicated with counsel. Moderna's privilege log contains multiple contemporaneous entries involving communications between ███████████ and Dr. de Fougerolles, including those below. To clarify, ██████████████

- ██████████████████████████████████████████████
- ██████████████████████████████████████████████
- ██████████████████████████████████████████████
- ██████████████████████████████████████████████
- ██████████████████████████████████████████████
- ██████████████████████████████████████████████
- ██████████████████████████████████████████████

With respect to MOD_000282515, you asked on our meet and confer for a description of the nature of the privilege claim over the document, which has a Flagship header. As we have explained previously, including in my December 6, 2023 letter, Moderna was founded by Flagship Ventures under the name LS18 in 2010, at which point it operated as a part of Flagship. ████████████████████████████████████████████████████████ As we explained in our January 3, 2024 letter, and Dr. Schrum testified in his deposition, Greg Sieczkiewicz provided Dr. Schrum and Moderna legal advice in general and did so specifically with respect to the document in question. *See* Schrum Tr. at 353:8-16, 356:17-357:11.[3]  As we further noted in our December 6, 2023 Letter—a letter to which Defendants never responded—Defendants were aware of Moderna's claim of privilege over communications with Mr. Sieczkiewicz since at least September 2023, but never raised any question about such claims (nor would any be warranted). The claim of privilege over this document does not rest on a common interest, but rather arises out of the fact that it reflects the legal advice of Mr. Sieczkiewicz to Flagship and the new entity created by Flagship, which ultimately became Moderna.

Best,

---

[3] Your citation of testimony from Dr. Schrum that he authored the document with another scientist is thus inapposite.  1/5/24 Email from Kasaraneni.  Dr. Schrum testified that Mr. Sieczkiewicz provided input on the document, and it is those portions of the document that are redacted.

WilmerHale

January 8, 2024
Page 8

*/s/ Annaleigh E. Curtis*

Annaleigh E. Curtis