# EXHIBIT 46

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MODERNATX, INC. and MODERNA US, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PFIZER INC., BIONTECH SE, BIONTECH MANUFACTURING GMBH, and BIONTECH US INC., <br><br> Defendants. | Case No. 1:22-cv-11378-RGS <br><br> █████████████ |

## BIONTECH'S OPPOSITION TO MODERNA'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS OVER WHICH BIONTECH HAS ASSERTED PRIVILEGE

# TABLE OF CONTENTS

**Page**

I.       INTRODUCTION ................................................................................................. 1

II.      BACKGROUND ................................................................................................. 2

         A.    The 2017-2018 BioNTech Documents Were Not Privileged ............................... 2

               1.    BioNTech Non-Privileged Document BNT_COMIR_1378186 ............... 2

               2.    BioNTech Non-Privileged Document BNT_COMIR_1379459 ............... 3

               3.    BioNTech Non-Privileged Document BNT_COMIR_1379496 ............... 3

               4.    BioNTech Non-Privileged Document BNT_COMIR_1379492 ............... 4

         B.    Unlike the 2017-2018 BioNTech Documents,
               the 2020 ▮▮▮▮▮▮▮ Documents Are Privileged ................................................. 4

         C.    BioNTech Repeatedly Informed Moderna That, Unlike the 2017-2018
               BioNTech Documents, the 2020 ▮▮▮▮▮▮▮ Documents Were Privileged ......... 5

III.     ARGUMENT ...................................................................................................... 9

         A.    Legal Standard ................................................................................................. 9

         B.    BioNTech's Disclosure of Non-Privileged Documents
               Cannot Waive Privilege ................................................................................... 10

               1.    The 2017-2018 BioNTech Documents
                     Did Not Contain Privileged Information ................................................. 10

               2.    The 2020 ▮▮▮▮▮▮ Documents Reflect BioNTech's Request
                     for Legal Advice from Outside Counsel and Are Privileged.................. 12

         C.    BioNTech Is Not Using Privileged Documents
               as a "Sword" and a "Shield" .......................................................................... 14

IV.      CONCLUSION................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Columbia Data Prod., Inc. v. Autonomy Corp.*,
  C.A. No. 11-12077-NMG, 2012 WL 6212898 (D. Mass. Dec. 12, 2012) ...........................10

*Crane Sec. Techs. v. Rolling Optics AB*,
  230 F. Supp. 3d 10 (D. Mass. 2017) .........................................................................10, 13, 14

*Genentech, Inc. v. ITC*,
  122 F.3d 1409 (Fed. Cir. 1997) .........................................................................................9

*U.S. v. United Shoe Mach. Corp.*,
  89 F. Supp. 357 (D. Mass. 1950) ......................................................................................9

*United States v. Catano*,
  65 F.3d 219 (1st Cir. 1995) ............................................................................................15

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) .........................................................................................................9

**Rules**

Federal Rule of Evidence 502 ..............................................................................1, 6, 9, 10

Plaintiffs ModernaTX, Inc. and Moderna US, Inc.'s (collectively, "Moderna's") motion to compel privileged correspondence, sent at the request of outside counsel in connection with providing legal advice, should be denied.

## I.    Introduction

Moderna's motion is premised on its erroneous contention that Defendants BioNTech SE, BioNTech Manufacturing GmbH, and BioNTech US Inc. (collectively, "BioNTech") waived privilege by producing certain non-privileged documents that ████████████ and other BioNTech employees—none of whom is an attorney—created in 2017 and 2018 (collectively, the "2017-2018 BioNTech Documents").  In response to an October 12, 2023 email from Moderna asking whether BioNTech "makes any claim of privilege over" the specific 2017-2018 BioNTech Documents, BioNTech confirmed that it does not.  (Moderna Ex. 1 at 1-2.)  Indeed, BioNTech could not claim privilege over the 2017-2018 BioNTech Documents because they do not contain or reflect a request for legal advice from a lawyer.  As such, their disclosure cannot form the basis of any privilege waiver.  *See, e.g.*, Fed. R. Evid. 502 ("The following provisions [relating to waiver] apply, in the circumstances set out, to disclosure of a communication or information covered by the attorney-client privilege or work-product protection.").

