# EXHIBIT 72

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MODERNATX, INC. and MODERNA US, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PFIZER INC., BIONTECH SE, BIONTECH MANUFACTURING GMBH, and BIONTECH US INC., <br><br> Defendants. | C.A. No. 22-11378-RGS <br><br> JURY TRIAL DEMANDED <br><br> ████████████ |

**MODERNATX, INC. AND MODERNA US, INC.'S OPPOSITION TO DEFENDANTS' <u>MOTION TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................. 1

    A. Schrum Document ..................................................................................................... 1

    B. de Fougerolles Document .......................................................................................... 2

III. LEGAL STANDARDS ...................................................................................................... 3

IV. ARGUMENT ...................................................................................................................... 4

    A. The Redacted Portions of the Schrum Document Reflect Legal Advice from a Lawyer Providing Legal Advice to Moderna and Is Privileged. ............................ 4

        1. The Redacted Portions of the Schrum Document Reflect Legal Advice from Greg Scieczkiewicz Regarding Intellectual Property Analysis or Protection. ................................................................................ 4

        2. Dr. Sieczkiewicz Served as Moderna's Attorney at the Time the Schrum Document Was Created. ............................................................... 7

    B. The de Fougerolles Document Reflects Legal Advice from a Lawyer. ................. 8

V. CONCLUSION ................................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Federal Cases**

*In re GE ERISA Litigation*,
   No. 1:17-cv-12123-IT, 2022 WL 247719 (D. Mass. Jan. 26, 2022) ..........................................6

*Max-Lanck-Gesellschaft Zur Foerderung der Missenchaften E.V. v. Wolf
   Greenfield & Sacks, PC*, 736 F. Supp. 2d 353 (D. Mass. 2010)................................................8

### **State Cases**

*Commissioner of Revenue v. Comcast Corp.*,
   901 N.E.2d 1185 (Mass. 2009) ..........................................................................................3, 9

*In re Grand Jury Investigation*,
   772 N.E.2d 9 (Mass. 2002) ....................................................................................................3

*Hanover Insurance Co. v. Rapo & Jepsen Insurance Services, Inc.*,
   870 N.E.2d 1105 (Mass. 2007) ..............................................................................................8

*Patel v. Martin*,
   111 N.E.3d 1082 (Mass. 2018) ..............................................................................................8

*Suffolk Construction Co., Inc. v. Division of Capital Asset Management*,
   870 N.E.2d 33 (Mass. 2007) ..................................................................................................4

### **Other Authorities**

Fed. R. Evid. 501 ............................................................................................................................4

## I.  INTRODUCTION

Defendants seek to compel the production of two documents that Moderna has properly redacted or withheld to avoid disclosing material protected by the attorney-client privilege. The material redacted from the Schrum document (MOD_000282515) reflects legal advice from Greg Sieczkiewicz, who was an IP attorney advising Moderna at the time that the company was founded. And the de Fougerolles document (MOD_000332132) is privileged in its entirety. Moderna shared the de Fougerolles document with its IP attorney ███████, and the document reflects her legal advice on intellectual property analysis or protection. The documents that Moderna submits for *in camera* review confirm the privileged nature of the information at issue, and Defendants' arguments rest on mischaracterizations of the record and unsupported speculation. Moderna therefore respectfully requests that the Court deny Defendants' motion.

## II.  FACTUAL BACKGROUND

### A.  Schrum Document

The Schrum document was authored in 2010[1] and produced to Defendants with redactions. *See* Ex. D. The Schrum document reflects legal advice from attorney Greg Sieczkiewicz regarding intellectual property analysis or protection. Ex. A at 182 (Entry No. 3215). The redacted portions of the document reflect the advice of Dr. Sieczkiewicz, who provided legal services to Moderna at the time the document was authored. *See* Ex. C at 353:2-24 (testifying that the Schrum document "included feedback" from individuals including "Greg Sieczkiewicz"); *id.* at 357:9-11 ("Q. And did you receive legal advice from Mr. Sieczkiewicz in your work for Flagship and

---

[1]  Contrary to Defendants' suggestion (Memo. at 13), the Schrum document was not authored in 2011; it was authored in 2010. The Schrum document is titled "***2010*** Fellows – RNA Agonism." Ex. D at 1. Moreover, metadata from a copy of the Schrum document produced from Jason Schrum's files confirms the document is from August 2010. *See* Ex. 4 at 13 (listing modified date of August 31, 2010).

