# EXHIBIT 3



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

## MEMORANDUM

DATE:       June 21, 2022

TO:         Members of the Patent Trial and Appeal Board

FROM:       Katherine K. Vidal
            Under Secretary of Commerce for Intellectual Property and
            Director of the United States Patent and Trademark Office (USPTO or the Office)

SUBJECT:    INTERIM PROCEDURE FOR DISCRETIONARY DENIALS IN AIA POST-GRANT PROCEEDINGS WITH PARALLEL DISTRICT COURT LITIGATION

### Introduction

Congress designed the America Invents Act (AIA) post-grant proceedings "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." H.R. Rep. No. 112–98, pt. 1, at 40 (2011), 2011 U.S.C.C.A.N. 67, 69; *see* S. Rep. No. 110–259, at 20 (2008). Parallel district court and AIA proceedings involving the same parties and invalidity challenges can increase, rather than limit, litigation costs. Based on the USPTO's experience with administering the AIA, the agency has recognized the potential for inefficiency and gamesmanship in AIA proceedings, given the existence of parallel proceedings between the Office and district courts. To minimize potential conflict between the Patent Trial and Appeal Board (PTAB) and district court proceedings, the Office designated as precedential *Apple Inc. v. Fintiv, Inc.*[1] This precedential decision articulates

---

[1] *See Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (designated precedential May 5, 2020).

the following set of nonexclusive factors (the *Fintiv* factors) that the PTAB considers on a case-specific basis in determining whether to institute an AIA post-grant proceeding where there is parallel district court litigation:

1. whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted;
2. proximity of the court's trial date to the Board's projected statutory deadline for a final written decision;
3. investment in the parallel proceeding by the court and the parties;
4. overlap between issues raised in the petition and in the parallel proceeding;
5. whether the petitioner and the defendant in the parallel proceeding are the same party; and
6. other circumstances that impact the Board's exercise of discretion, including the merits.

The Office issued a Request for Comments (RFC)[2] on the PTAB's current approaches to exercising discretion on whether to institute an AIA proceeding, including situations involving parallel district court litigation. The Office received 822 comments from a wide range of stakeholders. In light of the feedback received, the Office is planning to soon explore potential rulemaking on proposed approaches through an Advanced Notice of Proposed Rulemaking. In the meantime, I have determined that several clarifications need to be made to the PTAB's current application of *Fintiv* to discretionary institution where there is parallel litigation.

As explained below, to benefit the patent system and the public good, the PTAB will not rely on the *Fintiv* factors to discretionarily deny institution in view of parallel district court litigation where a petition presents compelling evidence of unpatentability. This memorandum also confirms that the precedential import of *Fintiv* is limited to facts of that case. Namely, *Fintiv* involved institution of an AIA proceeding with a parallel district court litigation. The

---

[2] Discretion to Institute Trials Before the Patent Trial and Appeal Board, 85 FR 66502 (Oct. 20, 2020); Discretion to Institute Trials Before the Patent Trial and Appeal Board; Extension of Comment Period, 85 FR 73437 (Nov. 18, 2020).

plain language of the *Fintiv* factors is directed to district court litigation and does not apply to parallel U.S. International Trade Commission (ITC) proceedings, as the ITC lacks authority to invalidate a patent and the ITC's invalidity rulings are not binding on the Office or on district courts.

Consistent with *Sotera Wireless, Inc.*,[3] the PTAB will not discretionarily deny institution in view of parallel district court litigation where a petitioner presents a stipulation not to pursue in a parallel proceeding the same grounds or any grounds that could have reasonably been raised before the PTAB. Additionally, when considering the proximity of the district court's trial date to the date when the PTAB final written decision will be due, the PTAB will consider the median time from filing to disposition of the civil trial for the district in which the parallel litigation resides.[4] This memorandum clarifies those practices.

This memorandum is issued under the Director's authority to issue binding agency guidance to govern the PTAB's implementation of various statutory provisions, including directions regarding how those statutory provisions will apply to sample fact patterns. *See, e.g.*, 35 U.S.C. 3(a)(2)(A); PTAB Standard Operating Procedure (SOP) 2 at 1–2.

Analysis

**Compelling Merits**

In the AIA, Congress established post-grant proceedings, including IPR, PGR, and covered business method (CBM) proceedings to improve and ensure patent quality by providing "quick and cost-effective alternatives to litigation" for challenging issued patents. H.R. Rep. No. 112–98, pt. 1, at 48; *see also* S. Rep. No. 110–259, at 20 (explaining that the "post-grant review

---

[3] *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020) (precedential as to § II.A).
[4] https://www.uscourts.gov/statistics-reports/analysis-reports/federal-court-uanageuent-statistics

system . . . will give third parties a quick, inexpensive, and reliable alternative to district court litigation to resolve questions of patent validity"). Congress granted the Office "significant power to revisit and revise earlier patent grants" as a mechanism "to improve patent quality and restore confidence in the presumption of validity that comes with issued patents." *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 272 (2016) (quoting H.R. Rep. No. 112-98, pt. 1, at 45, 48). Given those objectives, compelling, meritorious challenges will be allowed to proceed at the PTAB even where district court litigation is proceeding in parallel. Compelling, meritorious challenges are those in which the evidence, if unrebutted in trial, would plainly lead to a conclusion that one or more claims are unpatentable by a preponderance of the evidence. That said, the PTAB retains discretion to deny institution for proceedings where abuse has been demonstrated.

