# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MODERNATX, INC. and MODERNA US, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PFIZER INC., BIONTECH SE, BIONTECH MANUFACTURING GMBH, and BIONTECH US INC., <br><br> Defendants. | C.A. No. 22-11378-RGS <br><br> JURY TRIAL DEMANDED |

**MODERNA'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEW**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. PROCEDURAL BACKGROUND ...................................................................................... 2

    A. The Patents-in-Suit ................................................................................................... 2

    B. The Advanced State of This Litigation .................................................................... 3

    C. The *Inter Partes* Review Proceedings ..................................................................... 3

III. ARGUMENT ........................................................................................................................ 5

    A. The Advanced Stage Of This Litigation Supports Proceeding To Trial This Year. ........ 6

    B. A Stay Will Not Meaningfully Simplify The Issues. ............................................... 8

        1. The '574 Patent Will Be Unaffected By The IPRs. ...................................... 8

        2. Even For The Challenged Patents, Defendants' Proposed Stay Would Not Simplify the Issues For Several Years—And May Never Do So. ................................ 9

    C. Moderna Would Be Prejudiced By A Stay. ........................................................... 12

        1. A Stay Risks Loss Or Degradation Of Critical Percipient Evidence. ........ 12

        2. Moderna Would Be Harmed By Delaying Adjudication of Infringement by Direct Competitors ................................................................................................. 13

        3. Defendants Can Claim No Unfair Prejudice From This Case Proceeding To Trial As Planned—Particularly Given Their Own Delay In Pursuing IPRs ................... 14

IV. CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Cynosure, Inc. v. Cooltouch Inc.*,
   No. 08-cv-10026, 2009 WL 2462565 (D. Mass. Aug. 10, 2009) ..............................................7

*Davol, Inc. v. Atrium Med. Corp.*,
   No. 12-cv-958, 2013 WL 3013343 (D. Del. June 17, 2013) ...................................................11

*Dentsply Sirona, Inc. v. Edge Endo, LLC*,
   No. 17-cv-01041, 2018 WL 4773369 (D.N.M. Oct. 3, 2018) ...................................................7

*DiversiTech Corp. v. RectorSeal, LLC*,
   No. 20-cv-11896, 2021 WL 2953324 (D. Mass. July 14, 2021) ..............................................7

*Egenera, Inc. v. Cisco Systems, Inc.*,
   No. 16-cv-11613, ECF 78 (D. Mass. Dec. 6, 2017) ..................................................................8

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988) .................................................................................................5

*Facet Techs., LLC v. LifeScan, Inc.*,
   No. 22-cv-01717, 2024 WL 308294 (C.D. Cal. Jan. 3, 2024) .............................................7, 11

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
   100 F. Supp. 3d 357 (D. Del. 2015) ........................................................................................12

*In re Neo Wireless, LLC Pat. Litig.*,
   No. 2:22-md-03034, 2024 WL 688170 (E.D. Mich. Feb. 20, 2024) ........................................7

*Koninklijke Philips N.V. v. Wangs Alliance Corp.*,
   No. 14-cv-12298, Dkt. 156 (D. Mass. Jan. 19, 2016) ...............................................................9

*Mizuho Orthopedic Sys., Inc. v. Allen Med. Sys., Inc.*,
   610 F. Supp. 3d 362 (D. Mass. 2022) ............................................................................5, 7, 13

*SCVNGR, Inc. v. eCharge Licensing, LLC*,
   No. 13-cv-12418, 2014 WL 4804738 (D. Mass. Sept. 25, 2014) .............................................8

*SurfCast, Inc. v. Microsoft Corp.*,
   No. 12-cv-333, 2014 WL 6388489 (D. Me. Nov. 14, 2014) ....................................................8

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*,
   No. 18-cv-12029, 2019 WL 1767394 (D. Mass. Apr. 22, 2019) ............................................13

*TPK Touch Sols., Inc v. Wintek Electro-Optics Corp.*,
   No. 13-cv-02218, 2013 WL 6021324 (N.D. Cal. Nov. 13, 2013) ............................................13