The separate documents that Moderna now seeks to compel were created years after the 2017-2018 BioNTech Documents.  Specifically, in March 2020, BioNTech retained Boston-based law firm ████████████ to provide certain legal advice.  (*See* Sections II.B and III.B.2, *infra*.)  During that engagement, ██████████ lawyers created documents that contained legal advice and/or requested information for the purpose of providing legal advice.  (*Id.*)  ██████████ then sent emails to various BioNTech scientists seeking the information requested by these same ██████████ lawyers (collectively, the "2020 ██████████ Documents").  (*Id.*)

1

All of the 21 documents Moderna now seeks to compel (*see* D.I. 206 at 6) are unquestionably privileged: As BioNTech stated in its Third Supplemental Privilege Log, these documents consist of ████████████████████████████████████████ ████████████████████████████████ and presentations authored by ████ ████ lawyers. (Moderna Ex. 12 (Entry Nos. 7-27).) Accordingly, Moderna's motion to compel the 2020 ████████ Documents—none of which is related to the non-privileged 2017-2018 BioNTech Documents—should be denied.

## II.    Background

### A.    The 2017-2018 BioNTech Documents Were Not Privileged

The 2017-2018 BioNTech Documents are comprised of emails between BioNTech scientists and ████████, who was at the time ████████████████████ ████████████████ based out of Germany.[1] (Moderna Exs. 3-6.) ████████ was not a lawyer, *accord* D.I. 206 at 2 ("████████ does not appear to have had a legal degree."), and there were no lawyers named in any of those emails. Moreover, none of the 2017-2018 BioNTech Documents conveys privileged information or references the patents-in-suit, which did not issue until years later, in 2020 and 2021.

### 1.    BioNTech Non-Privileged Document BNT_COMIR_1378186

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[1] ██████████████████████████████████.

████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████

2.      **BioNTech Non-Privileged Document BNT_COMIR_1379459**

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

3.      **BioNTech Non-Privileged Document BNT_COMIR_1379496**

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████  ███  ██████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

**4.     BioNTech Non-Privileged Document BNT_COMIR_1379492**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

**B.     Unlike the 2017-2018 BioNTech Documents,
the 2020 ████████ Documents Are Privileged**

Moderna moves to compel the production of the 2020 ████████ Documents, which

correspond to Entry Nos. 7 to 27 on BioNTech's Third Supplemental Privilege Log.  D.I. 206 at 6.

As the privilege log states, the subject matter of those withheld documents is ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ (Moderna Ex. 12.)

On March 30, 2020, BioNTech retained ████████ to provide confidential legal advice

relating to ████████████████████████. (Ex. 2, ████ Declaration, at ¶ 2.)  For that

engagement,

4



(*Id.* at ¶ 4.) ██████████ conveyed this request for information from the ████████ lawyers to BioNTech scientists.  The ████████ lawyers then used information received from BioNTech scientists to prepare the confidential legal advice that BioNTech requested.  (*Id.* at ¶ 5.)

While ████████ happened to author several of the 2020 ████████ documents that were sent to BioNTech scientists, they are unrelated to the 2017-2018 BioNTech Documents discussed above, as demonstrated by the fact that ████████ 2020 emails were sent in connection with a project for which BioNTech engaged ████████ in 2020.  (*Id.* at ¶ 2.)

### C.    BioNTech Repeatedly Informed Moderna That, Unlike the 2017-2018 BioNTech Documents, the 2020 ████████ Documents Were Privileged

Moderna's motion to compel seeks the production of documents that BioNTech clawed back because they contain privileged information from the ████████ law firm.  When Moderna asked how the withheld 2020 ████████ Documents differed from the 2017-2018 BioNTech Documents, BioNTech provided—on multiple occasions—the same response that it provides in this opposition brief:  The 2017-2018 BioNTech Documents simply do not contain privileged information.  Instead, as discussed above (Section II.A, *supra*), those documents reflect emails between BioNTech employees that do not involve any legal advice or request for legal advice from a lawyer.  The documents that Moderna seeks to compel, on the other hand, contain privileged information from ████████ lawyers.  (Ex. 2 at ¶¶ 4-5.)