Moderna? A. Yes, that's correct."); *see also id.* at 202:14-203:14 (testifying that Dr. Sieczkiewicz would provide feedback on "IP content" given "his role as the IP attorney"). During the relevant time, Dr. Sieczkiewicz was the Vice President of Intellectual Property at Flagship Ventures. Ex. C at 202:14-16, 356:20-357:3. Dr. Jason Schrum, one of the authors of the document, expressly testified at his deposition that Dr. Sieczkiewicz provided feedback on the document, that Dr. Sieczkiewicz was the Vice President of Intellectual Property at Flagship, that Dr. Sieczkiewicz provided legal advice to Dr. Schrum in connection with his work for Flagship and Moderna, and that Dr. Sieczkiewicz would provide feedback on "IP content." *E.g.*, Ex. C at 202:14-203:14, 353:2-24, 356:17-357:11.

Moderna was founded by Flagship as "'ProtoCo:' LS18" in 2009/2010. Ex. 1 at 2, 4; Ex. 2 at 14 (noting that "Moderna Therapeutics, Inc." was "incorporated in 2009 as Newco LS18, Inc. by Flagship Pioneering"); *see also* Ex. C at 10:21-11:9 (testifying that Moderna "was one of the new-venture creations that Flagship was working on"); *id.* at 60:23-61:1. At the time that the Schrum document was written (*i.e.*, 2010), Moderna (aka LS18) operated as part of Flagship, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ *See* Ex. C at 357:9-11 (agreeing that Dr. Schrum "receive[d] legal advice from Mr. Sieczkiewicz in [his] work for Flagship and Moderna"). LS18 eventually became Moderna. *See* Ex. 1 at 4 ("LS18 renames itself Moderna Therapeutics"); Ex. 2 at 14 (explaining that "Moderna Therapeutics, Inc." was "incorporated in 2009 as Newco LS18, Inc. by Flagship Pioneering"). Indeed, although written on Flagship letterhead, the Schrum document repeatedly utilized the company's new name ("ModeRNA"). Ex. D at 2524.

  **B.** **de Fougerolles Document**

The de Fougerolles document reflects legal advice from attorney ▮▮▮▮▮▮▮ regarding intellectual property protection or analysis. *E.g.*, Ex. A at 184 (Entry No. 3278); Ex. P at 3. This

is confirmed by a further privileged communication showing that an earlier version of the de Fougerolles document was provided to ▇ with a request for legal advice on intellectual property protection or analysis on April 25, 2013. See Ex. A at 3 (Entry No. 64). Moderna is submitting this earlier draft of the de Fougerolles document for *in camera* review along with the disputed document (MOD_000332132), which is dated three weeks later. The content and timing of the disputed de Fougerolles document confirms that it is simply a later iteration of the document provided to ▇ on April 25, 2013.² ▇

▇ Moderna initially produced the de Fougerolles document, but promptly clawed it back on December 15, 2023, upon recognizing ▇ role in the preparation of the document. Ex. B at 10.

### III. LEGAL STANDARDS

"The attorney-client privilege is among the most hallowed privileges of Anglo-American law." *In re Grand Jury Investigation*, 772 N.E.2d 9, 17 (Mass. 2002). "The privilege fosters compliance with the law by 'encourag[ing] clients to seek an attorney's advice and to be truthful with the attorney, which in turn allows the attorney to give informed advice; the attorney-client privilege [thus] serves the public interest and the interest of the administration of justice.'" *Id.*; *see also Commissioner of Revenue v. Comcast Corp.*, 901 N.E.2d 1185, 1194 (Mass. 2009) ("The purpose of the [attorney-client] privilege 'is to enable clients to make full disclosure to legal counsel of all relevant facts … so that counsel may render fully informed legal advice' … with the

---

² Antonin de Fougerolles left Moderna in 2013. *See* Ex. 5 at 217:14-15. ▇

goal of 'promot[ing] broader public interests in the observance of law and administration of justice.'" (citations omitted)). For that reason, it is "with rare exceptions inviolable[.]" *Suffolk Const. Co., Inc. v. Division of Capital Asset Mgmt.*, 870 N.E.2d 33, 43 (Mass. 2007).