*Fintiv* factor six reflects that the PTAB considers the merits of a petitioner's challenge when determining whether to institute a post-grant proceeding in view of parallel district court litigation. Where the information presented at the institution stage is merely sufficient to meet the statutory institution threshold,[5] the PTAB has the authority, where warranted, to exercise discretion to deny institution in view of the other *Fintiv* factors. In contrast, where the PTAB determines that the information presented at the institution stage presents a compelling

---

[5] Institution of an IPR is authorized by statute only when "the information presented in the petition . . . and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a) (2018). Similarly, institution of a PGR, including a CBM, is authorized only when "the information presented in the petition . . . , if such information is not rebutted, would demonstrate that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable" *Id.* § 324(a).

4

unpatentability challenge, that determination alone demonstrates that the PTAB should not discretionarily deny institution under *Fintiv*.[6]

This clarification strikes a balance among the competing concerns of avoiding potentially conflicting outcomes, avoiding overburdening patent owners, and strengthening the patent system by eliminating patents that are not robust and reliable. Consistent with Congress's giving the Office the authority to revisit issued patents, the PTAB will not deny institution based on *Fintiv* if there is compelling evidence of unpatentability. This approach "allows the proceeding to continue in the event that the parallel proceeding settles or fails to resolve the patentability question presented in the PTAB proceeding." *Fintiv*, Paper 11 at 15. The patent system and the public good benefit from instituting compelling unpatentability challenges.

**ITC and *Fintiv***

In 2018, the PTAB issued a decision in *NHK Spring*.[7] There, the PTAB held that the advanced state of a parallel district court litigation involving similar validity disputes could be a factor weighing in favor of denying institution of an IPR because of concerns over the inefficient

---

[6] The compelling evidence test affirms the PTAB's current approach of declining to deny institution under *Fintiv* where the evidence of record so far in the case would plainly lead to a conclusion that one or more claims are unpatentable. *See, e.g., Illumina Inc. v. Trs. of Columbia Univ.*, IPR2020-00988, Paper 20 (PTAB Dec. 8, 2020) (declining to deny under *Fintiv* in light of strong evidence on the merits even though four factors weighed in favor of denial and remaining factor was neutral); *Synthego Corp. v. Agilent Techs., Inc.*, IPR2022-00402, Paper 11 (May 31, 2022) (granting institution as efficiency and integrity of the system would not be served by denying institution of petition with particularly strong evidence on the merits); *Samsung Elecs. Co. v. Scramoge Tech., Ltd.*, IPR2022-00241, Paper 10 (June 13, 2022) (*Fintiv* analysis concludes that "very strong" evidence on the merits outweigh concurrent litigation involving earlier scheduled trial date and significant overlap in proceedings).

[7] *NHK Spring Co. v. Intri-Plex Techs., Inc.*, IPR2018-00752, Paper 8 (PTAB Sept. 12, 2018) (precedential). This decision also based the denial of institution on Director discretion under 35 U.S.C. § 325(d).

use of PTAB's resources. *NHK Spring*, Paper 8 at 19–20. Later, in 2020, the PTAB announced the *Fintiv* factors, which the PTAB considers when a patent owner raises an argument for discretionary denial under *NHK Spring* due to an earlier trial date. *Fintiv*, Paper 11 at 5–6. The *Fintiv* factors focus on the interplay between IPRs and district court litigation. Through that focus, the *Fintiv* factors seek to avoid duplicative efforts between the PTAB and federal district courts. For example, *Fintiv* factor one asks whether the "court" has granted a stay or if one may be granted. Similarly, *Fintiv* factor two looks at the proximity of the "court" trial date. Likewise, *Fintiv* factor three concerns the amount of investment in the parallel proceeding by the "court" and the parties. *Fintiv* factors five and six refer to the same parallel proceeding described in factor three.

Although the *Fintiv* factors are directed to district court litigation and not ITC proceedings,[8] the PTAB has, in the past, denied AIA reviews based on parallel ITC investigations.[9] Important differences, however, distinguish ITC investigations from patent invalidity trials in federal district courts. Unlike district courts, the ITC lacks authority to invalidate a patent and its invalidity rulings are not binding on either the Office or a district court. *See Tandon Corp. v. U.S.I.T.C.*, 831 F.2d 1017, 1019 (Fed. Cir. 1987). Therefore, an ITC determination cannot conclusively resolve an assertion of patent invalidity, which instead requires either district court litigation or a PTAB proceeding to obtain patent cancellation. Thus, denying institution because of a parallel ITC investigation will not necessarily minimize

---

[8] *Fintiv* refers to ITC proceedings in discussing factor one. *Fintiv*, Paper 11 at 8–9. Addressing the situation where district court litigation is stayed pending an ITC investigation, *Fintiv* states in *dicta* that "it is difficult to maintain a district court proceeding on patent claims determined to be invalid at the ITC." *Id.* at 9.
[9] *See, e.g., Philip Morris Prods. S.A. v. Rai Strategic Holdings*, Inc., IPR2020-00919, Paper 9 (PTAB Nov. 16, 2020).

potential conflicts between PTAB proceedings and district court litigation. For the foregoing reasons, the PTAB no longer discretionarily denies petitions based on applying *Fintiv* to a parallel ITC proceeding. This memorandum memorializes that practice. The PTAB will not discretionarily deny petitions based on applying *Fintiv* to a parallel ITC proceeding.