*TwinStrand Biosciences, Inc. v. Guardant Health, Inc.*,
   No. 21-cv-1126, 2023 WL 2563179 (D. Del. Mar. 17, 2023) ............................................7, 13

*United Therapeutics Corp. v. Liquidia Techs., Inc.*,
   74 F.4th 1360 (Fed. Cir. 2023) ...............................................................................................12

*UNM Rainforest Innovations v. TP-Link Techs. Co.*,
   No. 19-cv-00262, 2023 WL 2638273 (W.D. Tex. Mar. 24, 2023) ...........................................12

*Voltstar Techs., Inc. v. Superior Commc'ns, Inc.*,
   No. 12-cv-00082, 2013 WL 4511290 (E.D. Tex. Aug. 22, 2013) ............................................13

**Federal Statutes and Regulations**

35 U.S.C. § 315(b) ...........................................................................................................................3

35 U.S.C. § 326(a)(11) ....................................................................................................................5

37 C.F.R. § 42.71(d) ..................................................................................................................7, 12

37 C.F.R. § 42.107(a) ......................................................................................................................4

37 C.F.R. § 90.3(b) ....................................................................................................................7, 12

I.       INTRODUCTION

This case has been actively litigated for nearly 20 months and is on track for trial later this year—with claim construction, fact discovery, and opening expert reports already complete (and responsive expert reports being served next week). The Court has advised that it "expects to hold a trial in compliance with the timeline set forth by L.R. 16.6," such that the parties should be prepared to try this case "in the fall or early winter of 2024." ECF 225. Moderna respectfully submits that is exactly what can and should happen—*i.e.*, a 2024 trial—and nothing in Defendants' stay motion, ECF 236 ("Mot."), supports departing from the Court's procedural plan.

On March 6, 2024, the Patent Trial and Appeal Board ("PTAB") instituted *inter partes* reviews ("IPRs") for two of the three Moderna patents at issue in this case. Defendants chose not to file an IPR challenging Moderna's third patent-in-suit, and nothing that occurs in the IPRs will affect that third patent, which is in a different family from the other two patents-in-suit. Defendants nevertheless now seek to stay this entire case—including as to the Moderna patent not subject to any IPR—pending a final written decision next March in the two instituted IPRs.

Defendants' proposed stay would not promote judicial economy and instead will simply delay adjudication of this case. Contrary to Defendants' suggestion, institution of these IPRs is no guarantee that the PTAB will invalidate the challenged patents. The PTAB itself warned against the very tea-leaf-reading pushed by Defendants' motion: "this finding [of compelling merits] 'should not be taken as a signal to the ultimate conclusion after trial.'" ECF 237-1 at 79; ECF 237-2 at 77. Unlike this case, the IPRs are still at an early stage. Moderna has not yet presented *any* expert evidence to the PTAB in the IPRs, nor has Moderna had *any* chance to cross-examine Defendants' witnesses. And throughout the IPRs, it will be the Defendants' burden to prove invalidity—not Moderna's burden to disprove it.

Indeed, the only thing certain about the IPRs is that they will *not* resolve all the issues to

1

be adjudicated in this case. Moderna's claim of infringement of the unchallenged patent will remain regardless of the outcome of the IPRs. And even as to the two patents challenged in the IPRs, Defendants have maintained separate defenses in this litigation that will not be resolved by the IPRs. Efficiency would best be served by continuing to trial in this case, where the Court and parties have already invested significant resources and the case is only months from trial.

Finally, a stay would be highly prejudicial to Moderna. Moderna's patents arose from work that occurred in the early- and mid-2010s, and there is a significant risk that if the case is stayed then critical evidence will be lost, as memories fade and witnesses leave their employment with the parties. To ensure this case is decided on the best available evidence of the critical events, the trial should be held this year as the Court has planned. Moreover, although Moderna is seeking solely monetary relief, Moderna is prejudiced by delaying the adjudication of its claims, which will permit Defendants to continue to compete with Moderna without paying for their unlawful use of Moderna's patented inventions. Defendants admitted that they have tracked Moderna's patent applications in the Patent Office for years and have known about the patents-in-suit since they issued. ECF 131-4 at 14-15. Defendants could have filed their IPR challenges long ago. Instead, Defendants chose to wait a full year after this litigation began—as long as possible without being statutorily barred—before filing their IPR petitions. Defendants cannot now leverage their own belated IPRs to stay this case months before trial.