By way of background leading to this dispute, BioNTech properly clawed back some of the 2020 ████████ Documents during the depositions of ████████████████████,

both BioNTech scientists.[2]  For example, during ▮▮▮▮▮ December 4, 2023 deposition, Moderna's counsel introduced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮" dated August 19, 2020.  (Moderna Ex. 2, ▮▮▮ Tr. 270:17-271:6.)  Moderna's counsel also introduced a document labeled "Privileged and Confidential."  (*Id.*, ▮▮▮ Tr. 273:6-19, 277:6-13.)  BioNTech's counsel clawed each document back because "it looks like this was a document . . . where outside counsel has asked ▮▮▮▮▮▮▮▮▮▮▮▮▮ so that they can provide legal advice.  It's reflecting . . . a request for legal opinion." (*Id.*, ▮▮▮ Tr. 277:17-23.)

On December 6, 2023, Moderna's counsel introduced another 2020 ▮▮▮▮▮ Document during ▮▮▮▮▮ deposition that was labeled "Privileged and Confidential."  (Moderna Ex. 10, ▮▮▮ Tr. 220:7-8.; 220:22-221:3.)  BioNTech's counsel again clawed the document back because it "reflect[s] request for legal advice . . . from BioNTech to their outside counsel." (*Id.*, ▮▮▮ Tr. 220:10-17.)

On December 7 and 8, after the ▮▮▮▮▮▮▮▮ depositions, BioNTech provided written notice requesting destruction of the clawed-back documents pursuant to the Protective Order. (Moderna Ex. 11 at 1-3.)  Along with that notice, BioNTech produced its Third Supplemental

---

[2]  Moderna asserts in a footnote that "BioNTech knew by November 17, 2023 that Moderna had cited the [clawed back] documents in support of Moderna's claim that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" D.I. 206 at 11 n.4.  Pursuant to the parties' agreed-upon procedure set forth in the Protective Order, however, BioNTech could claw back documents upon actual notice that they contained privileged information, which occurred shortly before December 7, 2023.  D.I. 67 at ¶ 9.2 ("For purposes of this Protective Order, 'discovery' shall mean 'actual notice;' the production of Privileged Information alone is insufficient to constitute actual notice.").  Because the Protective Order standard is binding under Federal Rule of Evidence 502(e) ("Controlling Effect of a Party Agreement"), BioNTech's claw-back notices, including those provided on December 7 and 8, were timely.  Indeed, Moderna has utilized this procedure to claw back more than 100 documents in this case.  (Exs. 3-18.)

Privilege Log setting forth its bases for asserting privilege over the documents that it clawed back. (Moderna Ex. 12.)   Regarding Entry Nos. 7-27 (*i.e.*, the 2020 ███████ Documents that Moderna seeks to compel), BioNTech described them either as ███████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████ (*Id.*)

On December 12, 2023, Moderna sent a letter contending that BioNTech was attempting to "use attorney-client privilege as both a sword and a shield." (Moderna Ex. 13 at 4.)   According to Moderna, BioNTech did not withhold certain "correspondence where ████████████████ █████████████████████████," but did withhold "exhibits from ███ ████████ depositions" because, in those documents, "████████ work was done at the direction of outside counsel ██████████." (*Id.*)   In making this assertion, Moderna simply ignored that documents in 2020 actually involved the U.S. lawyers at ████████, whereas the 2017-2018 documents did not.   Moderna is thus wrong that "the two documents [from 2017-2018] used on redirect with ██████" involve the "same assertion" as the 2020 ████████ documents. (*Id.*)

On December 22, 2023, BioNTech responded to Moderna's December 12 letter by distinguishing the non-privileged 2017-2018 BioNTech Documents from the privileged 2020 ████████ Documents.   Regarding the 2020 ████████ Documents, BioNTech explained that

> [t]wo of these documents were slides expressly labeled "Privileged and Confidential" when they were created by U.S. law firm ██████ ████████.   The other three were the two emails to which the slides were attached, which included specific requests from ████ to BioNTech scientists about those slides, and a third email from a BioNTech scientist in response.   Each email was sent at ████████ request to facilitate its provision of legal advice to BioNTech.

(Moderna Ex. 15 at 1.)   On the other hand, regarding the 2017-2018 BioNTech Documents, BioNTech stated, "from an investigation into the available facts about whether these communications relayed an attorney's legal advice, or a request from an attorney to facilitate provision of legal advice, BioNTech determined that a privilege claim was not warranted for those five specific documents." (*Id.* at 3.)