Where, as here, state law "supplies the rule of decision," "state law governs privilege." Fed. R. Evid. 501. Accordingly, Massachusetts law governs Defendants' arguments incorrectly challenging privilege as to the Schrum document and the de Fougerolles document.

## IV. ARGUMENT

### A. The Redacted Portions of the Schrum Document Reflect Legal Advice from a Lawyer Providing Legal Advice to Moderna and Is Privileged.

#### 1. The Redacted Portions of the Schrum Document Reflect Legal Advice from Greg Scieczkiewicz Regarding Intellectual Property Analysis or Protection.

Moderna properly redacted the Schrum document to avoid disclosing material protected by the attorney-client privilege. Dr. Jason Schrum testified at his deposition that Greg Sieczkiewicz provided feedback on the document, that Dr. Sieczkiewicz was the Vice President of Intellectual Property at Flagship, that Dr. Sieczkiewicz provided legal advice to Dr. Schrum in connection with his work for Flagship and Moderna, and that Dr. Sieczkiewicz would provide feedback on "IP content." *E.g.*, Ex. C at 202:14-203:14, 353:2-24, 356:17-357:11. As the Court will see from its *in camera* review, the redacted portions of the Schrum document reflect Dr. Sieczkiewicz's legal advice on intellectual property analysis or protection—which Moderna properly redacted as material protected by the attorney-client privilege.

Each of Defendants' arguments to the contrary fails. **First**, Defendants incorrectly argue that the "white paper … has no indicia of privilege on the document itself." Memo. (Dkt. 210) at 9. But the Schrum document clearly lists "Greg Sieczkiewicz, PhD, JD" on the face of the document." Ex. D at 2515; *see also* Ex. C at 357:4-8 ("Q. … And do you see it says, 'Greg

Sieczkiewicz Ph.D., J.D.'? A. That's correct, yes. Q. Is Mr. Sieczkiewicz a lawyer? A. Yes."). And the redacted material refers to Dr. Sieczkiewicz by name and refers to his input in preparing that analysis.

*Second*, Defendants' contention that the Schrum document "was authored by two scientist non-lawyers" (Memo. at 9) is beside the point. Moderna's claim of privilege stems from the fact that the redacted portions of the document ***reflect legal advice*** from Dr. Sieczkiewicz regarding intellectual property analysis or protection, ***not*** that it was authored in its entirety by a lawyer. Ex. A at 182 (Entry No. 3215). Moreover, Dr. Schrum testified that portions of the document reflect feedback from ***attorney*** Dr. Sieczkiewicz. Ex. C at 353:2-25 (testifying that "portions" of the document "would have included feedback" from the listed sponsors, which includes "Greg Sieczkiewicz"); *see also id.* at 353:17-24 (testifying that he "can't say that we [Dr. Schrum and ▮▮▮▮] wrote literally all of the words in this document"). The redactions in the Schrum document correspond to the portions that reflect feedback from Dr. Sieczkiewicz. *See* Ex. C at 202:14-203:14 (testifying that "[t]he IP content" would have been something Dr. Sieczkiewicz commented on because of "his role as the IP attorney"); *see also id.* at 354:6-355:10 (testifying that "[i]t's certainly possible" that the portion of the Schrum document related to "competitors" reflected legal advice). Indeed, the redacted portions of the document specifically refer to Dr. Sieczkiewicz by his first name (*i.e.*, "Greg").

In their motion, Defendants attempt to fault Dr. Schrum for not having perfect recall during his deposition with respect to a document authored nearly ***15 years ago***. *See* Ex. D at 2515 (Schrum document dated "2010"); Ex. C at 1 (deposition dated Dec. 19, 2023); *see also* Ex. 4 at 13. However, during his deposition, Dr. Schrum was shown a redacted copy of the Schrum document. *See* Ex. C at 74:24-75:13, 353:2-10. And, given the passage of time since the Schrum

- 5 -

document was drafted, it is unsurprising that Dr. Schrum did not remember exactly what appeared behind the redactions. *See id.* at 354:6-355:20.