### *Sotera* Stipulations

*Fintiv* factor four looks at the overlap between the issues raised in the IPR petition and in the parallel proceeding in order to evaluate "concerns of inefficiency and the possibility of conflicting decisions." *Fintiv*, Paper 11 at 12. If the petition includes the same or substantially the same claims, grounds, arguments, and evidence as presented in the parallel proceeding, this fact has favored denial. *Id.* at 12. Conversely, if the petition includes materially different grounds, arguments, and/or evidence than those presented in the district court, this fact has tended to weigh against exercising discretion to deny institution. *Id.* at 12–13.

When a petitioner stipulates not to pursue in a parallel district court proceeding the same grounds as in the petition or any grounds that could have reasonably been raised in the petition, it mitigates concerns of potentially conflicting decisions and duplicative efforts between the district court and the PTAB. *See Sotera*, Paper 12 at 18–19. With such a stipulation, if an IPR or PGR is instituted, the grounds the PTAB resolves will differ from those present in the parallel district court litigation. For these reasons, the PTAB will not discretionarily deny institution of an IPR or PGR in view of parallel district court litigation where a petitioner stipulates not to pursue in a parallel district court proceeding the same grounds as in the petition or any grounds that could have reasonably been raised in the petition. This clarification avoids inconsistent outcomes

7

between the PTAB and the district court and allows the PTAB to review grounds that the parallel district court litigation will not resolve.

**Trial Date**

*Fintiv* factor two considers the proximity of the court's trial date to the Board's projected statutory deadline for a final written decision. When applying this factor, the PTAB has taken the "courts' trial schedules at face value absent some strong evidence to the contrary."[10] Thus, the PTAB has generally weighed this factor in favor of exercising discretion to deny institution if the trial date is scheduled before the projected statutory deadline for a final written decision.

In response to the RFC, a number of commenters expressed concern with the use of trial dates as a factor.[11] Stakeholders correctly noted that scheduled trial dates are unreliable and often change. A court's scheduled trial date, therefore, is not by itself a good indicator of whether the district court trial will occur before the statutory deadline for a final written decision.

Accordingly, when analyzing the proximity of the court's trial date under factor two of *Fintiv*, when other relevant factors weigh against exercising discretion to deny institution or are neutral, the proximity to trial should not alone outweigh all of those other factors. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed Cir. 2009). Parties may present evidence regarding the most recent statistics on median time-to-trial for civil actions in the district court in which the

---

[10] *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 15 at 13 (May 13, 2020) (informative) (applying the *Fintiv* factors articulated in the precedential *Fintiv* decision).
[11] *See USPTO Executive Summary of Public Views on Discretionary Institution of AIA Proceedings* (Jan. 2021) (available at https://www.uspto.gov/sites/default/files/documents/ USPTOExecutiveSummaryofPublicViewsonDiscretionaryInstitutiononAIAProceedingsJanuary2 021.pdf).

8

parallel litigation resides[12] for the PTAB's consideration. Where the parties rely on time-to-trial statistics, the PTAB will also consider additional supporting factors such as the number of cases before the judge in the parallel litigation and the speed and availability of other case dispositions. *See id.; In re Google LLC,* No. 2021-178, 2021 WL 5292267 at *3 (Fed. Cir. 2021).

## Conclusion

In summary, the PTAB will not deny institution of an IPR or PGR under *Fintiv* (i) when a petition presents compelling evidence of unpatentability; (ii) when a request for denial under *Fintiv* is based on a parallel ITC proceeding; or (iii) where a petitioner stipulates not to pursue in a parallel district court proceeding the same grounds as in the petition or any grounds that could have reasonably been raised in the petition. Additionally, when the PTAB is applying *Fintiv* factor two, the PTAB will consider the speed with which the district court case may come to trial and be resolved. The PTAB will weigh this factor against exercising discretion to deny institution under *Fintiv* if the median time-to-trial is around the same time or after the projected statutory deadline for the PTAB's final written decision. That said, even if the PTAB does not deny institution under *Fintiv*, it retains the right to deny institution for other reasons under 35 U.S.C. §§ 314(a), 324(a), and 325(d). For example, the PTAB may deny institution if other pertinent circumstances are present, such as abuse of process by a petitioner.

This interim guidance applies to all proceedings pending before the Office. This interim guidance will remain in place until further notice. The Office expects to replace this interim guidance with rules after it has completed formal rulemaking.

---

[12] The most recent statistics are available at: https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/03/31-1.