Moderna therefore respectfully requests that the Court deny Defendants' motion to stay.

## II.     PROCEDURAL BACKGROUND

### A.     The Patents-in-Suit

Moderna accuses Pfizer and BioNTech of infringing three patents through their activities with their COVID-19 vaccine, Comirnaty®. The three asserted patents are in two patent families. U.S. Patent No. 10,898,574 ("the '574 patent") is titled "Delivery and Formulation of Engineered

2

Nucleic Acids," and claims priority to an April 2, 2012 application. ECF 1-1. U.S. Patent Nos. 10,702,600 ("the '600 patent") and 10,933,127 ("the '127 patent") are in the same patent family, claiming priority to provisional applications filed on Oct. 22, 2015. ECF 1-2; ECF 1-3. Both the '600 and '127 patents are titled "Betacoronavirus mRNA Vaccine." ECF 1-2; ECF 1-3.

B.  **The Advanced State of This Litigation**

Moderna filed its complaint on August 26, 2022. ECF 1. The Court set a schedule in this matter over a year ago, in January 2023, ECF 62, and the parties have proceeded according to that schedule. Following briefing and a hearing, the Court issued its *Markman* order on August 1, 2023. ECF 105. Fact discovery closed on December 13, 2023. ECF 62. The parties served opening expert reports on February 23, 2024, and responsive reports will shortly be served next week—on April 16, 2024.[1] The parties are in the process of scheduling expert depositions. Expert discovery will close on June 7, 2024. ECF 62. Dispositive and *Daubert* motions are due shortly thereafter and briefing will be complete on July 26, 2024. *Id.* The Court has informed the parties to prepare for trial "in the fall or early winter 2024." ECF 225.

C.  **The *Inter Partes* Review Proceedings**

Defendants filed petitions for *inter partes* review of the '600 and '127 patents on August 28, 2023. Each petition raised four "grounds" of alleged invalidity for the respective patent challenged. *See* ECF 237-1 at 6-7, ECF 237-2 at 7. The statutory deadline to file an IPR is one year from service of a complaint for patent infringement. 35 U.S.C. § 315(b). Defendants waited until the very last day[2] to file even though Defendants included three of their four IPR grounds in

---

[1]  Although the Court set the date for exchange of opening and responsive reports as February 16, and April 5, 2024, Moderna agreed to brief extensions at Defendants' request provided that no other scheduled date would change.

[2]  Pfizer and BioNTech's US entity were served on August 29, 2023. ECF 10; ECF 13.

3

invalidity contentions served in March 2023 and included all IPR grounds in updated contentions in June 2023. Defendants did not file any petition challenging the '574 patent, and they are now statutorily barred from doing so.

With their petitions, Defendants submitted two expert declarations. ECF 237-1 at 7; ECF 237-2 at 7. As the patent owner, Moderna had the option (but not obligation) to file a preliminary response to Defendants' petitions. 37 C.F.R. § 42.107(a). Moderna filed a preliminary response to each petition but did not submit any expert evidence—nor is doing so common or required at that early stage.

Based on Defendants' one-sided initial presentation of expert evidence, the PTAB instituted both IPRs, and found that **_one_** of Defendants' four alleged invalidity grounds presented "compelling merits." The standard for evaluating "compelling merits" is similar to the standard for deciding a motion to dismiss in that they require accepting the petitioner's evidence as true: "Compelling, meritorious challenges are those in which the evidence, ***if unrebutted in trial***, would plainly lead to a conclusion that one or more claims are unpatentable by a preponderance of the evidence." ECF 237-3 at 4. The PTAB emphasized that its institution decision "should not be taken as a signal to the ultimate conclusion after trial because all relevant evidence likely will not have been adduced at the point of institution." ECF 237-1 at 79; ECF 237-2 at 77 (internal quotation marks omitted). The PTAB also repeatedly emphasized that its decision was preliminary, was based only on the evidence before it, and that Moderna had not yet put in any expert evidence. *See, e.g.*, ECF 237-1 at 2, ECF 237-2 at 2 ("Findings and conclusions at this stage are preliminary and based on the current record."); ECF 237-1 at 73, ECF 237-2 at 71 ("[T]hose issues will be best decided on a fully-developed record that includes trial-tested expert testimony from *both* parties[.]" (emphasis original)).