BioNTech's December 22 letter clearly explained that BioNTech was not selectively asserting privilege over communications between ███████ and BioNTech scientists, and thus should have resolved the issue. (*Id.*)  Specifically, the 2020 communications involving ███████ were withheld as privileged only because they reflected legal advice or a request for legal advice from lawyers who can sustain a claim of privilege.   ███████ himself is not a lawyer, and his communications on their own cannot generate privilege.

Nevertheless, Moderna sent another letter on January 3, 2024.  (Moderna Ex. 16.)  While acknowledging that "███████ was not an attorney," Moderna's letter maintained that the 2017-2018 BioNTech Documents "undoubtedly contained ███████████████ ██████ and involved ███████████████." (*Id.* at 1.)  Moderna's letter, however, ignored BioNTech's dispositive point that the 2017-2018 BioNTech Documents did not contain privileged information.  That a document "contained ███████████████████████" from a non-lawyer, again, does not make that document privileged.

On January 4, 2024, the parties met and conferred.  Once more, BioNTech explained to Moderna that it could not have clawed back the 2017-2018 BioNTech Documents because those documents contain no privileged information, as required for any Protective Order clawback. D.I. 67 at ¶ 9.2.  In subsequent correspondence, BioNTech informed Moderna that its assertion that "mere language [appearing in the 2017-2018 BioNTech Documents] like ███████████

███████████████████████████████████████████ in

communications between non-lawyers does not make those particular documents privileged.  In

each case, the actual communications in question did not include legal advice from a lawyer or a

request to or from a lawyer for the same."  (Moderna Ex. 20 at 2.)

## III.  Argument

### A.  Legal Standard

The attorney-client privilege has specific, well-established requirements:

> (1) the asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made (a) is a
> member of the bar of a court, or his subordinate and (b) in
> connection with this communication is acting as a lawyer; (3) the
> communication relates to a fact of which the attorney was informed
> (a) by his client (b) without the presence of strangers (c) for the
> purpose of securing primarily either (i) an opinion on law or (ii)
> legal services or (iii) assistance in some legal proceeding, and not
> (d) for the purpose of committing a crime or tort; and (4) the
> privilege has been (a) claimed and (b) not waived by the client.

*U.S. v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950).  "The attorney-client

privilege protects the confidentiality of communications between attorney and client made for the

purpose of obtaining legal advice."  *Genentech, Inc. v. ITC*, 122 F.3d 1409, 1415 (Fed. Cir. 1997).

The purpose of the privilege "is to encourage full and frank communication between attorneys and

their clients and thereby promote broader public interests in the observance of law and

administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

BioNTech and Moderna agree that Federal Rule of Evidence 502(a) sets forth the grounds

for extending waiver of "attorney-client privilege or work-product protection . . . to undisclosed

communication[s] or information" based on disclosure made in a federal or state proceeding.

D.I. 206 at 9.  While Moderna's recitation of the legal standard does not explicitly say so (*id*.), the

waiver of privilege extending to "undisclosed communications or information" requires that the

attorney-client privilege or work-product protection also cover the disclosure causing the waiver. *See* Fed. R. Evid. 502 (waiver provisions "apply, in the circumstances set out, to ***disclosure*** of a communication or information ***covered by the attorney-client privilege or work-product protection***") (emphases added).

Moderna's own cited case law confirms that only the disclosure of a privileged document can waive the privilege otherwise extending to an undisclosed document. *See Columbia Data Prod., Inc. v. Autonomy Corp.*, C.A. No. 11-12077-NMG, 2012 WL 6212898, at \*16-17 (D. Mass. Dec. 12, 2012) (stating that "[a] waiver occurs when a document ***otherwise privileged or protected as work product*** is disclosed to an adversary" or where "a party is attempting to use ***otherwise protected information*** as 'both a sword and a shield' in order to gain an unfair tactical advantage over the opposing party.") (emphases added).  Consistent with this established legal principle, "[t]he fact that communications are between non-lawyers does not per se waive the privilege." *Crane Sec. Techs. v. Rolling Optics AB*, 230 F. Supp. 3d 10, 21-22 (D. Mass. 2017).