**Third**, Defendants speculate that the redactions may contain "business and science … feedback," rather than legal feedback. Memo. at 10. But, as Moderna's privilege log makes clear, the redacted portions of the Schrum document reflect feedback from Dr. Sieczkiewicz "regarding intellectual property analysis or protection." Ex. A at 182 (Entry No. 3215). And Dr. Schrum testified that, in his role as "Vice President of Intellectual Property," areas on which Dr. Sieczkiewicz would comment and provide feedback would include "IP content." *See* Ex. C at 202:14-203:14. The Court's *in camera* review will confirm the redacted portions implicate intellectual property analysis or protection. This case is thus unlike *In re GE ERISA Litigation* on which Defendants rely (Memo. at 10-11), where it was not clear what advice the implicated attorneys were providing. No. 1:17-cv-12123-IT, 2022 WL 247719, at *2-3 (D. Mass. Jan. 26, 2022). Both Moderna's privilege log and Dr. Schrum's testimony supply that information.

**Finally**, Defendants incorrectly argue that any privilege as to the Schrum document was waived. Memo. at 11. As an initial matter, Defendants never made that contention during the parties' months-long correspondence and meet-and-confers. *See* Ex. B at 1-3, 8; Ex. E at 2; Ex. I at 2. But, in any event, that is unsupported conjecture by Defendants. It is not clear what document the *Nature* article is referring to, and Defendants have developed no factual record on this issue. Indeed, Defendants could have asked Dr. Schrum if the Schrum document—which was introduced as an exhibit at his deposition—was provided to a reporter or otherwise published. They did not do so. Nor did Dr. Schrum testify that he ever disclosed Moderna confidential information. On the contrary, Dr. Schrum testified that the materials in his possession from his time at Moderna were maintained securely. *See, e.g.*, Ex. 6 at 347:11-348:3 (testifying that only person who had

access to storage locker from which documents were produced was Dr. Schrum and that the unit where he stored those documents "has a keyed elevator code, and then the unit itself is under padlock").

### 2. Dr. Sieczkiewicz Served as Moderna's Attorney at the Time the Schrum Document Was Created.

Defendants argue that Moderna has not shown that there was an attorney-client relationship between Dr. Sieczkiewicz and Moderna. Memo. at 12-13. To the contrary, the record shows that Dr. Sieczkiewicz served as legal counsel to Moderna.

***First***, Dr. Schrum expressly testified that Dr. Sieczkiewicz provided legal services to Moderna. Ex. C at 357:4-11 ("Q. And did you receive legal advice from Mr. Sieczkiewicz in your work for Flagship and Moderna? A. Yes, that's correct.").

***Second***, Defendants' argument is premised on a misunderstanding as to the relationship between Moderna and Flagship. In 2009/2010, Flagship created a prototype company called "LS18." Ex. 1 at 2, 4; Ex. 2 at 14 (noting that "Flagship Pioneering" incorporated "Newco LS18, Inc." in "2009"). During the 2010 timeframe—*i.e.*, when the Schrum document was authored—LS18 operated under Flagship. *See* Ex. 1 at 4. Because LS18 operated under Flagship, Flagship provided all General and Administrative-type functions to Moderna,[3] which included legal counsel (*e.g.*, Ex. M at 7; P at 2)—as Dr. Schrum testified. Ex. C at 357:4-11 (testifying that Greg Sieczkiewicz provided legal advice to Flagship and Moderna). Thus, contrary to Defendants' suggestion (Memo. at 12-13), there was no disclosure to a third party by virtue of the document being in Moderna's possession.

---

[3]   Moderna was the new name for LS18 (Ex. 1 at 4; Ex. 2 at 14), and the Schrum document refers to the new company as "ModeRNA." Ex. D at 2524.