Now that the IPRs are instituted, there will be multiple rounds of discovery, depositions, and briefing before an oral hearing.  *See* Ex. A,[3] Patent Trial and Appeal Board Consolidated Trial Practice Guide November 2019, at 7-8.  Moderna will take discovery, including depositions of Defendants' experts based on the petitions, then will submit a Patent Owner Response ("POR") that will include Moderna's ***first*** presentation of evidence, including expert declaration(s).  *Id.*  Defendants will then have an opportunity to take discovery of Moderna, including taking depositions of any of Moderna's experts, after which they will submit a Petitioner's Reply.  *Id*.  If new declarations are submitted with the Petitioner's Reply, additional depositions will be taken before the Patent Owner's Reply.  *Id.*  The parties will then brief evidentiary issues, and an oral hearing will be held before a panel of administrative patent judges.  *Id.* at 78-86.  After the oral hearing, the PTAB has a statutory deadline to issue a final written decision within one year from the date of institution, in March 2025, which can be extended by up to six months.  35 U.S.C. § 326(a)(11).

## III.   ARGUMENT

Courts have the inherent power to manage their dockets.  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988).  In determining whether to grant a stay pending inter partes review, district courts consider three factors:  "1) the stage of the litigation, including whether discovery is complete and a trial date has been set, 2) whether a stay will simplify the issues and 3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party."  *Mizuho Orthopedic Sys., Inc. v. Allen Med. Sys., Inc.*, 610 F. Supp. 3d 362, 365 (D. Mass. 2022).  Each of these factors disfavors a stay here.

---

[3]   All references to Exhibits are to the exhibits to the Curtis Declaration filed herewith.

### A. The Advanced Stage Of This Litigation Supports Proceeding To Trial This Year.

This case is far past the point at which a stay would be justified. The Court issued its *Markman* order on August 1, 2023. ECF 105. Fact discovery closed on December 13, 2023. ECF 62. The parties have collectively produced well over **500,000 documents** totaling more than ***7 million*** pages, and multiple third parties have also produced documents in response to subpoenas. Over ***forty*** fact witnesses have been deposed, several of whom are former employees of the parties. The Court has also expended resources resolving several discovery motions. ECF 101, 122, 157, 223, 224. Expert discovery is now well underway. The parties have exchanged opening reports and will exchange rebuttal expert reports on April 16, 2024. *Supra* § II.B. The parties are now in the process of scheduling expert depositions, which will be complete by June 7, 2024. *Supra* § II.B.

Once expert discovery is over, the case will be ripe for summary judgment and final pretrial submissions—and then ready for trial this year. The Court has not set a trial date because "it is the court's usual practice to wait until after it has ruled on the parties' dispositive motions to schedule trial," ECF 225, but the Court has indicated that the trial will take place in "fall or early winter of 2024." *Id.*

By contrast, the IPRs have only just begun. Moderna has yet to put in any evidence, and there will be multiple rounds of extensive briefing and discovery before the oral hearing. *See supra* § II.C. There will be depositions, perhaps even multiple depositions of repeat declarants, and briefing on the substantive issues as well as procedural issues, such as discovery disputes and evidentiary objections. *See supra* § II.C. There will then be an oral hearing before a panel of administrative patent judges. *See supra* § II.C. The panel has a statutory deadline to issue a final written decision in March 2025, but that deadline can be extended by the PTAB up to six months

6

for good cause. *See supra* § II.C. After the final written decision issues, the losing party can seek rehearing or review by the Director of the Patent Office. 37 C.F.R. § 42.71(d); 37 C.F.R. § 90.3(b).