### B.    BioNTech's Disclosure of Non-Privileged Documents Cannot Waive Privilege

#### 1.    The 2017-2018 BioNTech Documents Did Not Contain Privileged Information

The disclosure and use of the 2017-2018 BioNTech Documents do not support a finding of waiver that compels production of the unrelated 2020 ██████████ Documents because the former did ***not*** contain privileged information.  *See* Fed. R. Evid. 502; *Columbia Data*, 2012 WL 6212898, at \*16.  Moderna asserts that the 2017-2018 BioNTech Documents do contain privileged information because they █████████████████████████████████████████████████████ ██████████ D.I. 206 at 11.  Moderna is incorrect.

10

As a preliminary matter, the generic statement of ███████ (a scientist) to ███████ (a non-lawyer), ██████████████ appear in just one of the 2017-2018 BioNTech Documents.[3] (Moderna Ex. 3.)  Regardless, those words do not mean that a lawyer was actually contacted for legal advice.  To the contrary, BioNTech is not aware of any lawyer being contacted in response to ████████ email, and the remainder of Moderna Exhibit 3 does not relate to any legal advice being sought from a lawyer.  (*See* Section II.A, *supra*.)  Moreover, ███████ testified that he forwarded ████████ email to ██████ and the other BioNTech employees, none of whom was a lawyer, ██████████████████████████████████████████

██████████████████[4]  (Ex. 18, ███████ Tr. 116:13-22.)  An email between non-lawyers—in which one non-lawyer generically states to another non-lawyer that ████████████ ████████████—is not a privileged communication.  Had BioNTech designated such a communication as privileged, it would have been wrong to do so.  Moderna should not be permitted to utilize BioNTech's production of non-privileged documents as a vehicle for seeking the production of unquestionably privileged, unrelated documents created years later.

Attempting to buttress its speculation that Moderna Exhibit 3 contains privileged information, Moderna asserts that the communication involved ███████████████████ ████████.  D.I. 206 at 11.  But none of the BioNTech employees on Moderna Exhibit 3 was a lawyer.  Moderna also notes that the 2017-2018 BioNTech Documents ████████████████████

████████████████████████████████████████

---

[3] Moderna mischaracterizes the record in asserting that "BioNTech has affirmatively stated that it is not clawing back several documents that include ████████████████████" D.I. 206 at 10.  Only Moderna Exhibit 3 contains that quoted language.

[4] During ███████ deposition, which Moderna conducted after it filed its motion to compel, Moderna chose not to ask ███████ if he contacted any lawyer in response to ████████ email.  (Ex. 18, ███████ 112:1-123:16.)  ████████ also testified that ████████████████ ██████████████████████ (Ex. 19, ███████ 179:15-17.)

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* But none of

those observations is inconsistent with BioNTech's representation that Moderna Exhibit 3—which

does not identify any lawyers—contains no privileged information.

    **2.**    **The 2020 ████████ Documents Reflect BioNTech's**
           **Request for Legal Advice from Outside Counsel and Are Privileged**

      BioNTech properly withheld the 2020 ████████ documents, *i.e.*, Entry Nos. 7 to 27 on

BioNTech's Third Supplemental Privilege Log (Moderna Exhibit 12), because those documents

contain privileged information.  Unlike the 2017-2018 BioNTech Documents discussed above, the

2020 ████████ documents were all generated as part of a new legal matter for which BioNTech

retained ████████.  (Ex. 2, ████ Declaration, at ¶ 2.)  As BioNTech explained in its privilege

log, the withheld documents are either ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████ (Entry Nos. 7-17, 19, 21, 23, 25, and 27) or ████████████████████

████████████████████████████████████████ (Entry Nos. 18, 20, 22,

24, and 26).[5]  (Moderna Ex. 12.)