- 7 -

***Third***, Defendants' contention that, in the absence of a formal engagement letter, no attorney-client relationship can be established (Memo. at 13) is contrary to law. *E.g.*, *Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 870 N.E.2d 1105, 1113 (Mass. 2007) (noting that "the attorney-client privilege does not depend on a writing"); *see also Max-Lanck-Gesellschaft Zur Foerderung der Missenchaften E.V. v. Wolf Greenfield & Sacks, PC*, 736 F. Supp. 2d 353, 359 (D. Mass. 2010) ("An attorney-client relationship may be based on an express contract or, in some cases, may be implied."). Here, Dr. Schrum testified that Dr. Sieczkiewicz provided him legal advice in his work at Flagship and Moderna, that the Schrum document reflected Dr. Sieczkiewicz's legal advice, and that Dr. Sieczkiewicz provided feedback on "IP content" given "his role as the IP attorney." Ex. C at 202:14-203:14, 353:2-24, 357:2-11. That is more than sufficient to demonstrate an attorney-client relationship existed. *See Patel v. Martin*, 111 N.E.3d 1082, 1095 (Mass. 2018) ("[A]n attorney-client relationship may be impliedly formed ***when an attorney provides 'advice*** or assistance[.]'" (emphasis added; original emphasis omitted) (quoting *DeVaux v. American Home Assur. Co.*, 444 N.E.2d 355, 357 (Mass. 1983)).

### B.   The de Fougerolles Document Reflects Legal Advice from a Lawyer.

The de Fougerolles document (MOD_000332132) is privileged in its entirety. The de Fougerolles document reflects legal advice from IP attorney Donna Ward concerning intellectual property analysis or protection. *E.g.*, Ex. A at 184 (Entry No. 3278); Ex. P at 3. This is confirmed by an earlier version of the document that was provided to counsel on April 25, 2013, with an email containing an express request for legal advice on intellectual property matters (which Moderna submits for *in camera* review). *See* Ex. A at 3 (Entry No. 64). The disputed document is dated May 19, 2013 and, based upon its content and timing, reflects Dr. Ward's legal advice.

Defendants' arguments against the de Fougerolles document being privileged fail. ***First***, the fact that the de Fougerolles document "was authored by non-lawyer scientist Dr. de

- 8 -

Fougerolles" (Memo. at 14) is again beside the point. The document is privileged because it reflects Dr. Ward's legal advice. Moreover, because the entirety of the de Fougerolles document was submitted to counsel for legal advice—as the documents submitted *in camera* confirm—it is privileged in its entirety. *See Commissioner of Revenue*, 901 N.E.2d at 1196 ("[I]nformation contained within a communication need not itself be confidential for the communication to be deemed privileged; rather the communication must be made in confidence—that is, with the expectation that the communication will not be divulged.").

**Second**, Defendants again speculate as to what type of advice was elicited with respect to the de Fougerolles document. Memo. at 14. But as the Court's *in camera* review will confirm, the email correspondence associated with an earlier draft of the document confirms that the request for legal advice concerns all aspects of the document. Accordingly, the de Fougerolles document is privileged in its entirety, and a redacted version cannot be provided without waiving privilege.

**Finally**, Defendants incorrectly characterize Moderna's privilege assertions as "inconsistent." Memo. at 14-16. But there is no inconsistency. Moderna has consistently asserted that the de Fougerolles document is privileged because it reflects Dr. Ward's legal advice. The only thing that has changed is that Moderna has learned additional information that reinforces Moderna's claim of privilege over the de Fougerolles document by investigating the questions raised by Defendants. *See* Ex. P at 3 (noting that Moderna's understanding is based on "consideration of other privileged information and communications with Dr. de Fougerolles").

## V.   CONCLUSION

For the foregoing reasons, Moderna respectfully requests that the Court deny Defendants' motion.

- 10 -

Date:  February 5, 2024

Respectfully submitted,

 /s/ Kevin S. Prussia
William F. Lee (BBO# 291960)
Emily R. Whelan (BBO# 646982)
Kevin S. Prussia (BBO# 666813)
Andrew J. Danford (BBO# 672342)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
william.lee@wilmerhale.com
emily.whelan@wilmerhale.com
kevin.prussia@wilmerhale.com
andrew.danford@wilmerhale.com

Amy K. Wigmore (BBO# 629275)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
amy.wigmore@wilmerhale.com

*Counsel for Plaintiffs ModernaTX, Inc. and Moderna US, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on February 5, 2024, I filed the foregoing document with the United States District Court for the District of Massachusetts and caused it to be served on all registered participants via email.

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Kevin S. Prussia*
　　　　　　　　　　　　　　　　　　　　　　　　Kevin S. Prussia (BBO# 666813)