There is no reason to depart from the schedule in this case in favor of a nascent IPR proceeding—and indeed, the advanced stage of this case weighs heavily against a stay. *See, e.g.*, *Mizuho*, 610 F. Supp. 3d at 366 (denying stay pending IPR where *Markman* briefing was complete, parties had exchanged substantial document productions, and trial was less than a year away); *Cynosure, Inc. v. Cooltouch Inc.*, No. 08-cv-10026, 2009 WL 2462565, at *2 (D. Mass. Aug. 10, 2009) (denying stay pending re-examination where expert discovery was nearly complete). *Cf. In re Neo Wireless, LLC Pat. Litig.*, No. 2:22-md-03034, 2024 WL 688170, at *3 (E.D. Mich. Feb. 20, 2024) (denying stay pending IPR where *Markman* order had issued and fact discovery was substantially complete); *Facet Techs., LLC v. LifeScan, Inc.*, No. 22-cv-01717, 2024 WL 308294, at *2 (C.D. Cal. Jan. 3, 2024) (similar); *TwinStrand Biosciences, Inc. v. Guardant Health, Inc.*, No. 21-cv-1126, 2023 WL 2563179, at *3 (D. Del. Mar. 17, 2023) (similar).

The cases cited by Defendants are inapposite. Indeed, **none** of the orders cited (Mot. at 9) involved cases where the district court proceedings were as advanced as here **and** the PTAB proceedings were as nascent as here. In *ACQIS, LLC v. EMC Corp.*, for example, Judge Burroughs emphasized that "no depositions have been taken," "expert discovery has not yet begun," and document production by the parties was incomplete. 109 F. Supp. 3d 352, 356 (D. Mass. 2015). In *Dentsply* and *DiversiTech*, claim construction briefing was complete, yet no *Markman* orders had issued and significant fact discovery remained. *See Dentsply Sirona, Inc. v. Edge Endo, LLC*, No. 17-cv-01041, 2018 WL 4773369, at *2 (D.N.M. Oct. 3, 2018) ("No claim construction order has been issued."); *DiversiTech Corp. v. RectorSeal, LLC*, No. 20-cv-11896, 2021 WL 2953324, at *2 (D. Mass. July 14, 2021) (noting that "no claim construction hearing has yet occurred, six

7

months remain until the fact discovery deadline and expert discovery is not scheduled to be complete until three months thereafter"). And in *SurfCast*, while the District Court matter was at a later stage, the PTAB had issued its ***final*** written decision already, so the PTAB proceeding was at a far more advanced stage there. *SurfCast, Inc. v. Microsoft Corp.*, No. 12-cv-333, 2014 WL 6388489, at *1 (D. Me. Nov. 14, 2014).

In short, this litigation, which is on track for trial this year, is far more advanced than the IPRs, which have only just been instituted and, as discussed in further detail below, will take years to resolve. *See infra* § III.B.2.b.

### B. A Stay Will Not Meaningfully Simplify The Issues.

#### 1. The '574 Patent Will Be Unaffected By The IPRs.

There are two patent families asserted in this case, and Defendants chose to challenge just one family through IPR. *Supra* § II.A. Moderna's '574 patent has not been challenged in an IPR and now ***cannot*** be challenged by Defendants because any such petition would be time barred. *Supra* § II.C. Defendants' brief suggests that 75% of the asserted claims are covered by the IPRs, Mot. at 10, but that does not mean that the IPRs would resolve 75% of the issues in the case, even assuming they are successful. The '574 patent is not related to the challenged '600 and '127 patents, it has different named inventors, it has a different (earlier) priority date, and it covers a different subject matter. *Supra* § II.A. Regardless of what happens with the IPRs, this Court will need to resolve all issues related to the '574 patent.

In similar circumstances, courts (including this one) have denied stays pending IPR even where other factors favored a stay. *See Egenera, Inc. v. Cisco Systems, Inc.*, No. 16-cv-11613, ECF 78 (D. Mass. Dec. 6, 2017) (denying stay pending IPR where the "subject matter of the [unchallenged patent] is sufficiently distinct from that of the [challenged patent]"); *SCVNGR, Inc. v. eCharge Licensing, LLC*, No. 13-cv-12418, 2014 WL 4804738, at *10 (D. Mass. Sept. 25, 2014)

(denying stay where three of eight patents were subject to IPR; collecting cases).[4]

### 2. Even For The Challenged Patents, Defendants' Proposed Stay Would Not Simplify the Issues For Several Years—And May Never Do So.