      Moderna's half-hearted attempt to question BioNTech's assertion of privilege over the

2020 ████████ Documents should also be denied.  D.I. 206 at 13.  Ignoring that the

communication includes advice of the law firm of ████████, Moderna asserts that "[n]one of

the people copied on these communications are lawyers."  *Id.*  This Court has held, however, that

---

[5]  To facilitate the Court's in camera review:  (1) Entry Nos. 7, 9, 10, and 23 are all part of the same email chain and refer to the question in bolded blue text in presentation Entry No. 24; (2) Entry Nos. 11, 12, 13, 15, 16, 21, 27 are all part of the same email chain and refer to the question marked in bolded blue text in presentation Entry No. 22; (3) Entry No. 17 refers to the question marked in bolded blue text in presentation Entry No. 18; (4) Entry No. 19 refers to the question marked in bolded blue text in presentation Entry No. 20; and (5) Entry No. 25 refers to the question marked in bolded blue text in presentation Entry No. 26.  (Ex. 2, ████ Decl. at ¶ 5.)

lawyers need not be copied on a communication for it to be privileged.  *See Crane Sec.*, 230 F.

Supp. 3d at 21-22 (holding that communications between non-lawyers "discuss[ing] or relay[ing]

legal advice without copying an attorney" were privileged).  ████████  2020 emails requesting

information from BioNTech scientists were privileged because they "discuss or relay legal advice"

from ████████  lawyers, even if those lawyers were not copied.  Moreover, a declaration from

████████, one of BioNTech's outside counsel from the ████████ law firm, confirms that

the communications in Entry Nos. 7-17, 19, 21, 23, 25, and 27, which ████████ sent to certain

BioNTech scientists, "reflect requests for information from lawyers at ████████ for purposes of

providing legal advice that BioNTech requested."  (Ex. 2, ████ Declaration, at ¶ 5.)  Mr. ████

also confirmed that ████████ lawyers used the information provided by BioNTech scientists in

those emails to prepare legal advice for BioNTech.  (*Id.* at ¶ 6.)

████████ declaration also disposes of Moderna's argument that "BioNTech has offered

no evidence that counsel were involved in preparing the presentations."  D.I. 206 at 13.  According

to his declaration, "[t]he lawyers at ████████ prepared the draft slides shown in Entry

Nos. 18, 20, 22, 24, and 26 for the purpose of providing legal advice that BioNTech requested,"

which were attached to ████████ emails.  (Ex. 2, ████ Declaration, at ¶¶ 4-5.)  The slides

themselves are labeled "Privileged and Confidential."  (*Id.*)

The Court can also reject Moderna's counterfactual as false.  According to Moderna:

> To the extent that BioNTech is now claiming privilege over
> communications with ████████████████,
> then there is no question that BioNTech has intentionally waived
> privilege over them.  And if the communications that BioNTech
> deliberately disclosed are not privileged, then there is no basis for
> BioNTech to withhold other communications with ████████ on
> the same subject matter.

D.I. 206 at 11.  Moderna wrongly assumes that "communications with ████████████

████████" must be either entirely privileged in every instance or not privileged in any

instance.  As discussed above, communications with ████████ have been withheld as privileged only where they reflect legal advice or a request for legal advice from lawyers who can sustain a claim of privilege.  ████████ himself is not a lawyer, and his communications on their own cannot generate a claim of privilege.  There is also no legal basis for asserting that disclosure of non-privileged documents can waive privilege otherwise extending to undisclosed documents simply because they may have some subject matter in common (which Moderna in any event cannot establish).

For at least these reasons, Moderna's argument that BioNTech waived privilege over the 2020 ████ Documents based on its decision to properly produce non-privileged documents should be denied.

### C.     BioNTech Is Not Using Privileged Documents as a "Sword" and a "Shield"

Moderna contends that the Court should compel production of the 2020 ████████ Documents because "BioNTech cannot in fairness shield from discovery documents showing █ ████████████████████ while also ***affirmatively relying*** on documents related to the ***same subject matter***."  D.I. 206 at 14 (emphases added); *see also id.* at 12 ("BioNTech's [alleged] decision to disclose and rely upon certain communications with ████████" precludes BioNTech "from claiming privilege over the communications with ████████ on the same subject matter.").

As a preliminary matter, the documents on which Moderna complains BioNTech "affirmatively rel[ied]" are documents that ***Moderna requested*** from BioNTech through discovery. For example, Moderna requested ████████████████████████████ ████████████████████████    ████████████████████████

Having requested those documents from BioNTech, Moderna is in no position to complain about the "fairness" of producing them in the case.