There is also no guarantee that the IPRs will simplify the issues with respect to the '600 and '127 patents both because the PTAB could uphold the validity of the claims once it has a full and balanced evidentiary record, and because Defendants are making different invalidity arguments in this case than they have advanced in the PTAB. And contrary to Defendant's suggestion, there certainly will not be any final resolution of the issues from the IPRs by next March. Indeed, given that the losing party in the IPRs will inevitably appeal, a final resolution of the IPRs is still years away. Thus, the stay sought by Defendants therefore will not narrow the issues or streamline this case for years, if at all.

#### a) The PTAB's institution decision was a preliminary assessment without the benefit of a full trial record.

Defendants attempt to leave the incorrect impression that the PTAB has made its mind up about the challenged patents. Mot. at 10-11. But the PTAB was clear that its institution decision "'***should not be taken as a signal to the ultimate conclusions*** at trial' because 'all relevant evidence likely will not have been adduced'" at this early stage of the proceedings. ECF 237-1 at 79; ECF 237-2 at 77 (both quoting *OpenSky*, IPR2021-01064, Paper 102 at 49–50).

Moderna has yet to offer any expert evidence in the IPRs and will also have the opportunity to cross-examine Defendants' experts. As the PTAB noted repeatedly, its decisions to institute

---

[4] The cases in which a stay was entered where only a portion of the patents-in-suit were subject to IPRs involved many more total asserted patents and more patents challenged in IPRs. *ACQIS*, 109 F. Supp. 3d at 358 (involving 11 total patents); *Koninklijke Philips N.V. v. Wangs Alliance Corp.*, No. 14-cv-12298, Dkt. 156 (D. Mass. Jan. 19, 2016) (involving 8 total patents). Because of the family relationships of the patents-in-suit, *see supra* § II.A, this situation is more analogous to *Egenera*, where just two patents were at issue. No. 16-cv-11613, ECF 78 (D. Mass. Dec. 6, 2017).

were based on "***presently***-unrebutted" expert testimony. ECF 237-1 at 16, 44, 47; ECF 237-2 at 16, 44, 46. But now that the IPRs have been instituted, Moderna has the chance to present a full response to the petitions.[5] Indeed, Patent Office statistics show that the PTAB issues a final written decision finding all claims unpatentable in post-grant proceedings on biologic patents, such as the '600 and '127 patents, in response to just ***21%*** of AIA petitions.[6] Ex. B, PTAB Orange Book Patent/Biologic Patent Study, at 14.

### b) Defendants have maintained separate defenses between the IPRs and this litigation.

Defendants' motion rests on the premise that the issues in this district court litigation for the '600 and '127 patents will be resolved by the IPRs. But Defendants have deliberately maintained separate defenses between this case and the IPRs, and have made no commitment that they would abandon their other defenses in favor of proceeding solely in the IPRs. Defendants' refusal to limit their defenses to the '600 and '127 patents not only speaks volumes about their own confidence (or lack thereof) in the outcome of those proceedings, but further illustrates why the IPRs will not simplify the issues in this case.

For example, Defendants stipulated to the PTAB that they would not pursue the invalidity grounds raised in the IPRs in this district court litigation. ECF 237-1 at 26; ECF 237-2 at 26. There is thus no risk of duplicative work as to the grounds asserted in the IPR. Indeed, Defendants represented to the PTAB in seeking institution that their stipulation "moots" concerns about duplication. *Id.* Defendants suggest that a stay will allow "the Court [to] have the benefit of the

---

[5] The PTAB also expressed skepticism of a number of the arguments raised by Defendants' petition. For example, as to Defendants' lead argument (Ground 1), the PTAB said "Patent Owner's remaining arguments may have some merit and Patent Owner may prevail on such arguments at trial." ECF 237-1 at 82; ECF 237-2 at 80.
[6] This percentage is based on total AIA petitions, including those in which institution was denied, but shows that institution is not a guarantee of a particular decision on the merits.