Nor did BioNTech use the 2017-2018 BioNTech Documents as a "sword" in this case. D.I. 206 at 10.  Moderna focuses on ██████████ discussion of these documents as showing that ██ ████████████████████████████████████████████████████████████████████████ *Id.* at 12.  It was Moderna, however, that first asked ██████████ about ██████████████████████ ████████████████████████████████████ (Ex. 21, ██████ Tr. 212:12-218:2), and thus, Moderna cannot now complain about testimony BioNTech elicited in response to its question, *see United States v. Catano*, 65 F.3d 219, 226 (1st Cir. 1995) ("A district court may allow testimony on redirect which clarifies an issue which the [opposing party] opened up on cross-examination . . . .").

Regardless, the 2017-2018 BioNTech Documents and the 2020 ██████████ Documents do not address "the same subject matter," as Moderna asserts.  D.I. 206 at 12, 14-15.  Moderna is vague about what it alleges to be "the same subject matter" between the two sets of documents. Instead, Moderna relies on certain superficial facts, such as the "communications [being] between ████████████████████████████████████████████ and employees at BioNTech without any counsel present on the email." *Id.*  Moderna also notes other broad and vague observations, such as ██████████ requesting input from BioNTech's scientists regarding ██████████████████████ in different communications.  *Id.* at 12-13.  But in *In re EchoStar Communications Corp.*, which Moderna cites in its brief, the Federal Circuit considered the relevant "subject matter" to be "advice of any counsel regarding infringement [of the patent-in-suit]."  448 F.3d 1294, 1297 (Fed. Cir. 2006).  In short, Moderna's attempt to seek waiver of any legal advice relating to ████████████████—regardless of whether and how the non-privileged and privileged communications are related—is legally untenable.

Finally, Moderna argues that "BioNTech cannot use emails involving ███████ as part of a backdoor ███████ defense to willfulness." D.I. 206 at 15. BioNTech is not trying to "backdoor" an ███████ as a defense to willfulness. Moderna continues to ignore that the 2017-2018 BioNTech Documents do not contain privileged information—which is why BioNTech produced them in the first place. And as discussed above (Section II.A, *supra*), those documents do not even refer to the patents-in-suit, which did not issue until 2020 and 2021, several years later. For the same reason, BioNTech is not attempting to (nor could it) "selectively waive privilege over ███████ emails to elicit [favorable testimony] from ███████," D.I. 206 at 15; there was no privilege to waive. Moderna's attempt to conflate these documents authored by non-lawyers with documents containing bona fide legal advice from outside counsel from a different time period is wholly misguided.

## IV.   Conclusion

For the reasons discussed above, Moderna's motion to compel should be denied.

Dated:  February 2, 2024

Respectfully submitted,

DEFENDANTS AND COUNTERCLAIM-PLAINTIFFS BIONTECH SE, BIONTECH MANUFACTURING GMBH, AND BIONTECH US INC.

By their Counsel,

*/s/ Jeffrey S. Robbins*

_____
Jeffrey S. Robbins, BBO #421910
Jeffrey.Robbins@saul.com
Joseph D. Lipchitz, BBO #632637
Joseph.Lipchitz@saul.com
Gregory M. Boucher, BBO #665212
Gregory.Boucher@saul.com
**SAUL EWING LLP**
131 Dartmouth Street, Suite 501
Boston, MA 02116
Tel: (617) 723-3300

OF COUNSEL:

Bruce M. Wexler*
Eric W. Dittmann*
Young J. Park*
Ashley N. Mays-Williams*
Scott S. Peachman
Karthik R. Kasaraneni*
Ryan Meuth*
**PAUL HASTINGS LLP**
200 Park Avenue
New York, NY 10166
(212) 318-6000
* Admitted *pro hac vice*

*Attorneys for Defendants and Counter-Claim Plaintiffs BioNTech SE, BioNTech Manufacturing GmbH, and BioNTech US, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Gregory M. Boucher, hereby certify that on February 2, 2024, I caused the foregoing Opposition to Moderna's Motion to Compel Production of Documents over Which BioNTech Has Asserted Privilege to be electronically filed with the Clerk of the Court via email pursuant to the Court's February 2, 2024 Order (Dkt. 214) granting Defendants' Motion to Seal (Dkt. 213), and I simultaneously served notice of such filing to all counsel of record to their registered electronic mail addresses.

/s/ Gregory M. Boucher
Gregory M. Boucher (BBO# 665212)