10

PTAB's decision and analysis," Mot. at 11, but there is no reason why the Court would benefit from the PTAB's decision and analysis when Defendants have maintained separate defenses between these proceedings.

Defendants also have raised other defenses in this action that are not raised in, and will not be resolved by, the IPRs—for example, that the '600 and '127 patents are invalid for lack of written description, lack of enablement, or indefiniteness. If any claim survives (as they all should), then this Court will still need to resolve the merits of the claims and defenses remaining in this litigation. Under similar circumstances, courts have denied requests to issue a stay pending IPR. *See Facet Techs.*, 2024 WL 308294, at *3 (denying stay where "Court would still need to make an invalidity determination, on different grounds, for any remaining claims, in addition to considering infringement issues"); *Davol, Inc. v. Atrium Med. Corp.*, No. 12-cv-958, 2013 WL 3013343, at *6 (D. Del. June 17, 2013) (denying stay where court would still need to resolve all issues on unchallenged patent and additional issues on challenged patents).

During the parties' meet and confer, Moderna asked Defendants whether they would agree to abandon all invalidity defenses for the '600 and '127 patents in this district court litigation if the case were stayed in favor of the IPRs; they declined to agree. Defendants' vague suggestion that the "PTAB's final written decision will trigger estoppel provisions that will limit arguments available to Pfizer and BioNTech to only those which could not have been raised in the IPR," Mot. at 11, elides the fact that Defendants have raised other defenses that will need to be decided in this case if Moderna prevails on any claim in the IPRs.

        c)    **Any decision in the IPRs will be subject to lengthy review and appeal.**

Defendants seek a stay through the PTAB's issuance of a final written decision. But this is not "a delay of definite length," Mot. at 4, because the final resolution of these IPRs is likely

11

years away. Even after the PTAB issues its final written decision, the parties may seek rehearing or director review, which may take months to resolve before the Patent Office. 37 C.F.R. § 42.71(d); 37 C.F.R. § 90.3(b). And then the losing party will inevitably appeal. The Federal Circuit has stated that "an IPR decision does not have collateral estoppel effect until that decision is affirmed or the parties waive their appeal rights" and "the Board's final written decision does not cancel claims," which happens only after all appeals are final. *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360, 1372 (Fed. Cir. 2023), *cert. denied*, No. 23-804, 2024 WL 675262 (U.S. Feb. 20, 2024). Based upon recent statistics, the subsequent Federal Circuit appeals will likely add at least another 18 months before there is a final resolution of these IPRs—meaning that the IPRs may not be finally resolved until late 2026 or sometime in early 2027, *i.e.*, **nearly three years from now**. Ex. C, Federal Circuit Statistics (showing average time from notice of appeal of PTAB order to decision of 537.1 days between January 1, 2022, and October 17, 2023, the last date with data).

### C. Moderna Would Be Prejudiced By A Stay.

#### 1. A Stay Risks Loss Or Degradation Of Critical Percipient Evidence.

A stay risks the loss or degradation of critical evidence as memories fade and witnesses become unavailable. *See Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 100 F. Supp. 3d 357, 363 (D. Del. 2015) (denying stay pending inter-partes reexamination based, in part, upon the risk of lost evidence as "key witnesses will become unavailable or their memories will fade"); *UNM Rainforest Innovations v. TP-Link Techs. Co.*, No. 19-cv-00262, 2023 WL 2638273, at *2 (W.D. Tex. Mar. 24, 2023) (denying stay pending IPR appeal where year-long appeal process risked loss of evidence). Those risks are particularly acute here, as the work underlying Moderna's

12

asserted patents goes back to 2012 (for the '574 patent) and 2015 (for the '600 and '127 patents).[7]

Moreover, multiple witnesses in this matter are not current employees of any party, and staying this case increases the risk that these witnesses will become unavailable for trial.[8]  *See Voltstar Techs., Inc. v. Superior Commc'ns, Inc.*, No. 12-cv-00082, 2013 WL 4511290, at *2 (E.D. Tex. Aug. 22, 2013) (denying stay because knowledgeable witnesses may leave).

### 2. Moderna Would Be Harmed By Delaying Adjudication of Infringement by Direct Competitors.

Courts strongly disfavor stays where, as here, the parties are direct competitors. *See, e.g., Mizuho*, 610 F. Supp. 3d at 366 (denying stay pending IPR where parties were the only two specialty surgery table providers in market); *TPK Touch Sols., Inc v. Wintek Electro-Optics Corp.*, No. 13-cv-02218, 2013 WL 6021324, at *5 (N.D. Cal. Nov. 13, 2013) (denying stay pending IPR where parties were competitors in segmented market); *TwinStrand*, 2023 WL 2563179, at *4 (denying stay pending IPR between two direct competitors).  Contrary to Defendants' suggestion, Mot. at 11-12, there is no requirement that Moderna have sought an injunction in order to claim undue prejudice from the delayed adjudication of its patent infringement claims.  For example, in *Teva*, cited by Defendants on this point, Mot. at 12, the district court determined that "the fact that Teva and Lilly are direct competitors … weighs against a stay" even though the plaintiff had not sought an injunction.  *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, No. 18-cv-12029, 2019 WL 1767394, at *8 (D. Mass. Apr. 22, 2019).

---

[7]     Defendants' suggestion that "Moderna obtained the three patents-in-suit after Pfizer and BioNTech had designed their COVID-19 vaccine" is misleading at best.  Mot. at 2.  The particular patents-in-suit issued in 2020 and 2021, but they are based on work and disclosures to the Patent Office that predate the Defendants' work on their COVID-19 vaccine by years.  *Supra* § II.A.

[8]     For example, at least four of Defendants' witnesses deposed in this case no longer work for Pfizer or BioNTech.  Similarly, at least six Moderna witnesses deposed in this case no longer work for Moderna, including one named inventor for each of the patents-in-suit.

13

The consequences of a delay extend far beyond the COVID-19 vaccines at issue in this case. mRNA medicines are an entirely new class of medicines, and the parties are actively developing multiple new mRNA drugs for a range of diseases. Ex. D, Moderna Press Release; Ex. E, Pfizer Website, at 8. Defendants have stated publicly that they are investing their COVID-19 revenues into product development and acquisitions. Ex. F, Pfizer Q3 2023 Earnings Call Transcript, at 3. Delaying a trial in this case deprives Moderna from making similar investments using any recoveries for Defendants' infringement—and the profits they have obtained from their infringement. Defendants' suggestion that both parties are "well-funded," Mot. at 12-13, ignores significant harm to Moderna that results from the Defendants continuing to infringe with financial impunity.

### 3. Defendants Can Claim No Unfair Prejudice From This Case Proceeding To Trial As Planned—Particularly Given Their Own Delay In Pursuing IPRs.

While Moderna would be unfairly prejudiced by delaying the adjudication of its claims for patent infringement, Defendants can claim no unfair prejudice from this case proceeding to trial as planned. Defendants waited until the latest possible date to file their IPR petitions (*see supra* § II.C), and the stark contrast between the procedural status of the IPR proceedings (*i.e.*, just beginning) and the procedural status of this case (*i.e.*, expert discovery soon ending, leaving only the final stage of motion practice before trial) is attributable to Defendants' own delay.

## IV. CONCLUSION

For the foregoing reasons, Moderna respectfully requests that the Court deny Defendants' motion to stay so that the parties and Court can proceed promptly to trial later this year.

Date:  April 9, 2024                                Respectfully submitted,

*/s/ Kevin S. Prussia*
William F. Lee (BBO# 291960)
Emily R. Whelan (BBO# 646982)
Kevin S. Prussia (BBO# 666813)
Andrew J. Danford (BBO# 672342)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
william.lee@wilmerhale.com
emily.whelan@wilmerhale.com
kevin.prussia@wilmerhale.com
andrew.danford@wilmerhale.com

Amy K. Wigmore (BBO# 629275)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
amy.wigmore@wilmerhale.com

*Counsel for Plaintiffs ModernaTX, Inc. and Moderna US, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on April 9, 2024, I filed the foregoing document with the United States District Court for the District of Massachusetts and caused it to be served on all registered participants via email.

/s/ *Kevin S. Prussia*

Kevin S. Prussia (BBO# 666813)